No. 25-2087

# United States Court of Appeals
# for the Fourth Circuit

**FAIRFAX COUNTY SCHOOL BOARD,**

*Plaintiff-Appellant*,

v.

**LINDA McMAHON, Secretary of the Department of Education; UNITED STATES DEPARTMENT OF EDUCATION**

*Defendants-Appellees*.

On Appeal from the United States District Court
For the Eastern District of Virginia
Case No. 1:25-cv-1432 (RDA/LRV)

## Defendant-Appellee's Opposition to Plaintiff-Appellant's Motion for Injunction Pending Appeal

CHAD MIZELLE
Acting Associate Attorney General

ABHISHEK KAMBLI
Deputy Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division



Date: September 22, 2025

LINDSEY HALLIGAN
United States Attorney

MATTHEW J. MEZGER
GARRY D. HARTLIEB
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:   (703) 299-3741
Fax:   (703) 299-3983
Email: Matthew.Mezger@usdoj.gov

*Attorney for Defendants-Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iii

INTRODUCTION ................................................................................................1

STATEMENT OF THE CASE................................................................................2

    I.    FACTUAL BACKGROUND .......................................................................2

        A.  The Department of Education Investigates a Student
            Complaint from Fairfax and Concludes that Fairfax's Policy
            Violates Title IX ..............................................................................2

        B.  Exercising Her Discretion, the Secretary Designated Fairfax
            as a "High Risk" Entity and Places Fairfax on
            Reimbursement Method of Payment ...............................................3

    II.   PROCEDURAL BACKGROUND ..................................................................5

ARGUMENT ......................................................................................................6

    I.    LEGAL STANDARD .................................................................................6

    II.   FAIRFAX CANNOT MEET ITS BURDEN TO JUSTIFY THE
        EXTRAORDINARY REMEDY OF AN INJUNCTION PENDING APPEAL ..........7

        A.  Fairfax Cannot Establish Irreparable Harm When the
            Secretary Will Reimburse Its Programs Even With the
            "High Risk" Designation ................................................................7

        B.  Fairfax Cannot Meet Its Burden to Establish Success On The
            Merits of This Appeal ..................................................................10

            1.  Only the United States Court of Claims has Jurisdiction
                Over Fairfax's Claims Because Fairfax's Claim
                is Contractual ....................................................................10

            2.  Fairfax's APA Claim Contains At Least Two
                Additional Jurisdictional Deficiencies ...............................14

3. Even if Fairfax Met Its Jurisdictional Burden, It Cannot Succeed on the Merits of Its APA Claim...............19

C. The Remaining Factors Weigh in the Secretary's Favor..............21

CONCLUSION.........................................................................................23

CERTIFICATE OF COMPLIANCE.......................................................24

CERTIFICATE OF SERVICE ...............................................................25

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Alexander v. Sandoval,*
   532 U.S. 275 (2001) ........................................................................21

*Casa de Md. v. U.S. Dep't of Homeland Sec.*,
   924 F.3d 684 (4th Cir. 2019) .........................................................19

*Christopher Vill., L.P. v. United States*,
   360 F.3d 1319 (Fed. Cir. 2004) .....................................................10

*Coleman v. Kendall*,
   74 F.4th 610 (4th Cir. 2023) .........................................................10

*Crespo v. Holder*,
   631 F.3d 130 (4th Cir. 2011) .........................................................13

*Dep't of Educ. v. California,*
   604 U.S. 650 (2025) ........................................................ 11, 13, 14

*Di Biase v. SPX Corp.*,
   872 F.3d 224 (4th Cir. 2017) ...........................................................8

*Doe v. South Carolina*,
   2025 WL 2375386 (4th Cir. Aug. 28, 2025) ...................................20

*Fitzgerald v. Barnstable Sch. Comm.*,
   555 U.S. 246 (2009) ........................................................................17

*Goldstein v. Moatz*,
   364 F.3d 205 (4th Cir. 2004) .........................................................14

*Grimm v. Gloucester Cnty. Sch. Bd.*,
   972 F.3d 586 (4th Cir. 2020) .........................................................20

*Hobby Lobby Stores, Inc. v. Sebelius,*
   568 U.S. 1401 (2012) .......................................................................6

*Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*,
    17 F.3d 691 (4th Cir. 1994) ...................................................................8

*Jeminez-Cedillo v. Sessions*,
    885 F.3d 292 (4th Cir. 2018) ...............................................................19

*Kansas v. United States*,
    124 F.4th 529 (8th Cir. 2024) .........................................................1, 10

*Lau v. Nichols*,
    414 U.S. 563 (1974) .............................................................................21

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) .............................................................................15

*Litman v. George Mason Univ.*,
    186 F.3d 544 (4th Cir. 1999) ...............................................................21

*Long v. Robinson*,
    432 F.2d 977 (4th Cir. 1970) .................................................................6

*Lovo v. Miller*,
    107 F.4th 199 (4th Cir. 2024) ..............................................................14

*Milk Train, Inc. v. Veneman*,
    310 F.3d 747 (D.C. Cir. 2002) .............................................................15

*Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*,
    915 F.3d 197 (4th Cir. 2019) .................................................................7

*Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*,
    918 F.3d 353 (4th Cir. 2019) .................................................................8

*Nken v. Holder*,
    556 U.S. 418 (2009) ..................................................................... 6, 7, 21

*Polfliet v. Cuccinelli*,
    955 F.3d 377 (4th Cir. 2020) ...............................................................16

*Portsmouth Redevelopment & Hous. Auth. v. Pierce*,
706 F.2d 471 (4th Cir. 1983) ..............................................................12

*Randall v. United States*,
95 F.3d 339 (4th Cir. 1996) ................................................................10

*South Dakota v. Dole*,
483 U.S. 203 (1987)............................................................................21

*Strate v. A-1 Contractors*,
520 U.S. 438 (1997)............................................................................18

*Sustainability Institute v. Trump*,
2025 WL 1587100 (4th Cir. June 5, 2025) .................................. 11, 12

*Telecare Corp. v. Leavitt*,
409 F.3d 1345 (Fed. Cir. 2005) ..........................................................10

*United States v. J&E Salvage Co.*,
55 F.3d 985 (4th Cir. 1995) ................................................................13

*United States v. Mitchell*,
463 U.S. 206 (1983)............................................................................14

*Va. Carolina Tools, Inc. v. Int'l Tool Supply, Inc.*,
984 F.2d 113 (4th Cir. 1993) ................................................................8

*West Virginia v. B.P.J.*,
No. 24-43 (S. Ct. 2025).........................................................................3

*Wise v. Circosta*,
978 F.3d 93 (4th Cir. 2020) ...............................................................1, 6

**STATUTES**

5 U.S.C. § 701 (a)(2) ................................................................................14

5 U.S.C. § 702 ..........................................................................................14

5 U.S.C. § 704 ..........................................................................................10

20 U.S.C. § 1226a-1 ................................................................ 3, 16, 17, 19

20 U.S.C. § 1682 .............................................................................. 16, 17

20 U.S.C. § 1683 ........................................................................ 13, 16, 17

28 U.S.C. § 1491(a)(1) .............................................................................11

28 U.S.C. § 2201 ......................................................................................14

**RULES**

4th Cir. Loc. R. 8 .......................................................................................7

Fed. R. App. P. 8(a)(1) ..............................................................................7

Fed. R. App. P. 8(a)(2)(A)(i) .....................................................................7

**REGULATIONS**

2 C.F.R. § 200.208 ............................................................................ 16, 19

2 C.F.R. § 200.339 .....................................................................................4

2 C.F.R. § 3473.10 ...................................................................................16

2 C.F.R. § 3474.10 ...................................................................................19

34 C.F.R. § 100.8 .......................................................................................4

**OTHER AUTHORITIES**

Fairfax School District, "FY 2025 Approved Budget"
https://www.fcps.edu/sites/default/files/media/pdf/FY-2025-Approved-Budget.pdf
..........................................................................................................9

Ryan Belmore, "Alexandria schools Clarify no federal funds withheld despite
'high-risk' status," ALXnow,
https://www.alxnow.com/2025/09/17/alexandria-schools-clarify-no-federal-funds-withheld-despite-high-risk-status/ .................................................................9

## INTRODUCTION

Plaintiff (Fairfax) belligerently rushed into federal court seeking a temporary restraining order merely for being placed on a status where they received federal funding through reimbursement status. The District Court rightfully denied the TRO and dismissed the case for lack of jurisdiction. Fairfax now demands this Court provide the "extraordinary and drastic remedy" of an injunction pending appeal that would be granted by this court in the first instance. *Wise v. Circosta*, 978 F.3d 93, 103 (4th Cir. 2020). But Fairfax is entitled to nothing. Fairfax presents no evidence of irreparable harm as it is simply seeking immediate payments of certain federal funds rather than receiving them through a reimbursement only status. It has not shown how this change in payment method would result in harm that cannot be remedied later and is grounds alone for denying relief. *See Kansas v. United States*, 124 F.4th 529, 533-34 (8th Cir. 2024) (Denying emergency relief because, "even if we assume, without deciding, that the agency has shown a likelihood of success on the merits of its appeal, it has failed to demonstrate that the agency will suffer irreparable harm.").

There are a multitude of other reasons to deny relief as well. First, the District Court rightfully held that despite Fairfax's attempts to plead around the Tucker Act this case is in its essence contractual and belongs in the Court of Federal Claims. But even if the Tucker Act were not applicable, the District Court still lacked jurisdiction

because the "high risk" status only affected the method of payment, which is a matter left to the Secretary's discretion and Fairfax did not exhaust its administrative remedies. Furthermore, the substantive merits and balance of the equities tilt against Fairfax. This court should deny relief.

<h2 style="text-align:center"><u>STATEMENT OF THE CASE</u></h2>

## I. FACTUAL BACKGROUND

### A. The Department of Education Investigates a Student Complaint from Fairfax and Concludes that Fairfax's Policy Violates Title IX

In early February 2025, the Department of Education received a complaint from a Fairfax student alleging that Fairfax's "anti-discrimination policy pertaining to transgender students 'provides greater rights to students whose "gender identity" does not match their biological sex than it does to students whose "gender identity" matches their biological sex.'" R.3-2, at 2. The Secretary investigated the complaint. R.3-3; R.3-4. After gathering information from Fairfax during the spring of 2025, the Secretary issued a 21-page decision explaining its findings and analysis in response to the student's complaint on July 25, 2025. *See generally* R.3-5.

The Secretary, through the Education Department's Office of Civil Rights, generally found that Fairfax's Regulation 2603.2 violated Title IX. Fairfax's regulation establishes that "[g]ender-expansive and transgender students shall be provided with the option of using a locker room or restroom consistent with the student's gender identity." R.3-5, at 4. The Secretary concluded Regulation 2603.2

violated Title IX because it "permit[s] access to intimate facilities that correspond with a student's 'gender identity,' which, in turn, requires students to use these intimate facilities in the presence of members of the opposite sex," R.3-5, at 14. To remedy this violation, the Secretary supplied a "draft resolution agreement that specifie[d] the actions that, when taken by [Fairfax], will remedy the violation of Title IX." R.3-5, at 22.

Soon after receiving the Secretary's conclusions, Fairfax requested the opportunity to negotiate with the Education Department for ninety days. R.3-7. Agreeing to negotiate, the Secretary set a deadline of August 15, 2025 for Fairfax to indicate whether it was "willing to consider agreeing to the terms in the draft resolution agreement." R.3-8. On that deadline, Fairfax indicated that it "cannot agree to the Resolution Agreement as drafted" and also requested a stay pending the Supreme Court's ruling in *West Virginia v. B.P.J.*, No. 24-43 (S. Ct. 2025). R.3-9, at 2, 5.

**B.  Exercising Her Discretion, the Secretary Designated Fairfax as a "High Risk" Entity and Places Fairfax on Reimbursement Method of Payment**

Four days later, August 19, 2025, the Secretary informed Fairfax that it had been "designated as a 'high-risk' entity in accordance with 2 C.F.R. §§ 200.208 and 3474.10." R.3-11, at 2. This designation, authorized under 20 U.S.C. § 1226a-1, "do[es] not freeze or cut off an entity's access to federal funds." R.19-1, ¶ 4. Instead,

the "high risk" designation "allow[s] the Department to account for identified risks and potential risks and appropriately monitor the grantee to mitigate those risks." R.19-1, ¶ 4. As a result, Fairfax has simply been "placed on a reimbursement method of payment," which is how it already receives its federal formula grant funds. R.19-1, ¶ 6. Under this designation, Fairfax is only required to submit to the Education Department "detailed documentation establishing that the expenditure in question can be allowably charged to the grant and has already been paid for by [Fairfax] with non-Federal funds." R.3-11, at 4.

The Secretary also indicated to Fairfax that it would continue to receive payment through reimbursement until she "determined that [Fairfax] has put into place adequate corrective actions" and that said actions "have been working appropriately for a period of time." R.3-11, at 4. In other words, though it will continue to receive funds, the *method* of payment will not change until Fairfax takes the appropriate remedial steps. Indeed, termination of federal assistance would only occur *after* the Secretary follows the process set forth in 2 C.F.R. § 200.339 or 34 C.F.R. § 100.8, which has not yet occurred. R.19-1, ¶ 5.

Lastly, the Secretary noted in her determination that Fairfax could "request reconsideration of its designation as 'high-risk'" by "submitting a written request for reconsideration within ten business days." R.3-11, at 5. Following the Secretary's instruction, Fairfax submitted a reconsideration request to the Secretary on August

26, 2025. R.26. Though that request remains pending, R.26, and the Secretary is "undertaking individualized reconsideration" of all requests it receives, R.19-1, ¶ 7, Fairfax commenced the underlying action three days later.

## II.   PROCEDURAL BACKGROUND

Fairfax filed this action and moved for an emergency temporary restraining order on August 29, 2025. R.1; R.2. Raising claims under the Administrative Procedure Act ("APA") and the Declaratory Judgment Act, Fairfax maintained that the Secretary acted *ultra vires* when she designated Fairfax as "high risk." R.1, ¶¶ 4, 18, 20-21, 23, 25. As relief, Fairfax requested that the Secretary's designation be set aside and that she "immediately pay to [Fairfax] any funds that have been denied." R.1, at 27-28; R.2, at 1-2.

The Secretary opposed that motion, R.19. On September 5, 2025, the District Court dismissed the suit, finding that Fairfax had not met its burden to establish subject matter jurisdiction over the case. R.28. The District Court noted, Fairfax's requested relief, enjoining the Secretary from "requiring that [Fairfax] receive federal funds by reimbursement," was subject to the Tucker Act because "the relief that [it sought] ultimately requires th[e] Court 'to order the payment of money.'" R.28, at 7. Recognizing that "the APA's limited waiver of immunity does not extend to orders to enforce a contractual obligation to pay money," and that "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on any express or

implied contract with the United States," R.28, at 5 (quotations omitted), the District Court determined that Fairfax's claims could only be pursued in the Court of Federal Claims such that the District Court lacked subject matter jurisdiction. R.28, at 2, 4-11.

Four days later, Fairfax noticed an appeal. Though Fairfax maintains there is an emergency, it waited six additional days before moving for an injunction pending an appeal.

## ARGUMENT

### I. LEGAL STANDARD

In evaluating Fairfax's request for an injunction pending appeal, Fairfax bears the burden to establish that: (1) it "is likely to succeed on the merits"; (2) it "will be irreparably injured absent a stay"; (3) other parties will not be substantially harmed by the stay; and (4) the public interest will be served by granting the stay. *Nken v. Holder*, 556 U.S. 418, 434 (2009); *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970). The first two factors in this analysis "are the most critical," *Nken*, 556 U.S. at 434, and granting an injunction pending an appeal is an "extraordinary and drastic remedy" that should be granted sparingly, especially when the district court has already declined to grant similar relief below, *Wise*, 978 F.3d at 103. *See also Hobby Lobby Stores, Inc. v. Sebelius*, 568 U.S. 1401, 1403-04 (2012). Fairfax "bears the

burden of showing that the circumstances justify an exercise of [the Court's] discretion." *Nken*, 556 U.S. at 433-34.

Moreover, such a request for extraordinary relief requires Fairfax to "move first in the district court" unless seeking such relief would be "impracticable." Fed. R. App. P. 8(a)(1), (a)(2)(A)(i). Indeed, this Court's local rules specify that counsel for the movant "must make a *specific showing* of the reasons the application was not made to the district court in the first instance." 4th Cir. Loc. R. 8 (emphasis added). But Fairfax did not discharge either obligation, so its motion is procedurally defective.

## II. FAIRFAX CANNOT MEET ITS BURDEN TO JUSTIFY THE EXTRAORDINARY REMEDY OF AN INJUNCTION PENDING APPEAL

### A. Fairfax Cannot Establish Irreparable Harm When the Secretary Will Reimburse Its Programs Even With the "High Risk" Designation

Fairfax cannot establish one of the critical elements needed for its requested injunction: that it faces irreparable harm absent relief from this Court. "To establish irreparable harm, the movant must make a 'clear showing' that it will suffer harm that is neither remote nor speculative, but actual and imminent." *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019) (citation omitted). Stated differently, Fairfax must show that the harm is truly irreparable and "cannot be fully rectified by the final judgment after trial." *Id.*

Fairfax cannot meet this demanding standard given that the harms it asserts are the type of injury this Court has found does *not* constitute as irreparable harm. Injuries "in terms of money, time and energy necessarily expended in the absence of a stay" do not constitute irreparable harm. *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017); *Va. Carolina Tools, Inc. v. Int'l Tool Supply, Inc.*, 984 F.2d 113, 120 (4th Cir. 1993). To the extent this Court has recognized economic damages as irreparable harm, it has done so only "where no remedy is available at the conclusion of litigation." *Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019). This happens in "quite narrow" circumstances where "the moving party's business cannot survive absent a preliminary injunction" or where the nonmoving party might become insolvent. *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994).

Nowhere in Fairfax's submissions to this Court or the District Court has it asserted that without the Education Department's grants being immediately disbursed, it will eliminate the programs using those fundings. Fairfax has only maintained that it has relied on Education Department funds, without any further factual explanation. *See* R.1 ¶ 58. Yet, it is difficult to fathom how Fairfax can develop such detrimental reliance on these Federal funds considering for school year 2025-2026, it has allotted $3.7 billion dollars, and the Education Department's

grants, $167 million, only comprise 4.51% of Fairfax's annual budget. *See* Fairfax School District "FY 2025 Approved Budget."[1]

Fairfax's injuries also fail because even with the Secretary's "high risk" designation, Fairfax will continue to receive the allocated grant monies. The "high risk" designation does not freeze or otherwise cut off access to Fairfax's funding. R.19-1, ¶ 4. That designation, as noted above, only affects the *method* of payment—requiring Fairfax to first use non-Federal dollars to pay for the expenditure and then seek reimbursement for that expenditure. R.3-11, at 4. And as Fairfax's *own* declarant confirmed, this is a payment method that the school district already employs for certain monthly expenditures. R.16, ¶ 5.a. Moreover, other schools in northern Virginia similarly subject to a "high risk" designation have publicly confirmed "that no federal funds have been withheld." Ryan Belmore, "Alexandria schools clarify no federal funds withheld despite 'high-risk' status," ALXnow;[2] R.3-5, at 4 (listing Alexandria City Public Schools as having policy that violated Title IX). There can be no finding of irreparable harm when Fairfax has provided no evidence that it will suffer harm that cannot be remedied at the end of litigation; there is no evidence explaining the nature of the reliance on the funds; the Education

---

[1]    *See*    https://www.fcps.edu/sites/default/files/media/pdf/FY-2025-Approved-Budget.pdf (last accessed Sept. 22, 2025).
[2] *See* https://www.alxnow.com/2025/09/17/alexandria-schools-clarify-no-federal-funds-withheld-despite-high-risk-status/ (last accessed Sept. 22, 2025).

Department will continue to provide these funds through reimbursement; and Fairfax already receives significant federal funds through reimbursement. Accordingly, Fairfax's motion for an injunction pending appeal can be denied on this basis alone. *Kansas*, 124 F.4th at 533-34.

**B. Fairfax Cannot Meet Its Burden to Establish Success On The Merits of This Appeal**

**1. Only the United States Court of Claims has Jurisdiction Over Fairfax's Claims Because Fairfax's Claim is Contractual**

Fairfax cannot meet its burden that it will succeed on the appeal because the District Court court correctly held that it lacked jurisdiction for Fairfax's purported APA claims, which can only be brought in the Court of Federal Claims. R.28, at 4-11. The APA provides review of only "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Thus, when a party already has an "available remedy," the party's APA claim cannot proceed. *Randall v. United States*, 95 F.3d 339, 346 (4th Cir. 1996). The "availability of an action for money damages under the Tucker Act or Little Tucker Act is presumptively an 'adequate remedy' for [5 U.S.C.] § 704 purposes." *Telecare Corp. v. Leavitt*, 409 F.3d 1345, 1349 (Fed. Cir. 2005). Courts must assess whether "the relief requested is not an incident of, or collateral to, a monetary award." *Coleman v. Kendall*, 74 F.4th 610, 615 (4th Cir. 2023) (cleaned up); *Christopher Vill., L.P. v. United States*, 360 F.3d 1319, 1328-29 (Fed. Cir. 2004) ("A party may not circumvent the Claims Court's exclusive

jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory or mandatory relief where the thrust of the suit is to obtain money from the United States."). As the District Court correctly held, Fairfax's requests—*inter alia*, that the Secretary "immediately pay to FCPS any funds . . . ," R.1, at 28, and entry of an order enjoining the Secretary from requiring that Fairfax receive federal funds by reimbursement is plainly an order to obtain money from the United States. R.28, at 7.

The District Court correctly recognized that just this year the Supreme Court resolved this very issue in a case brought against the same federal agency that sought similar relief. R.28, at 4-5. Specifically, in *Department of Education. v. California*, the Supreme Court held that the Secretary was likely to succeed in showing that the District Court lacked jurisdiction over an APA claim that sought to require the Secretary "to pay out past-due grant obligations and continue paying obligations as they accrued." 604 U.S. 650, 650-51 (2025) (per curiam). The Supreme Court reasoned this was so because "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *Id.* at 651 (quoting 28 U.S.C. § 1491(a)(1)).

And the District Court correctly applied this Court's more recent authority on this issue in *Sustainability Institute v. Trump*, 2025 WL 1587100 (4th Cir. June 5, 2025). R.28 at 5-7. There, relying on *California*, this Court similarly stayed a

preliminary injunction requiring the Government "to restore [the plaintiffs'] access to grant funds immediately" and prohibiting the Government from "freezing, terminating or otherwise interfering with the funding of [the grants] . . . without written authorization from the Court." *Sustainability Inst.*, 2025 WL 1587100, at *1 (quotation omitted). Following *California*, *Sustainability Institute* held that the Government was likely to succeed in showing that the District Court lacked subject matter jurisdiction over the plaintiffs' APA claims. *Id.* This Court noted that, "like the grants in *California*, the grants [in *Sustainability*] were awarded by federal executive agencies to specific grantees from a generalized fund . . . [and] it is the operative grant agreements which entitle any particular Plaintiff to receive federal funds." *Id.* at *2.

Further, the District Court aptly recognized that the reasoning of these decisions still applies here irrespective of Fairfax's focus on its "high risk" designation. R.28, at 7-8. That is because, at its core, this case is about the terms under which Fairfax receives money, and Fairfax has disavowed that any specific counts should be treated different from one another. R.28, at 11. Fairfax seeks an injunction to eliminate what it views as an unlawful "conditioning and freezing of federal funds," R.1, at 27, and the relief it ultimately seeks requires the court to order the payment of money, R.28, at 7. Consequently, its claims sound in contract and should be resolved by the Court of Claims under the Tucker Act. *See Portsmouth*

*Redevelopment & Hous. Auth. v. Pierce*, 706 F.2d 471, 474-75 (4th Cir. 1983) ("[T]he Claims Court is the proper forum for this action" where "the primary objective . . . [was] to recover money allegedly wrongfully withheld by the federal government").

And the District Court appropriately applied precedent establishing that plaintiffs may not artfully plead around Tucker Act jurisdiction. R.28 at 7; *United States v. J&E Salvage Co.*, 55 F.3d 985, 987-88 (4th Cir. 1995). But Fairfax contends that the District Court should have disregarded *California* and its progeny because 20 U.S.C. § 1683 allows it to sue in district court. Mot. at 10-11. Not so. Section 1683 only allows parties to sue in district court if their claim is "not otherwise subject to judicial review." 20 U.S.C. § 1683. But the District Court correctly observed that judicial review over their sought relief exists with Court of Federal Claims, which has "jurisdiction over suits based on 'any express or implied contract with the United States.'" R.28, at 5, 8 (quoting *California*, 604 U.S. at 651). Fairfax's speculation that as to what Congress intended by providing the APA as a potential remedy under § 1683 is immaterial when the plain language says an APA cause of action is triggered when the claim is "not otherwise subject to judicial review." *See Crespo v. Holder*, 631 F.3d 130, 134 (4th Cir. 2011) ("[W]hen the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms."). And "[t]he APA's waiver of sovereign immunity does not apply 'if any other statute that grants

consent to suit expressly or impliedly forbids the relief which is sought.'" *California*, 640 U.S. at 651 (quoting 5 U.S.C. § 702). The Tucker Act does precisely that, and the plain language § 1683 demonstrates it does not change that. Furthermore, § 1683 is triggered only when an agency is "terminating or refusing to grant or to continue financial assistance." For the reasons described at length in this brief, the "high risk" designation did not terminate or discontinue financial assistance.

## 2. Fairfax's APA Claim Contains At Least Two Additional Jurisdictional Deficiencies

Even if the Tucker Act did not apply, Fairfax's APA claim has at least two other jurisdictional defects.[3] First, it challenges the Secretary's determination, which is committed to her discretion by law. Second, Fairfax has not fully exhausted its administrative remedies.

a. ***Agency Discretion***. "[T]he APA does not permit judicial review of a challenge to 'agency action [that] is committed to agency discretion by law.'" *Lovo v. Miller*, 107 F.4th 199, 210 (4th Cir. 2024) (quoting 5 U.S.C. § 701(a)(2)) (alteration in original); *see also Lincoln v. Vigil*, 508 U.S. 182, 189 (1993). Despite

---

[3] Briefly, the United States has not waived its sovereign immunity as to Fairfax's Declaratory Judgment Act claim. *See Goldstein v. Moatz*, 364 F.3d 205, 219 (4th Cir. 2004). Considering that the Declaratory Judgment Act, 28 U.S.C. § 2201, contains no express waiver of the United States' sovereign immunity, Fairfax's claim cannot proceed. Fairfax's arguments about discretionary jurisdiction under the Declaratory Judgment Act are of no moment because a sovereign immunity waiver "is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983).

this clear prohibition, that is what Fairfax has put at it issue in its APA claim by challenging the Secretary's "high risk" designation.

"[A]llocation of funds from a lump-sum appropriation" is an "administrative decision traditionally regarded as committed to agency discretion" and is thus not reviewable under the APA. *Lincoln*, 508 U.S. at 192. While "an agency is not free simply to disregard statutory responsibilities: Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes . . . ." *Id.* at 193. So long as the agency abides by the relevant statutes (and whatever self-imposed obligations may rise from regulations or grant instruments), the APA "gives the courts no leave to intrude" via arbitrary-and-capricious review. *Id.* This logic extends to more specific appropriations because where Congress leaves "to the Secretary the decision about how the moneys" appropriated for a particular program "could best be distributed consistent with" the governing statute, these are decisions that are not subject to judicial review. *See Milk Train, Inc. v. Veneman*, 310 F.3d 747, 751-52 (D.C. Cir. 2002). These principles plainly establish that the Secretary's decision to designate Fairfax as "high risk" is not reviewable under the APA.

Congress's delegation of authority to the Secretary confirms this was a determination committed to her discretion by law. The decision for payment method is plainly left to the Secretary's discretion per 20 U.S.C. § 1226a-1. That provision

establishes that "[p]ayments pursuant to grants or contracts under *any* applicable program may be made . . . by way of reimbursement . . . as the Secretary *may determine*." (emphases added); *see also Polfliet v. Cuccinelli*, 955 F.3d 377, 382 (4th Cir. 2020) (holding that when Congress uses "may" in a statute, that confers discretion). It is noteworthy that there is no qualifying language that limits how the Secretary may use her discretion. The absence of such qualifying language, combined with "terms indicating discretion," means the statute "unambiguously specifies discretion in detail." *Id.*[4]

Though Fairfax tries to argue the Secretary's "high risk" determination is tantamount to a decision to revoke or terminate funds under 20 U.S.C. § 1683, those efforts fall flat. *See* Mot. at 12-16. As § 1683 makes plain, it is only "department or agency action taken pursuant to section 1682 of this title" or a decision "terminating or refusing to grant or to continue financial assistance" that "shall be subject to such judicial review as may otherwise be provided by law for similar action taken by such department or agency on other grounds." Section 1683's express reference to § 1682[5] and the specific acts of "terminating" or "refusing to grant or to continue

---

[4] The Education Department has vested in the Secretary by regulation the same discretion that Congress conferred to the Secretary by statute. *See* 2 C.F.R. §§ 200.208 and 3473.10. Fairfax has made no argument that the Secretary did not follow the regulatory process in this case.

[5] Section 1682 empowers the Secretary to "terminat[e] or refus[e] to grant or to continue assistance" after a "an express finding on the record, after opportunity for hearing."

assistance" cabin the determinations that fall within § 1683's authorization of permitting judicial review. Section 1683 does not empower the federal courts to review all determinations the Secretary may make. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255 (2009) ("[Title IX's] only express enforcement mechanism, [20 U.S.C.] § 1682 is an administrative procedure resulting in the *withdrawal* of federal funding from institutions that are not in compliance." (emphasis added)). Instead, review under § 1683 is limited to funding termination or revocation terminations made after the conclusion of the proceedings required in § 1682, neither of which are applicable here. The Secretary only made a designation determination under 20 U.S.C. § 1226a-1 that affects the method of payment, and the uncontroverted record evidence confirms that Fairfax will continue receiving funds. R.19-1, ¶ 4.

Section 1683 does not independently authorize this Court to review the Secretary's discretionary determination to designate Fairfax as high risk as that is not a decision to terminate or refuse funding to Fairfax. Instead, it is a discretionary determination made pursuant to Congress's express statutory authority that is not reviewable as a matter of law under the APA.

b. ***Exhaustion of Remedies***. This Court should not reach the merits of Fairfax's claim while the administrative process is still unfolding in the agency. Requiring exhaustion of alternative remedies is a prudential restraint, as it allows

17

agencies to exercise autonomy and discretion and prevents premature judicial intervention. *Cf. Strate v. A-1 Contractors*, 520 U.S. 438, 439 (1997) ("Rather, these cases prescribe a prudential, nonjurisdictional exhaustion rule requiring a federal court in which tribal-court jurisdiction is challenged to stay its hand, as a matter of comity, until after the tribal court has had an initial and full opportunity to determine its own jurisdiction.").

Here, Fairfax's request for reconsideration is still pending. That request, like others before it, are being individually reviewed by the Secretary; thus there is no basis for the federal courts to wade into the parties' potential dispute. R.19-1, ¶ 7. Fairfax may contend that the Secretary will not be receptive to its claim, but that contention has no grounding in the record. Rather than work with the Secretary to find an approach consistent with this Court's precedent and the Secretary's concerns with its policy, Fairfax has only asked to extend the negotiation period or stay the investigation pending a Supreme Court decision that will likely be decided in 2026. R.1, ¶¶ 47, 48. Despite efforts to avoid working with the Secretary, the ability to do so remains open to Fairfax with its pending reconsideration request.

This Court should decline any invention to wade into this matter—especially on an emergency basis.

### 3.    Even if Fairfax Met Its Jurisdictional Burden, It Cannot Succeed on the Merits of Its APA Claim

Though the Court should resolve this motion on jurisdiction alone, Fairfax's APA claim cannot succeed on its merits. To withstand review under the APA, the agency must "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Casa de Md. v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 703 (4th Cir. 2019). Once an agency discharges this obligation, this Court "will uphold its decision." *Jeminez-Cedillo v. Sessions*, 885 F.3d 292, 297-98 (4th Cir. 2018) (citation omitted). That is what the Secretary did here when she designated Fairfax as "high risk" pursuant to 20 U.S.C. § 1226a-1 and 2 C.F.R. §§ 200.208, 3474.10.

In exercising her discretion, she plainly articulated a rationale for doing so. *See generally* R.3-11. The Secretary stated that Fairfax was unwilling "to make the necessary policy changes to come into compliance with Title IX," and this was problematic because of "systemic organization-wide concerns regarding lack of compliance with applicable law as your assurances for receiving the grant funds had indicated." R.3-11, 2. Indeed, as reflected in the Secretary's robust 21 pages of findings and analysis, Fairfax's policy violates Title IX because it "allow[s] males to invade sensitive female-only spaces like bathrooms (and vice versa)," and thus "intentionally, or with deliberate indifference, endanger students' safety, privacy, and dignity." R.3-5, 13. Such a reasoned basis passes APA review.

19

Despite Fairfax's claim that the Secretary's determination was contrary to Title IX and the Constitution, these challenges fail under cursory review. First, the Secretary's decision does not run afoul of this Court's construction of Title IX in *Grimm v. Gloucester County School Board*, 972 F.3d 586 (4th Cir. 2020). *Grimm*, as this Court recently confirmed, was "limited to how school bathroom policies implicate the rights of transgender students who 'consistently, persistently, and insistently,' express a binary gender." *Id.* at 596; *accord Doe by Doe v. South Carolina*, 2025 WL 2375386, at *2 (4th Cir. Aug. 28, 2025) (stating that *Grimm* "held that a public school board's policy of requiring transgender students to use multi-stall 'restrooms matching their biologic gender' violated Title IX"). In contrast, Fairfax's policy is not limited to restrooms: it reaches *all* sex-based facilities—including locker rooms.

Given that *Grimm* expressly did not reach facilities like locker rooms, Fairfax cannot succeed on the merits of its claim. For good reason. As the Secretary reasoned, the privacy interests of school children in locker rooms are appreciably different than in restrooms: "[R]equiring girls to undress or use the bathroom in the presence of boys, causes distress in girls, violates their right to privacy, and can deny girls equal access to benefits of educational programs and activities." R.3-5, at 13.

Second, Fairfax's claim that the Secretary's designation offended the Constitution's Spending Clause lacks merit. Relying on *South Dakota v. Dole*, 483

U.S. 203 (1987), Fairfax maintains that the Secretary's determination is coercive. But Fairfax cannot claim success over this claim when this Court has already held there is no Spending Clause violation where the Secretary conditions Title IX funding on the requirement that an education institution cease sex-based discrimination. *Litman v. George Mason Univ.*, 186 F.3d 544, 553-55 (4th Cir. 1999). Fairfax has not demonstrated that the Secretary's determination exceeds Congress's broad powers to induce state actors to behave in a certain way—especially when broad anti-discrimination requirements have been previously upheld in Spending Clause challenges. *See, e.g.*, *Lau v. Nichols*, 414 U.S. 563, 569 (1974), *abrogated on other grounds*, *Alexander v. Sandoval*, 532 U.S. 275, 285 (2001) (upholding ban on race discrimination in federal funding programs under Title VI of the Civil Rights Act).

## C. The Remaining Factors Weigh in the Secretary's Favor

The remaining factors, the harm the Secretary would face if this Court entered an injunction and the public interest, both weigh in the Secretary's favor. *See Nken*, 556 U.S. at 435.

1. Any injunction this Court issues would be disruptive and harmful to the Secretary. Deviating from the reimbursement method of payment deprives the Secretary of the ability to scrutinize claims for Federal funds and flag anomalies. Without the ability to identify anomalies, there is a risk that an erroneous payment

is made, and the Secretary is deprived of the ability to recoup that money from Fairfax after the fact.

2. The public interest favors empowering the politically accountable head of a Cabinet-level agency with the discretion in the way she determines best serves the American people and Congress's objectives. Frustrating these decisions interferes with administering Congress's priorities for its appropriated funds and the Secretary's ability to steward those funds. As noted, if the Secretary loses her ability to scrutinize Fairfax's claimed expenses through the reimbursement payment method resulting from her "high risk" determination, any misspent funds may not be recovered. Thus, preserving the Secretary's discretionary determination that Fairfax be designated as "high risk" furthers the public interest.

## CONCLUSION

For all these reasons, the Secretary respectfully requests that Fairfax's motion be denied.

Dated: September 22, 2025          Respectfully Submitted,

CHAD MIZELLE                  LINDSEY HALLIGAN
Acting Associate Attorney General    United States Attorney

ABHISHEK KAMBLI              _____/s/_____
Deputy Associate Attorney General   MATTHEW J. MEZGER
                                        GARRY D. HARTLIEB
BRETT A. SHUMATE             Assistant United States Attorneys
Assistant Attorney General        2100 Jamieson Avenue
Civil Division                       Alexandria, Virginia 22314
                                        Tel:   (703) 299-3741
                                        Fax:   (703) 299-3983
                                        Email: Matthew.Mezger@usdoj.gov

                                        *Attorney for Defendants-Appellees*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned hereby certifies that this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A).

1. Exclusive of the exempted portions of this motion, as provided in Federal Rule of Appellate Procedure 32(f), the motion contains 5,186 words.

2. This motion has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman Font in compliance with the typeface and type styles requirements set forth in Federal Rule of Appellate Procedure 32(a)(5)-(6). As permitted by Federal Rule of Appellate Procedure 32(g)(1), the undersigned has prepared this certificate using this word processing system's word count feature.

_____/s/_____
Matthew J. Mezger
Assistant U.S. Attorney
*Attorney for Defendants-Appellees*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing with the

Clerk of the United States Court of Appeals for the Fourth Circuit using the CM/ECF

system, which will send a notice of such filing to all registered CM/ECF users.


_____/s/_____
Matthew J. Mezger
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3741
Fax:    (703) 299-3983
Email: Matthew.Mezger@usdoj.gov

*Attorney for Defendants-Appellees*

DATE: September 22, 2025