No. 25-2087

# IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

FAIRFAX COUNTY SCHOOL BOARD,

*Plaintiff-Appellant,*

v.

LINDA MCMAHON, IN HER OFFICIAL CAPACITY AS SECRETARY OF EDUCATION OF THE UNITED STATES, AND THE UNITED STATES DEPARTMENT OF EDUCATION,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Virginia,
Nos. 1:25-cv-01432-RDA-LRV, Hon. Rossie D. Alston, Jr.

**Reply Memorandum in Support of
Appellant's Motion for Injunction Pending Appeal**

Breanna Smith-Bonsu
Chloe Smeltzer
WILLKIE FARR &
 GALLAGHER LLP
300 N. LaSalle Dr.
Chicago, IL 60654
312-728-9000

Timothy Heaphy
 *Counsel of Record*
Joshua N. Mitchell
Fiona Carroll
Lindsay Hemminger
WILLKIE FARR &
 GALLAGHER LLP
1875 K Street Northwest
Washington, DC 20006
202-303-1000
theaphy@willkie.com

*Counsel for Plaintiff-Appellant*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii
INTRODUCTION ..................................................................................................... 1
ARGUMENT ............................................................................................................. 2
I.  Defendants have already denied FCPS access to federal funds based on the false assertion that Regulation 2603.2 violates Title IX. ......... 2
II. FCPS's claims lie exclusively within Article III courts' jurisdiction. ... 4
III.   FCPS satisfies the injunction factors. ............................................... 8
   A. FCPS is likely to suffer irreparable harm. ......................................... 8
   B. FCPS is likely to succeed on the merits. ......................................... 10
   C. The balance of equities plainly favors FCPS. ................................ 11
CONCLUSION ....................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cmty. Legal Servs. v. U.S. Dep't of Health & Hum. Servs.*,
   137 F.4th 932 (9th Cir. 2025) .............................................................................. 5

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,
   601 U.S. 42 .......................................................................................................... 9

*Doe v. South Carolina*,
   2025 WL 2375386 (4th Cir. Aug. 15, 2025) ...................................................... 10

*Grimm v. Gloucester County School Board*,
   972 F.3d 586 (4th Cir. 2020) ............................................................................... 1

*McDonald v. Centra, Inc.*,
   946 F.2d 1059 (4th Cir. 1991) ............................................................................. 7

*Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*,
   918 F.3d 353 (4th Cir. 2019) ............................................................................... 9

*Portsmouth Redev. & Hous. Authority v. Pierce*,
   706 F.2d 471 (4th Cir. 1983) ........................................................................... 4, 5

*Thakur v. Trump*,
   — F. Supp. 3d —, 2025 WL 2696424 (N.D. Cal. Sep. 22, 2025) ...................................................................................................... 5

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ................................................................................................. 9

**Statutes**

20 U.S.C. § 1682 ................................................................................................. 6, 7

20 U.S.C. § 1683 ............................................................................................. 4, 5, 6

## INTRODUCTION

In their opposition to FCPS's[1] motion for injunctive relief Defendants repeatedly assert that "Fairfax will continue to receive the allocated grant monies" as this litigation proceeds. Dkt. 15 ("Opp.") at 9. That assertion is flatly incorrect and clashes with Defendants' consistent representations to FCPS in correspondence included in the record, in which Defendants have made clear that reimbursement from the funds Congress has appropriated for FCPS is conditioned on FCPS agreeing to violate Title IX as interpreted in this Court's decision in *Grimm v. Gloucester County School Board*, 972 F.3d 586 (4th Cir. 2020). It is this unlawful condition that FCPS seeks to enjoin. In their opposition, Defendants do not address or explain the core justiciable conflict in this case—the fact that the Department of Education is imposing a condition on continued access to federal funds with which FCPS cannot legally comply. Because FCPS cannot satisfy that clear condition, Defendants *have already* withheld and will certainly continue to withhold reimbursements.

---

[1] This memorandum uses the same abbreviation and citation conventions as FCPS's Motion, Dkt. 10 ("Mot.")

1

In these circumstances, FCPS has more than met the requirement to show harm is likely. That harm, moreover, is irreparable because money damages are generally unavailable against the federal government due to its sovereign immunity. Nor are Defendants correct that claims that might result in payment of money are, *ipso facto*, claims that "sound in contract" and thus within the jurisdiction of the Court of Federal Claims. *See* Opp. 12. Defendants offer that *non sequitur* in response to FCPS's explanation of Congress's clear statutory statements that Article III courts, not the Court of Federal Claims, have jurisdiction of this case. FCPS will not have recourse to a suit *for money damages* at conclusion of this litigation—but Title IX has given it recourse to a suit now under the APA.

FCPS respectfully reiterates its request that the Court reverse the district court's erroneous jurisdictional ruling; enjoin Defendants from mis-designating FCPS as "high-risk"; and remand to the district court.

## ARGUMENT

I. **Defendants have already denied FCPS access to federal funds based on the false assertion that Regulation 2603.2 violates Title IX.**

Contrary to Defendants' counsel's erroneous assurances, the harm of which FCPS complains is *already occurring*. *See generally* Exs. A, B,

2

C (letters from Defendants denying, on the basis of FCPS's refusal to violate Title IX as interpreted in *Grimm*, reimbursement of funds FCPS has expended).[2] The attached exhibits directly rebut Defendants' repeated representations in their Opposition that FCPS "will continue to receive funds." *See* Opp. 4; *see also id.* at 9 ("Fairfax will continue to receive the allocated grant monies"); *id.* at 10 (the "Department will continue to provide these funds"); *id.* at 17 ("Fairfax will continue receiving funds"). Defendants have not just threatened to "suspend federal funds"; they have made good on that threat, depriving FCPS of specific funding based on Defendants' false assertion that FCPS has violated Title IX. In short, the harm of which FCPS complained is not speculative; it is occurring.

---

[2] And despite the representations of the defendants in their opposition brief, the Virginia Department of Education has already started implementing the "high risk" designation for FCPS and its access to coordinated early intervening services ("CEIS") funding under the Individuals with Disabilities Education Act.

Should this appeal proceed to merits briefing, FCPS will seek leave of the Court to incorporate these documents into the record on appeal. FCPS presents them now solely for the purpose of impeaching counsel's misrepresentation to this Court on a matter of material fact at issue in this litigation. We assume that Defendants' counsel were unaware of these documents and the ongoing deprivation of federal funds when they submitted an Opposition that makes a contrary representation.

3

This deprivation of funds is consistent with Defendants' ongoing demands over the course of the "investigation" and this litigation—to wit, that FCPS must change its policy of allowing students access to sex-segregated facilities on the basis of their gender identity, and that the change is an absolute, non-negotiable condition of FCPS's continued receipt of federal funds. As the record shows, these demands have been unswerving throughout the parties' course of dealing and continue to this day.

## II. FCPS's claims lie exclusively within Article III courts' jurisdiction.

As FCPS explained in its Motion, the plain text of the judicial-review provision of Title IX, as well as the sovereign immunity waiver in the APA, both confirm that Article III courts have jurisdiction of appeals of denials of funding made pursuant to that title. *See* Dkt. 10 ("Mot.") at 9–17; 20 U.S.C. § 1683.

Defendants argue that because FCPS's claims "ultimately require[] the court to order the payment of money," they "sound in contract." Opp. 12. Defendants do not, however, point to any contract at issue here or explain why their assertion that any payment of money "sounds in contract" is necessarily so. Of course, many non-contract cases

4

eventually result in an award of money damages. Nor does their single citation for this point help them. Defendants cite a case concerning money due under *an express contract.* Opp. 12–13 (citing *Portsmouth Redev. & Hous. Authority v. Pierce*, 706 F.2d 471, 474–75 (4th Cir. 1983)); *but see Pierce*, 706 F.2d at 472 (explaining that plaintiff receives "subsidies pursuant to an annual contributions contract (ACC)"); *id.* at 473 (plaintiff "filed a complaint … seeking to enjoin HUD from withholding operating subsidies due under its ACC"). Here, Defendants have not identified any such express contract—and there is none. *See Thakur v. Trump*, — F. Supp. 3d —, 2025 WL 2696424, at *9 (N.D. Cal. Sep. 22, 2025) ("where no contract exists between plaintiffs and the Government and plaintiffs seek to enforce compliance with statutes and regulations, the matter is beyond the scope of the Tucker Act's exclusive jurisdiction") (cleaned up) (quoting *Cmty. Legal Servs. v. U.S. Dep't of Health & Hum. Servs.*, 137 F.4th 932, 938 (9th Cir. 2025)).

If Defendants' view of the law were correct, they would no doubt be able to identify *some* case in which the Court of Federal Claims has exercised jurisdiction over a claim arising under 20 U.S.C. § 1683. They do not, and counsel for FCPS has similarly found none. That dearth of

5

authority reinforces FCPS's core argument—that the express statutory language of Title IX provides relief in Article III courts through the APA.

Defendants cannot evade the conclusion that their decision to impose unlawful conditions on reimbursement of funds is an action under 20 U.S.C. § 1682, reviewable under § 1683. *See* Opp. 16–17. Defendants' justification for imposing the "high-risk" designation on FCPS is Defendants' false contention that FCPS is violating Title IX—a purported violation that may be addressed, if at all, *only* through § 1682. That, of course, is why Defendants *themselves* cite § 1682 as the authority under which they seek to "enforce regulations to effectuate the provisions of Title IX." R.1-8 at 7.

For the same reason, their contention that Ms. McMahon's imposition of the "high-risk" designation is committed to her unreviewable discretion fails. *See* Opp. 14–17. Because the enforcement action is one taken under § 1682 (by Defendants' own admission), and because that action has in fact caused a termination of funds based upon a finding of failure to comply with a requirement imposed under § 1682, Ms. McMahon's designation "shall not be deemed committed to unreviewable agency discretion." 20 U.S.C. § 1683. Defendants accuse

6

FCPS of artful pleading, Opp. 13, but it is Defendants who seek to disguise their Title IX § 1682 enforcement actions as something other than what they plainly are.

Nor should this Court enforce an administrative-exhaustion rule under which Defendants may require FCPS to further participate in their sham proceeding. FCPS has dutifully submitted requests for reconsideration and a "corrective action plan" as directed in the "high-risk" designation letter. *See* R.1-3 at 4. But Defendants have not waited until the conclusion of the administrative process to which they ask the Court to require that FCPS adhere. Instead, they have rushed to impose a reimbursement requirement and have begun withholding funds in an effort to force FCPS to accede to Defendants' erroneous interpretation of Title IX. Administrative exhaustion is not required where "the resort to administrative procedures would be futile." *McDonald v. Centra, Inc.*, 946 F.2d 1059, 1063 (4th Cir. 1991). Here, Defendants' actions demonstrate that no administrative process will provide FCPS with relief.

Because the Article III courts—including the district court—have jurisdiction of FCPS's claims, the district court's dismissal on jurisdictional grounds was error.

## III. FCPS satisfies the injunction factors.

### A. FCPS is likely to suffer irreparable harm.

Defendants have repeatedly made clear that the only way FCPS will receive federal reimbursement for its expenditures is if FCPS violates Title IX as interpreted by this Court in *Grimm*. *See, e.g.*, R.1-2 at 2 (Defendants' press release touting "administrative proceedings seeking suspension or termination of federal financial assistance" because FCPS "allow[s] students to occupy intimate facilities based on 'gender identity'"); R.1-3 at 4 ("Your division must submit plans for compliance with all federal laws, and provide detailed information that identifies and discusses the steps your division will take to ensure that grant funds will be spent in accordance with all appliable [*sic*] laws (this could include committing to implementing the resolution agreement sent to your division on July 25, 2025, with OCR's findings)"); R.1-9 at 2 (July 25, 2025 "Resolution Agreement" demanding "Rescission" of FCPS's policy codifying *Grimm*'s interpretation of Title IX).

8

As explained above, Defendants have already deprived FCPS of federal funds on this basis and have made clear that any future reimbursement is conditioned upon FCPS acceding to their desired policy change. In these circumstances, the harm FCPS has alleged is far more than merely likely to occur. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (party seeking injunction must show only that "he is likely to suffer irreparable harm").

Here, moreover, that harm is also likely irreparable. "[E]conomic damages may constitute irreparable harm where no remedy is available at the conclusion of litigation." *Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019). Defendants' coy citations to cases *not* involving the federal government, Opp. 8, ignore the elephant in the room—the federal government's sovereign immunity from most claims for money damages. *See, e.g.*, *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz,* 601 U.S. 42, 48 ("[T]he United States, as sovereign, is generally immune from suits seeking money damages.") The limited exceptions are those Congress has specifically identified—including the narrow jurisdiction of the Court of Federal Claims over *contract* claims resulting in *presently due* money

9

damages. Here, FCPS has not asserted such claims—and so it will not have a Court of Federal Claims case at the end of litigation.

## B. FCPS is likely to succeed on the merits.

Defendants have no response for the fundamental problem that their order requires FCPS to violate Title IX as interpreted by this Court's *Grimm* decision. They have not defeated and cannot defeat the core position articulated in FCPS's emergency motion—*i.e.*, that Defendants' demand for policy change is inconsistent with this Court's binding precedent.

Defendants' meritless attempts to find daylight between *Grimm* and FCPS's policy codifying *Grimm*, Opp. 19–21, are unavailing and inconsistent with the plain language of *Grimm* and subsequent cases reaffirming its validity. Nothing in the language of *Grimm*, *Doe v. South Carolina*,[3] or any other authority cited in FCPS's motion limits *Grimm*'s holding to the factual circumstances Defendants suggest. To the contrary, *Grimm* unequivocally stands for the proposition that Title IX requires school districts to provide access to sex-segregated facilities consistent with students' gender identities.

---

[3] 2025 WL 2375386 (4th Cir. Aug. 15, 2025).

10

The problem remains that Defendants demand that FCPS violate this Court's explication of law, an explication that binds them and FCPS in this circuit, as a condition for receiving future federal funding. FCPS is likely to succeed on the merits of its claims. *See generally* Mot. 18–25.

### C.  The balance of equities plainly favors FCPS.

Again, on the balance of equities, Defendants ignore that they can have no protectable interest in demanding violation of the law. *See* Opp. 21–22. Defendants contend that the Secretary will be harmed if Defendants are enjoined from imposing "high-risk" and reimbursement-only statuses on FCPS, and conditioning aid on knuckling under to the Secretary's erroneous interpretation of Title IX. *Id.*

First, if—as Defendants curiously contend—Defendants truly had no intention of cutting off FCPS's funding and FCPS's money will continue to flow, they can suffer no harm from being required to keep that promise. And, second, if Defendants were truly concerned about *other* "anomalies" than FCPS's compliance with *Grimm*'s interpretation of Title IX, it could ask that the injunction be properly tailored to address only that concern. Their contention that "any injunction"—including one

11

that bars them from telling Defendants to violate the law—would "be disruptive and harmful to the Secretary" gives away the game.

## CONCLUSION

For the foregoing reasons and those in FCPS's motion, the district court's order should be reversed and injunctive relief granted.

Dated: September 25, 2025

                                          Respectfully submitted,

/s/ *Timothy J. Heaphy*
Timothy J. Heaphy
  *Counsel of Record*
Joshua N. Mitchell
Fiona Carroll
Lindsay Hemminger
WILLKIE FARR &
  GALLAGHER LLP
1875 K Street Northwest
Washington, DC 20006
202-303-1000
theaphy@willkie.com

Breanna Smith-Bonsu
Chloe Smeltzer
WILLKIE FARR &
  GALLAGHER LLP
300 N. LaSalle Dr.
Chicago, IL 60654
312-728-9000

*Counsel for Plaintiff-Appellant*

12

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiff Fairfax County School Board certifies, pursuant to Local Rule 27(d)(2), that the foregoing motion contains 2,198 words, excluding the parts of the motion exempted by Local Rule 27(d)(2), according to the word count feature of Microsoft Word.

/s/ *Timothy J. Heaphy*
Timothy J. Heaphy
