No. 25-2087

# IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

FAIRFAX COUNTY SCHOOL BOARD,

Plaintiff-Appellant,

v.

LINDA MCMAHON, in her official capacity as Secretary of Education of the United States; UNITED STATES DEPARTMENT OF EDUCATION,

Defendants-Appellees.

On Appeal from the United States District Court
for the Eastern District of Virginia
Nos. 1:25-cv-01432-RDA-LRV
Honorable Rossie D. Alston, Jr.

**Brief of Amicus Curiae Alliance Defending Freedom Supporting Appellees and in Opposition to Appellant's Emergency Motion for Injunction Pending Appeal**

**Erin M. Hawley**
**Natalie D. Thompson**
**Alliance Defending Freedom**
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

*Attorneys for Amicus Curiae Alliance Defending Freedom*

## TABLE OF CONTENTS

Table of Authorities ................................................................................. iii

Amicus Curiae's Statement of Interest ..................................................... 1

Argument .................................................................................................. 1

I.  The school district is not likely to succeed on the merits. ............... 1

    A.  *Grimm* is no excuse—the school district is not "bound by" *Grimm*. ................................................................................ 2

    B.  The Department has it right—*Grimm* is likely to be overturned. ........................................................................... 4

II. The school district cannot show irreparable harm. ........................ 8

III. The public interest and equities favor the Department, not the school district. ................................................................................. 9

Conclusion .............................................................................................. 10

Certificate of Compliance ....................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Adams ex rel. Kasper v. School Board of St. Johns County*,
    57 F.4th 791 (11th Cir. 2022) .................................................................. 4, 6, 7

*Alabama v. U.S. Secretary of Education*,
    No. 24-12444, 2024 WL 3981994 (11th Cir. Aug. 22, 2024) ............ 5

*Bostock v. Clayton County*,
    590 U.S. 644 (2020) ................................................................................. 5

*Carroll ISD v. U.S. Department of Education*,
    No. 4:24-cv-00461-O, 2025 WL 1782572 (N.D. Tex. Feb. 19,
    2025) ................................................................................................................ 5

*Crouch v. Anderson*,
    145 S. Ct. 2835 (2025) ............................................................................. 5

*Department of Education v. California*,
    604 U.S. 650 (2025) ................................................................................. 9

*Department of Education v. Louisiana*,
    603 U.S. 866 (2024) ................................................................................. 5

*Doe v. South Carolina*,
    No. 25-1787, 2025 WL 2375386 (4th Cir. Aug. 15, 2025) ................ 3

*Duckett v. Fuller*,
    819 F.3d 740 (4th Cir. 2016) .......................................................................... 2

*Eknes-Tucker v. Governor of Alabama*,
    80 F.4th 1205 (11th Cir. 2023) ...................................................................... 6

*Frederick County Fruit Growers Association, Inc. v. Martin*,
    968 F.2d 1265 (D.C. Cir. 1992) ..................................................................... 2

*Grimm v. Gloucester County School Board*,
    972 F.3d 586 (4th Cir. 2020) ................................................................. passim

*L. W. ex rel. Williams v. Skrmetti*,
    83 F.4th 460 (6th Cir. 2023) ............................................................................. 6

*Mahmoud v. Taylor*,
    145 S. Ct. 2332 (2025) ...................................................................................... 9

*Martin v. Wilks*,
    490 U.S. 755 (1989) ..................................................................................... 2, 3

*Medina v. Planned Parenthood South Atlantic*,
    145 S. Ct. 2219 (2025) ...................................................................................... 8

*National Institutes of Health v. American Public Health Association*,
    145 S. Ct. 2658 (2025) ...................................................................................... 9

*National Organization of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs*,
    260 F.3d 1365 (Fed. Cir. 2001) ........................................................................ 3

*Nguyen v. Immigration & Naturalization Service*,
    533 U.S. 53 (2001) ............................................................................................ 5

*RCM Technologies, Inc. v. U.S. Department of Homeland Security*,
    614 F. Supp. 2d 39 (D.D.C. 2009) ................................................................... 8

*Roe v. Critchfield*,
    137 F.4th 912 (9th Cir. 2025) ................................................................. 2, 7, 9

*Sampson v. Murray*,
    415 U.S. 61 (1974) ............................................................................................ 8

*Sexuality & Gender Alliance v. Critchfield*,
    No. 1:23-CV-00315-DCN, 2025 WL 2256884 (D. Idaho Aug. 7, 2025) ....................................................................................................... 7

*Trump v. CASA, Inc.*,
    606 U.S. 831 (2025) .......................................................................................... 2

*United States v. Skrmetti*,
    145 S. Ct. 1816 (2025) .............................................................................. 5, 6, 7

*United States v. Virginia*,
    518 U.S. 515 (1996) ................................................................... 4, 5, 9

**Statutes and Regulations**

20 U.S.C. § 1681 ............................................................................................ 4

20 U.S.C. § 1686 ............................................................................................ 4

28 U.S.C. § 1346 ............................................................................................ 8

28 U.S.C. § 1491 ............................................................................................ 8

34 C.F.R. § 106.33 (2024) .............................................................................. 4

**Other Authorities**

Bryan A. Garner et al., *The Law of Judicial Precedent* (2016) ................. 3

Expert Report of Eric. M. Cantor, Ph.D,
    *Roe v. Critchfield*, No. 1:23-cv-315 (D. Idaho July 21, 2025),
    Dkt. 90-8, https://perma.cc/PAL6-LXF5 ......................................... 10

Hilary Cass, *The Cass Review: Independent review of gender
    identity services for children and young people: Final Report*
    (2024), https://perma.cc/FBM7-DW8V ........................................... 10

Order, *D.P. ex rel A.B. v. Mukwonago Area School District*,
    No. 23-2568, 2025 WL 1794428 (7th Cir. June 30, 2025) ................ 3

## AMICUS CURIAE'S STATEMENT OF INTEREST

Alliance Defending Freedom is a public-interest law firm dedicated to defending religious freedom, free speech, the sanctity of life, parental rights, and marriage and family. Children have a right to bodily privacy from the opposite sex, but policies like the Fairfax County School Board's allow males into girls' locker rooms, showers, and restrooms, and vice versa, all in service of injurious gender ideology. ADF has frequently litigated in this context, so it has a strong interest in seeing the courts correctly interpret and apply Title IX and the Equal Protection Clause. In addition, ADF frequently brings claims under the Administrative Procedures Act, and in many of these it has obtained preliminary injunctive relief or a stay under 5 U.S.C. § 705. It is consequently interested in the rigorous development of the governing legal principles.[*]

## ARGUMENT

**I.    The school district is not likely to succeed on the merits.**

Even if the school district could overcome the jurisdictional and procedural problems identified in the Department's response (at 10–18), it is unlikely to succeed for another fundamental reason: the policy it's defending is inconsistent with governing law.

---

[*] No counsel for a party authored this brief in whole or in part, and no person other than amicus and its counsel made any monetary contribution to fund its preparation or submission.

1

### A. *Grimm* is no excuse—the school district is not "bound by" *Grimm*.

The school district argues (at 19–20) it is "bound by" *Grimm v. Gloucester County School Board*, 972 F.3d 586 (4th Cir. 2020). That's not how judgments work.

*Grimm* binds the parties to that case, "but it does not conclude the rights of strangers to those proceedings." *Martin v. Wilks*, 490 U.S. 755, 762 (1989). The school district was not a party to *Grimm*, and "a judgment rendered by a federal court binds not a non-party." *Frederick Cnty. Fruit Growers Ass'n, Inc. v. Martin*, 968 F.2d 1265, 1270 (D.C. Cir. 1992). That is true even if facts and legal issues are the same. *Duckett v. Fuller*, 819 F.3d 740, 744 (4th Cir. 2016). Similarly, federal courts lack equitable power to issue "universal injunctions," *i.e.*, injunctions that apply "against *anyone*." *Trump v. CASA, Inc.*, 606 U.S. 831, 837 (2025).

In any event, the school district's policies extend beyond *Grimm*. *Grimm* addressed "school bathroom policies" for "transgender students who 'consistently, persistently, and insistently' express a binary gender," specifically, a female who identified as a boy. 972 F.3d at 596 (citation modified). Its holding did not resolve policy for "gender-expansive" or "non-binary" gender identities, *id.*, males identifying as girls, or school facilities where privacy interests are even greater. *Cf. Roe v. Critchfield*, 137 F.4th 912, 925 (9th Cir. 2025) ("[T]he privacy interest … is most strongly implicated in locker rooms and communal shower rooms that lack curtains or stalls"). Yet, as the Department explains (at 20), the school district's policy is expansive and "reaches *all* sex-based facilities—including locker rooms." *Grimm* is no excuse.

2

To be sure, *Grimm*'s holding has stare decisis effect until it is overruled. *Doe v. South Carolina*, No. 25-1787, 2025 WL 2375386, at *8 (4th Cir. Aug. 15, 2025). But "stare decisis … binds courts," not parties. *Nat'l Org. of Veterans' Advocs., Inc. v. Sec'y of Veterans Affs.*, 260 F.3d 1365, 1373 (Fed. Cir. 2001). The school district is entitled to its "own day in court," *Martin*, 490 U.S. at 762, and nothing prevents it from seeking to overturn *Grimm*. *Nat'l Org. of Veterans' Advocs.*, 260 F.3d at 1373–74. Indeed, "nothing about stare decisis is absolute." Bryan A. Garner et al., *The Law of Judicial Precedent* 35 (2016).

Indeed, *Grimm* likely will be overruled before the Supreme Court's term is through. *See West Virginia v. B.P.J.*, No. 24-43 (U.S. July 3, 2025) (granting certiorari); *cf.* Order, *D.P. ex rel A.B. v. Mukwonago Area Sch. Dist.*, No. 23-2568, 2025 WL 1794428 (7th Cir. June 30, 2025) (granting en banc review to reconsider *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1049 (7th Cir. 2017)).

To be sure, if the school district were sued, it would have to contend with *Grimm*. But the Department of Education is not going to sue a school district for implementing the very policies it says the law requires. And the school district does not claim it will imminently face private litigation. It may not hide behind *Grimm* and refuse to address the Department's concerns. For that reason, too, injunctive relief should be denied.

### B. The Department has it right—*Grimm* is likely to be overturned.

Sex-specific restrooms are both "nearly universal" and longstanding—they have existed since time immemorial. *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 796 (11th Cir. 2022) (en banc). To date, twenty states have enacted laws requiring sex-specific privacy at public schools. *Grimm* held that, as applied to a female student who identified as a boy, such a restroom policy violates Title IX and the Equal Protection Clause. *See Grimm*, 972 F.3d at 596. As numerous courts have subsequently explained, *Grimm* got it wrong.

**1.** *Grimm*'s Title IX holding is likely to be overruled. Title IX prohibits discrimination "on the basis of sex." 20 U.S.C. § 1681(a). But because the "[p]hysical differences between men and women . . . are enduring" and "the two sexes are not fungible," *United States v. Virginia*, 518 U.S. 515, 533 (1996), Title IX allows certain sex-based distinctions. It allows "separate living facilities for the different sexes," 20 U.S.C. § 1686, and implementing regulations in place since 1975 permit "separate toilet, locker room, and shower facilities on the basis of sex." 34 C.F.R. § 106.33.

*Grimm* depends on reading Title IX to mandate that schools treat individuals according to gender identity, rather than sex. That is untenable. *See Adams*, 57 F.4th at 812–15 (explaining why the word "'sex' in Title IX [must] mean 'biological sex'"). Title IX protects sex-specific privacy interests, not gender-identity-based access. When the prior administration promulgated a gender-identity-based regulation, eight different courts preliminarily enjoined its enforcement. *See Alabama v. U.S. Sec'y of Educ.*, No. 24-12444, 2024 WL 3981994, at *1

4

n.2 (11th Cir. Aug. 22, 2024) (per curiam) (collecting cases). The Supreme Court agreed—unanimously—that "the plaintiffs were entitled to preliminary injunctive relief as to … the central provision that newly defines sex discrimination to include discrimination on the basis of sexual orientation and gender identity." *Dep't of Educ. v. Louisiana*, 603 U.S. 866, 867 (2024). As one court put it when vacating that regulation, "expanding the meaning of 'on the basis of sex' to include 'gender identity' turns Title IX on its head." *Carroll ISD v. U.S. Dep't of Educ.*, No. 4:24-cv-00461-O, 2025 WL 1782572, at *3 (N.D. Tex. Feb. 19, 2025).

**2.** *Grimm*'s equal protection holding, too, will likely be overturned. In *Grimm*, the Court found that a separate-bathrooms policy discriminated "on the basis of sex," 972 F.3d at 593–95, and treated "transgender status" as a suspect classification, *id.* at 607. Wrong again.

In *United States v. Skrmetti*, 145 S. Ct. 1816 (2025), the Supreme Court clarified that heightened scrutiny is not triggered by "mere reference to sex" or contexts "uniquely bound up in sex." *Id.* at 1829; *cf. Crouch v. Anderson*, 145 S. Ct. 2835 (2025) (granting, vacating, and remanding to this Court for reconsideration in light of *Skrmetti*). *Grimm* cannot survive that holding. Though a law discriminates based on sex when premised on outmoded generalizations about the sexes' roles or capabilities, *Bostock v. Clayton Cnty.*, 590 U.S. 644, 700 (2020), it is not stereotyping to acknowledge "enduring" realities, *Virginia*, 518 U.S. at 533. Biological differences are "not a stereotype." *Nguyen v. Immigr. Naturalization Serv.*, 533 U.S. 53, 68 (2001).

Scientific and medical consensus, too, have shifted since *Grimm* was decided. *Grimm* embraced standards promulgated by the World

5

Professional Association for Transgender Health (WPATH). "Fortunately," *Grimm* proclaimed, "we now have modern accepted treatment protocols for gender dysphoria," 972 F.3d at 595, including encouraging children to "socially transition," *id.* at 597. And the court stated (as if it were uncontroverted fact) that "transgender students have better mental health outcomes when their gender identity is affirmed," including through "[u]sing the school restrooms matching their gender identity." *Id.* at 597 (citing an advocacy organization's amicus brief).

Since *Grimm*, the claimed scientific consensus has crumbled. European nations that once lauded "affirming" a child's gender identity, including through medical intervention, have backed away and warned of its risks. *See Skrmetti*, 145 S. Ct. at 1843–45 (Thomas, J., concurring) (discussing policy developments). And "[r]ecent revelations suggest that WPATH … bases its guidance on insufficient evidence and allows politics to influence its medical conclusions." *Id.* at 1847. That included "chang[ing] its medical guidance to accommodate external political pressure" from the Biden administration. *Id.* at 1848.

Numerous courts have also rejected *Grimm*'s conclusion that "transgender status" is a suspect classification. *See L. W. ex rel. Williams v. Skrmetti*, 83 F.4th 460, 486 (6th Cir. 2023), *aff'd*, *Skrmetti*, 145 S. Ct. 1816 (2025); *Eknes-Tucker v. Gov. of Ala.*, 80 F.4th 1205, 1230 (11th Cir. 2023); *Adams*, 57 F.4th at 803 n.5. And rightly so. "Transgender status" does not warrant heightened scrutiny: "persons can and do move into and out of the class." *Skrmetti*, 145 S. Ct. at 1861 (Alito, J., concurring); *accord id.* at 1850–51 (Barrett, J., concurring); it is not "discrete," *id.* at 1851–52 (citation modified); the "history of *de*

6

*jure* discrimination" that characterized other suspect classes is lacking; and members are not politically powerless, *id.* at 1853–55.

Because no classification triggers heightened scrutiny, rational basis applies to sex-specific restrooms, locker rooms, and other private spaces. Separating intimate spaces based on sex is undeniably rational. In fact, numerous courts have upheld such privacy protections even under heightened scrutiny. *See Critchfield*, 137 F.4th at 925; *Adams*, 57 F.4th at 803–05. They further important interests by protecting children from exposure to the opposite sex when in vulnerable spaces like locker rooms and restrooms. These privacy concerns apply even to restrooms with separate stalls. As one court recently observed, "regardless of whether anyone else can *see* a person using the restroom—in a state of partial undress or not—there are more general privacy concerns at play." *Sexuality & Gender All. v. Critchfield*, No. 1:23-CV-00315-DCN, 2025 WL 2256884, at *8 (D. Idaho Aug. 7, 2025), *appeal docketed* No. 25-5036 (9th Cir. Aug. 11, 2025); *accord Adams*, 57 F.4th at 806. And these concerns are heightened in locker rooms and showers. *Critchfield*, 137 F.4th at 925.

The Department's policy would ensure such protection. It does not violate the Equal Protection Clause.

## II. The school district cannot show irreparable harm.

"[L]oss of income, ultimately to be recovered," is not irreparable injury. *Sampson v. Murray*, 415 U.S. 61, 90 (1974). While some courts have suggested that severe monetary loss that "threatens the very existence" of the movant's operations can support injunctive relief, *RCM Techs., Inc. v. U.S. Dep't of Homeland Sec.*, 614 F. Supp. 2d 39, 46–47 (D.D.C. 2009) (quotation modified), there's no such showing here, as the Department explains (at 4, 9–10).

Further, if the Department breaches its obligations, the school district has a remedy: damages under the Tucker Act. That is the proper avenue for a suit alleging breach of "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1); *id.* § 1346(a)(2). Title IX is Spending Clause legislation, so the relationship between the school district and the Department is an agreement "in the nature of a contract." *Medina v. Planned Parenthood S. Atl.*, 145 S. Ct. 2219, 2234 (2025). If the Department has breached that agreement, the school district can seek damages. That means there's no unrecoverable monetary loss.

The school district also suggests (at 25) it is irreparably harmed because "[d]efendants have conditioned … federal funding on [the school district] taking illegal actions." The source of illegality it cites is *Grimm*, but the school district is a stranger to that judgment. And even under *Grimm*, the school district is free to resolve many of the violations identified by the Department. *Supra* I.A. It cannot show irreparable harm.

8

## III. The public interest and equities favor the Department, not the school district.

Even if the school district were likely to succeed on the merits (it's not), and even if it could show irreparable harm (it can't), the Court should refuse an injunction pending appeal. The public interest and the equities weigh heavily against the school district.

To begin with, it will be effectively impossible for the Department to recoup funds from the school district. That tilts the equities—and the public interest—in the Department's favor. *Cf. Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025); *Dep't of Educ. v. California*, 604 U.S. 650, 651–52 (2025).

Money aside, the equities favor protecting children's bodily privacy and safety. Courts have long recognized "that the desire to shield one's unclothed figure from the view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." *Critchfield*, 137 F.4th at 923; *Virginia*, 518 U.S. at 550 n.19 (admitting women to VMI "would undoubtedly require alterations necessary to afford members of each sex privacy from the other sex in living arrangements"). This is especially true for school-aged children who are still developing physically, emotionally, and socially. *Critchfield,* 137 F.4th at 924. As in *Critchfield*, schools can protect students' privacy interests while accommodating transgender-identifying students with single-occupancy restrooms. *Cf. Mahmoud v. Taylor*, 145 S. Ct. 2332, 2363 (2025) (explaining that a school "cannot purport to rescue one group of students from stigma and isolation by stigmatizing and isolating another").

9

The school district's policies exacerbate safety risks, especially for girls. Even if no wrongdoing is committed by "transgender students who 'consistently, persistently, and insistently' express a binary gender," *Grimm*, 972 F.3d at 596, opposite-sex restroom access can be abused.

Finally, gender-identity-based practices risk harming the very students they claim to help. Social transition is "an active intervention" with "significant effects on the child['s] … psychological functioning and longer-term outcomes." Hilary Cass, *The Cass Review: Independent review of gender identity services for children and young people: Final Report* 158 (2024), https://perma.cc/FBM7-DW8V. Experts have concluded WPATH's claims about improved mental health outcomes are unsupported by quality evidence. *Id.* at 163; Expert Rep. of Eric. M. Cantor, Ph.D at 82–88, *Roe v. Critchfield*, No. 1:23-cv-315 (D. Idaho July 21, 2025), Dkt. 90-8, https://perma.cc/PAL6-LXF5.

Social transition can entrench gender dysphoria by preventing the natural desistance—that is, return to accepting one's biological sex—that most children experience by the end of puberty. *See* Cass Review, *supra*, at 223 ("The current evidence base suggests that children who present with gender incongruence at a young age are most likely to desist."); Cantor Report, *supra*, at 81 (studies "suggest that the social transition of prepubescent children prevents gender dysphoria from desisting on its own"). That leads to medical interventions and the attendant risks. Cantor Report, *supra,* at 93–101. The equities do not favor encouraging children down this path.

## CONCLUSION

The Court should deny the motion for injunction pending appeal.

10

Respectfully submitted this 25th day of September, 2025.

/s/ *Natalie D. Thompson*
**Natalie D. Thompson**
**Erin Morrow Hawley**
**Alliance Defending Freedom**
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

*Counsel for Amicus Curiae Alliance Defending Freedom*

## CERTIFICATE OF COMPLIANCE

    I, Natalie D. Thompson, hereby certify that the foregoing brief complies with the word limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,529 words.

    I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook.

*/s/ Natalie D. Thompson*
Natalie D. Thompson