No. 25-2087

# United States Court of Appeals for the Fourth Circuit

**FAIRFAX COUNTY SCHOOL BOARD,**

*Plaintiff-Appellant,*

v.

**LINDA McMAHON, Secretary of the Department of Education; UNITED STATES DEPARTMENT OF EDUCATION**

*Defendants-Appellees.*

On Appeal from the United States District Court
For the Eastern District of Virginia
Case No. 1:25-cv-1432 (RDA/LRV)

**Defendants-Appellees' Opposition to Alexandria City School Board's Motion for Leave to Intervene as Plaintiff-Appellant**

CHAD MIZELLE
Acting Associate Attorney General

ABHISHEK KAMBLI
Deputy Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division



Date: September 26, 2025

LINDSEY HALLIGAN
United States Attorney

MATTHEW J. MEZGER
GARRY D. HARTLIEB
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:   (703) 299-3741
Fax:   (703) 299-3983
Email: Matthew.Mezger@usdoj.gov

*Attorney for Defendants-Appellees*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ........................................................................................... 1

STATEMENT OF THE CASE ........................................................................... 2

     I.     FACTUAL BACKGROUND ................................................................. 2

          A.  The Secretary of Education Designates Alexandria as "High Risk" 2

          B.  Fairfax Seeks Emergency Relief in the District Court After the Secretary Also Designates It as "High Risk." ................................. 3

     II.    PROCEDURAL BACKGROUND ........................................................... 4

ARGUMENT .................................................................................................. 5

     I.     LEGAL STANDARD ......................................................................... 5

     II.    ALEXANDRIA CANNOT MEET ITS BURDEN TO ESTABLISH ENTITLEMENT TO PERMISSIVE INTERVENTION IN THIS COURT. ........................................... 7

          A.  Alexandria's Motion is Procedurally Improper. ............................ 7

          B.  Alexandria's Intervention Motion is Untimely. ............................ 7

          C.  Alexandria's Interests are Substantially Indistinguishable from Fairfax's ................................................................................ 11

          D.  Fairfax Adequately Represents Alexandria's Interests ................. 13

          E.  The Effect on the Parties Favors Denying Intervention ............... 14

CONCLUSION .............................................................................................. 17

CERTIFICATE OF COMPLIANCE ..................................................................... 19

CERTIFICATE OF SERVICE ........................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Amalgamated Transit Union Int'l, AFL-CIO v. Donovan*,
  771 F.2d 1551 (D.C. Cir. 1985) ...............................................................5

*Ass'n for Educ. Fairness v. Montgomery Cnty. Bd. of Educ.*,
  ("AEF"), 88 F.4th 495 (4th Cir. 2023) ...................................... passim

*Boaz Hous. Auth. v. United States*,
  994 F.3d 1359 (Fed. Cir. 2021) ...........................................................15

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*,
  595 U.S. 267 (2022)....................................................................... passim

*Dep't of Educ. v. California*,
  604 U.S. 650 (2025)............................................................... 14, 15, 16

*E. Bay Sanctuary Covenant v. Biden*,
  102 F.4th 996 ..........................................................................................5

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. AFL-CIO,
  Loc. 283 v. Scofield*,
  382 U.S. 205 (1965)................................................................................6

*Kansas v. Mayorkas*,
  145 S. Ct. 415 (2024) .............................................................................5

*Lummi Tribe of Lummi Rsrv., Wash. v. United States*,
  870 F.3d 1313 (Fed. Cir. 2017) ................................................... 14, 15

*NAACP v. New York*,
  413 U.S. 345 (1973)................................................................................8

*Pub. Serv. Co. of N.M. v. Barboan*,
  857 F.3d 1101 (10th Cir. 2017) .............................................................5

*Richardson v. Flores*,
  979 F.3d 1102 (5th Cir. 2020) ...................................................................5

*Roeder v. Islamic Republic of Iran*,
  333 F.3d 228 (D.C. Cir. 2003) ...................................................................8

*United Airlines, Inc. v. McDonald*,
  432 U.S. 385 (1977) ...................................................................................10

*United States v. Google LLC*,
  No. 25-5016, 2025 WL 880552 (D.C. Cir. Mar. 21, 2025) ...................................7

*Virginia v. Westinghouse Elec. Corp.*,
  542 F.2d 214 (4th Cir. 1976) ...................................................................12

**STATUTES**

20 U.S.C. § 1226a-1 ...................................................................3

28 U.S.C. § 1491(a)(1) ...................................................................16

**RULES**

Fed. Rule Civ. P. 24(b)(1)(a) ...................................................................6

**OTHER AUTHORITIES**

Ryan Belmore, "Federal government places Alexandria schools on high-risk status over Title IX," ALXnow
  https://www.alxnow.com/2025/08/19/federal-government-places-alexandriaschools-on-high-risk-status-over-title-ix/ ...........................................9

Ryan Belmore, "Alexandria schools face federal Title IX deadline today,"ALXnow (Aug. 15, 2025),
  https://www.alxnow.com/2025/08/15/alexandria-schools-face-federal-title-ix-deadline-today/ ...................................................................9

Ryan Belmore, "Alexandria schools clarify no federal funds withheld despite 'high-risk' status," ALXnow
  https://www.alxnow.com/2025/09/17/alexandria-schools-clarify-no-federal-funds-withheld-despite-high-risk-status/...................................................3, 16

Angela Woolsey, "BREAKING: FCPS sues Education Department for freezing funding over transgender policies," FFXnow (Aug. 29, 2025)
  https://www.ffxnow.com/2025/08/29/breaking-fcps-sues-education-department-for-freezing-funding-over-transgender-policies/ ................................................9

*Wright & Miller*,
  7C Fed. Prac. & Proc. Civ. § 1916 (3d ed. 2023) ................................................5

## **INTRODUCTION**

Prospective intervenor Alexandria City School Board ("Alexandria") makes an unusual and untimely request to intervene in this Court, based on an alleged emergent need to protect its rights, more than 24 days after this litigation began (and 34 days after the events creating this putative "emergency"), despite making no effort whatsoever to pursue relief in the District Court below. Alexandria cannot meet the high bar applicable to intervention on appeal. Its motion violates this Court's "guardrail" against parties' belated attempts to insert themselves in litigation and is otherwise untimely. Further, in an attempt to meet the standard for intervention, Alexandria argues positions inherently in tension with one another. On the one hand, it asserts that the appeal could impact its interests, even though it has never participated in the litigation. But on the other hand, it argues that its interests are sufficiently distinct such that counsel for Plaintiff-Appellant Fairfax County School Board, cannot adequately represent their mutual interests, even though only Fairfax sought judicial intervention prior to this motion.

Alexandria cannot call both sides of the coin. If its interests are truly distinct, as its motion argues, then it should do what Fairfax and all other litigants do: initiate a civil action. If its interests are not so distinct, then its motion should still be denied either as untimely as it made no effort to join the District Court litigation, despite notice and opportunity to do so, or because Fairfax can adequately represent its

interests. Under either scenario, Alexandria will not face imminent harm by following the appropriate procedures for commencing litigation, especially where its own employees and declarant establish that most of its federal funding is already on reimbursement status and has not been terminated. The Court should deny Alexandria's motion to intervene.

## STATEMENT OF THE CASE

I.     FACTUAL BACKGROUND

A.     **The Secretary of Education Designates Alexandria as "High Risk"**

In early February 2025 through spring of 2025, the Department of Education's Office of Civil Rights investigated Alexandria's policy regarding facilities access. Doc.13, at 88.[1] After gathering information from Alexandria, on July 25, 2025, the Secretary issued a 21-page decision explaining her findings and analysis, which ultimately concluded that Alexandria's facilities policy violates Title IX. *See generally* R.3-5. After reviewing the decision, Alexandria informed the Secretary that it disagreed with her findings and would not enter into a voluntary resolution agreement and further asked that she "pause [any] contemplated action in order to allow the U.S. Supreme Court to weigh [] more definitively on the issues raised [in] this matter." Doc.13, at 90.

---

[1] Citations to "Doc." refer to filings on this Court's docket, whereas as citations to "R." refer to the district court docket below (*i.e.*, *Fairfax County School Board v. McMahon*, 1:25-cv-1342 (E.D. Va.)).

Four days after Alexandria wrote the Secretary with its positions concerning the findings, on August 19, 2025, the Secretary informed Alexandria – and in a separate, but similarly-reasoned, letter on the same day, Fairfax – that it had been "designated [] as a 'high-risk' entity… in accordance with 2 C.F.R. §§ 200.208 and 3474.10." Doc.13 at 92. As Alexandria's own personnel have publicly admitted, "[w]hile [Alexandria] has been designated as a high-risk entity by the United States Department of Education, *no* federal funds, have been withheld from [Alexandria] as of today." Ryan Belmore, "Alexandria schools clarify no federal funds withheld despite 'high-risk' status," ALXnow.[2] Rightly so. This designation under 20 U.S.C. § 1226a-1 "do[es] not freeze or cut off an entity's access to federal funds." R.19-1, ¶ 4. Instead, the "high risk" designation "allow[s] the Department to account for identified risks and potential risks and appropriately monitor the grantee to mitigate those risks." R.19-1, ¶ 4. As a result, Alexandria. has simply been "placed on a reimbursement method of payment," which is how it already receives its federal formula grant funds, as Alexandria's own declarant confirms. Doc.13, at 74, 94.

### B. Fairfax Seeks Emergency Relief in the District Court After the Secretary Also Designates It as "High Risk."

On August 29, 2025, ten days after the Secretary designated Fairfax and Alexandria as "high risk," *Fairfax* initiated a civil action and sought emergency

---

[2] Available at https://www.alxnow.com/2025/09/17/alexandria-schools-clarify-no-federal-funds-withheld-despite-high-risk-status/ (last accessed Sept. 26, 2025).

relief in the form of a TRO and/or preliminary injunction from the District Court. R.1, R.3. The Secretary opposed that motion on September 2, 2025, and the District Court heard argument on September 3, 2025. At that hearing, the District Court indicated that it would strive to issue a ruling on Fairfax's pending emergency by Friday, September 5, 2025. Doc.13 at 11 & n.4. During that hearing, Fairfax's counsel informed the District Court that there "may very well be . . . similar complaints" filed "with this Court" from other Northern Virginia public school systems, including Alexandria. R.33, at 39 ln.4-10. But no litigation from Alexandria arrived. Two days later, the District Court denied Fairfax's motion and dismissed its complaint for lack of jurisdiction. R.28. On September 9, 2025, Fairfax noticed an appeal to this Court. R.30

## II.   PROCEDURAL BACKGROUND

Almost a week after Fairfax noticed its appeal, Fairfax moved this Court for an emergency preliminary injunction pending appeal. Doc.10. It was only after Fairfax sought such emergency relief that Alexandria indicated to the Secretary that it was considering whether to seek to join this appeal. Indeed, on September 19, Alexandria sought the Secretary's position on its intervention in this appeal, and on that same date, the Secretary informed Alexandria that she would oppose its motion. Though Alexandria had the Secretary's position, it still waited until September 22, 2025, to move to intervene in this appeal. Doc.13. Accompanying Alexandria's

motion to intervene is its own emergency motion for a preliminary injunction pending appeal, which seeks relief from the Secretary's decision made 32 days prior. Doc.13 at 26-56.

## **ARGUMENT**

### I.   LEGAL STANDARD

Intervention on appeal is "unusual" and should only be permitted in an "exceptional case for imperative reasons." *See E. Bay Sanctuary Covenant v. Biden*, 102 F.4th 996, 1000–01, n.1 (9th Cir.) (collecting cases for the proposition), *cert. denied sub nom. Kansas v. Mayorkas*, 145 S. Ct. 415 (2024); *Richardson v. Flores*, 979 F.3d 1102, 1105 (5th Cir. 2020) (noting there is a "steep threshold for allowing intervention on appeal"); *Pub. Serv. Co. of N.M. v. Barboan*, 857 F.3d 1101, 1113 (10th Cir. 2017) (similar); *Amalgamated Transit Union Int'l, AFL-CIO v. Donovan*, 771 F.2d 1551, 1552–53, 1553 n.3 (D.C. Cir. 1985) (similar). "There is considerable reluctance ... to allow intervention after the action has gone to judgment ... [and] even more reason to deny an application to intervene made while an appeal is pending." *Ass'n for Educ. Fairness v. Montgomery Cnty. Bd. of Educ. ("AEF")*, 88 F.4th 495, 499 (4th Cir. 2023) (quoting Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1916 (3d ed. 2023)). Nevertheless, "[r]esolution of a motion for permissive intervention is committed to the discretion of the court before which intervention is sought." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 278–79

(2022) (citing *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. AFL-CIO, Loc. 283 v. Scofield*, 382 U.S. 205, 217, n. 10 (1965); Fed. Rule Civ. P. 24(b)(1)(a)).

"No statute or rule provides a general standard to apply in deciding whether intervention on appeal should be allowed." *Cameron*, 595 U.S. at 276. In considering motions to intervene on appeal, courts consult "the policies underlying intervention in the district courts." *AEF*, 88 F.4th at 498 (quoting *Cameron*, 595 U.S. at 277). Thus, this Court "consider[s] a non-exhaustive list of factors—the timeliness of the [] request, the interests the [putative intervenor] seek[s] to represent, the extent to which the existing parties adequately represent those interests, and the effect on the [putative intervenor] and the current parties of granting or denying intervention." *Id.* at 499 (citing *Cameron*, 595 U.S. at 276–82).

In addition, two threshold guardrails prevent permissive intervention on appeal: (1) those seeking to force their way into lawsuits between others generally must do so while the case is pending before a trial court rather than waiting to do so on appeal; and (2) the party seeking to intervene must not "forgo any meaningful opportunity to obtain review of an adverse district court ruling" by "filing a fresh motion to intervene on appeal." *Id.* at 499.

II.    **ALEXANDRIA CANNOT MEET ITS BURDEN TO ESTABLISH ENTITLEMENT TO PERMISSIVE INTERVENTION IN THIS COURT.**

Alexandria fails to establish any, let alone each, of the factors this Court considers when evaluating permissive intervention on appeal. Alexandria's other arguments for why intervention should be granted are also without merit. Alexandria acknowledges that no federal funds are being cut. And it incorrectly argues that it lacks any possible court in which to pursue its claims. This Court should deny Alexandria's intervention motion.

### A.    Alexandria's Motion is Procedurally Improper.

Alexandria is not entitled to intervene because it has violated one of this Court's "guardrails" against appellate intervention. As noted above, this Court has held that a party seeking to intervene "generally must do so while the case is pending before a trial court rather than waiting to do so on appeal." *See AEF*, 88 F.4th at 499 But the record is devoid of any attempt to intervene in the district court, despite its knowledge of Fairfax's pending district court action. Doc.13 at 11, n.4.

### B.    Alexandria's Intervention Motion is Untimely.

Timeliness requires an assessment "from all the circumstances" of the cases but it is "most important" that the potential intervenor sought intervention "as soon as it became clear" that its interests would not be protected by the parties in the case. *Cameron*, 595 U.S. 267 at 279-280 (citation omitted). There is no bright line rule about the number of days for timely action. *See, e.g.*, *United States v. Google LLC*,

No. 25-5016, 2025 WL 880552, at *4 (D.C. Cir. Mar. 21, 2025) (*comparing NAACP v. New York*, 413 U.S. 345, 369 (1973) (finding motion untimely after seventeen days, in case affecting "rapidly approaching primary elections") *with Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (finding that intervention was timely when party intervened within "less than thirty days")).

Here, Alexandria's delay renders its instant motion untimely because it delayed taking any action soon after its alleged emergency, continued to delay after it became aware of how its interests related to those of existing parties to the litigation, and then delayed its attempt to insert itself into this appeal – all while, at the same time, it has claimed an "emergency." Alexandria's purported injury commenced on August 19, 2025, when the Secretary issued her discretionary decision to designate Alexandria as "high risk." Doc.13 at 10. Fairfax, which received the exact same discretionary decision on the exact same date, filed its action in the District Court and sought emergency relief on August 29, 2025. R.1, 3. But Alexandria did not do so. Nevertheless, Alexandria was aware of the District Court proceedings held on September 3, 2025, on Fairfax's request for emergency relief. Doc.13 at 11. Indeed, Alexandria's counsel was present. Doc.13 at 11, n.4. And Fairfax informed the Court that Alexandria was seeking to commence its own litigation. Doc.13 at 11. Thus, at the latest, Alexandria was aware of how its interests could be impacted by this suit on September 3, 2025, but likely earlier given that it

8

attended the District Court hearing. *See* Ryan Belmore, "Federal government places Alexandria schools on high-risk status over Title IX," ALXnow (Aug. 19, 2025);[3] Angela Woolsey, "BREAKING: FCPS sues Education Department for freezing funding over transgender policies," FFXnow (Aug. 29, 2025).[4]

Despite the emergency posture of the Fairfax's civil action, and the emergency that Alexandria now asserts, Alexandria neither sought to immediately intervene in the District Court, nor did it immediately file its own action seeking emergency relief. Instead, Alexandria waited until *after* the District Court entered its order on Fairfax's motion, *after* Fairfax appealed, and *after* Fairfax sought an injunction pending appeal in this Court. The net effect of that is that Alexandria failed to take any action until 34 days after the Secretary's decision that it seeks to challenge,[5] and 24 days after a similarly situated party filed an action in district court. *Cf. Cameron*, 595 U.S. at 278–79 (finding intervention timely when it was sought two days after learning that the present party would not continue to defend the policy in which it

---

[3]  Available at  https://www.alxnow.com/2025/08/19/federal-government-places-alexandria-schools-on-high-risk-status-over-title-ix/ (last accessed Sept. 26, 2025).

[4] Available at https://www.ffxnow.com/2025/08/29/breaking-fcps-sues-education-department-for-freezing-funding-over-transgender-policies/ (last accessed Sept. 24, 2025).

[5] Nor can Alexandria claim surprise that the Secretary's discretionary determination could be forthcoming. *See* Ryan Belmore, "Alexandria schools face federal Title IX deadline today," ALXnow (Aug. 15, 2025), available at https://www.alxnow.com/2025/08/15/alexandria-schools-face-federal-title-ix-deadline-today/ (last accessed Sept. 26, 2025).

had an interest). And it is not simply the amount of time elapsed that matters; Alexandria waited 24 days to seek relief in any court while simultaneously asserting an "emergency," and no facts changed about its relationship to existing parties in the litigation in the meantime.

While Alexandria asserts that it could not have intervened earlier, it offers no facts to support that conclusion. It never even tried to intervene in the District Court. Having chosen not to do so, it cannot plausibly assert that intervention would have been denied or was futile. *See Cameron*, 595 U.S. at 279-280 (finding intervention within two days timely, when party "sought to intervene 'as soon as it became clear' that the Commonwealth's interests 'would no longer be protected' by the parties in the case.") (quoting *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977)).

Alexandria's reliance on *AEF* does not support its argument that intervention in the District Court was futile. In *AEF*, the district court expressly deferred resolution of an intervention motion until after a pending motion to dismiss was decided. *AEF*, 88 F.4th at 498. Here, by contrast, the District Court did not even receive a motion for intervention—let alone indicate an intention to defer resolution of any intervention motion, and did not otherwise deter Alexandria from pursuing any litigation it may have sought.

**C.    Alexandria's Interests are Substantially Indistinguishable from Fairfax's**

The Secretary's July 25, 2025 findings and conclusions letter was addressed and applied to both Fairfax and Alexandria. *See generally* R.3-5. It resulted from an investigation into Fairfax, Alexandria, and three other schools. Doc.13 at 8-9. It was the Secretary's combined findings that ultimately caused the Secretary to exercise her discretion to designate Fairfax and Alexandria as "high risk." R.1-3; Doc.13 at 92-95. Although communicated in two separate letters, the Secretary's discretionary decision to designate both Fairfax and Alexandria as "high-risk" came on the same day and for similar reasons. Fairfax challenged the Secretary's August 19, 2025 discretionary "high risk" designation, R.1, 3, as Alexandria acknowledges, Doc.13 at 11. Alexandria now seeks to intervene to challenge the Secretary's August 19, 2025 discretionary "high risk" determination. Doc.13 at 26-56.

That does not warrant intervention. *See AEF*, 88 F.4th 495. This Court held in *AEF* that denying a motion to intervene is appropriate where "there are no facts in the record nor any chance to add facts—much less disagree about which facts to add," and that the proposed intervenors and the party on whose side they would intervene "seek the same thing from this Court." *Id.* at 500. Yet that is exactly what Alexandria presents here: it seeks to join the appeal to challenge a substantially similar decision by the Secretary that designated Alexandria and Fairfax in the same manner based on a previous joint letter containing factual findings and legal analysis

11

which Fairfax is already challenging. But the case for intervention is far weaker where the proposed intervenor "seeks no relief other than that which [an existing party] seeks for itself." *Id.* at 500 (quoting *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976)).

Alexandria's contention that it has unique interests to protect on appeal falls flat for at least two reasons. First, it does not contend with the fact that it seeks to challenge the same discretionary designation, premised upon the same underlying findings, as is being challenged by Fairfax, or articulate how it would remain uniquely impacted if that decision were to be set aside. Second, while Alexandria details the various federal funding it receives, Doc.13 at 72-75, it does not contend that the type of funding it receives is meaningfully different from the type of funding that Fairfax receives. *See, e.g.*, Doc.13 at 18 (summarily arguing its interests are different "because it receives different funds"). While the dollars distributed to Fairfax and Alexandria are, of course, different, Alexandria never explains how the type of funds received are different, or, more importantly, how those funds are differently impacted by the Secretary's August 19, 2025 designation letters. Instead, Alexandria argues that it "relies on federal funds to a greater degree" than Arlington and Fairfax. Doc.13 at 20. But that is immaterial as the reasons for the denial are similar.

### D.    Fairfax Adequately Represents Alexandria's Interests

Fairfax adequately represents Alexandria's interests on appeal by challenging the same underlying findings of fact and a substantially similar agency decision issued on the very same date. Fairfax is the party that commenced action and sought emergency relief in the District Court, appealed the adverse order of the District Court, and renewed a request for emergency relief on appeal. While Fairfax took all of those actions, Alexandria took none. Alexandria also does not identify any arguments or relief that Fairfax is declining to pursue that it would seek to assert in this appeal. Against that backdrop, Alexandria cannot demonstrate that Fairfax is not adequately representing its interests.

Alexandria's mere reference to "its own high-risk designation" does not assert a different interest from that of Fairfax. Doc.13 at 19. But even if Alexandria's interests are appreciably different from Fairfax's, then whatever interests Alexandria has have not been factually developed in the District Court record before this Court on appeal. And because they are allegedly distinct, then this appeal would presumably not reach them. In such instance, Alexandria would not be estopped from filing an action in District Court, especially if its interests are different from Fairfax's, or, as the District Judge found, in the Court of Federal Claims. Either approach would be more appropriate than seeking to intervene on appeal with an undeveloped record as to its interests.

13

### E.     The Effect on the Parties Favors Denying Intervention

Alexandria would not be prejudiced if this Court denied intervention. Denial of intervention would not bar Alexandria from seeking relief in either a district court or the Court of Federal Claims. Alexandria asserts that denying its motion would preclude it from partaking in any relief this Court awards and would leave it with no venue in which to bring its claims. Doc.13 at 21. As to the former, such consequence would necessarily result from its own assertion of an interest that was distinct from the existing parties, but it would not preclude other relief. The District Court held that jurisdiction appropriately lies with the Court of Federal Claims. R.28 at 2. It reached that holding on substantially similar facts and arguments as Alexandria seeks to present. Alexandria's mere disagreement with the District Court's holding, Doc.13 at 17-18, does not serve as a bar from filing suit in the Court of Federal Claims. But even if the Court of Federal Claims dismissed a future suit by Alexandria for lack of subject matter jurisdiction, Alexandria would be able to appeal that order to the Federal Circuit with the benefit of the Supreme Court's decision in *Department of Education v. California*, 604 U.S. 650 (2025). At the same time, there is no estoppel principle that would preclude Alexandria from filing an action in District Court.

Alexandria's argument that *Lummi Tribe of Lummi Reservation, Washington v. United States*, 870 F.3d 1313 (Fed. Cir. 2017), prohibits them from bringing suit

in the Court of Federal Claims fails for several reasons. In *Lummi*, the Federal Circuit acknowledged there was some disparity between the circuits on whether the particular federal statute at issue there vested jurisdiction in the Court of Federal Claims under the Tucker Act, and chose against jurisdiction. *Id.* at 1319-20. Four years later, the Federal Circuit distinguished *Lummi* in *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1368 (Fed. Cir. 2021), in which it articulated a test for determining whether subsidy programs were or were not subject to Tucker Act jurisdiction based upon such programs' use of contractual-based subsidy programs. But neither of those cases involved grant programs by the Department of Education.

Nor is there reason to look to either Federal Circuit case for guidance, where the Supreme Court has recently resolved the jurisdictional question on more analogous facts involving grants from the Department of Education. *See California*, 604 U.S. 650. In *California*, a case raising APA claims, the district court entered a temporary restraining order enjoining the Government from terminating various education-related grants and required "the Government to pay out past-due grant obligations and to continue paying obligations as they accrue." *Id. at 650.* The Supreme Court vacated the temporary restraining order, reiterating that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered here." *Id.* at 651. "Instead, the Tucker Act grants the Court of Federal Claims jurisdiction

over suits based on 'any express or implied contract with the United States.'" *Id.*
(quoting 28 U.S.C. § 1491(a)(1)). Alexandria offers no reason why the Federal
Circuit's 2017 decision in *Lummi* about the Native American Housing Assistance
and Self-Determination Act of 1996 carries precedential effect over the Supreme
Court's decision this year in the context of Department of Education grants.

Separate from its alleged legal harm, Alexandria will not suffer financial harm
from denial of its intervention motion. The Secretary has not denied it of expected
funding. *See* Doc.13 at 92-95 (indicating only "high risk" designation and imposition
of reimbursement conditions, not termination of funding). Indeed, Alexandria's own
employee has publicly stated that "[w]hile [Alexandria] has been designated as a
high-risk entity by the United States Department of Education, *no* federal funds have
been withheld from [Alexandria] as of today." Ryan Belmore, "Alexandria schools
clarify no federal funds withheld despite 'high-risk' status," ALXnow (September
17, 2025).[6] Even more, while Alexandria challenges its "high risk" designation and
placement on "reimbursement" status, its own declarant has testified that "[a]lmost
all of the funds that ACPS receives from federal agencies are already provided on a
reimbursement basis." Doc.13 at 74 (Declaration of Dominic Turner at ¶7). Thus,

---

[6] Available at https://www.alxnow.com/2025/09/17/alexandria-schools-clarify-no-federal-funds-withheld-despite-high-risk-status/ (last accessed Sept. 26, 2025).

Alexandria has not demonstrated that having more of its funding on reimbursement status will cause it irreparable injury.

Against Alexandria's lack of burden, the Secretary would suffer harm by having to defend claims for the first time on appeal. The Secretary has not had an opportunity to develop the record in the District Court and there would be no basis for it do so in this Court. The Secretary at a minimum would wish to submit a declaration to explain the effects of its designation on Alexandria and facts concerning the status of its administrative remedies. To the extent that Alexandria asserts a different injury or seeks to advance different legal arguments, the Secretary would be prejudiced by not having an opportunity to address those arguments in the lower court.

## CONCLUSION

For all these reasons, the Secretary respectfully requests that Alexandria's motion be denied.

17

Dated: September 26, 2025

CHAD MIZELLE
Acting Associate Attorney General

ABHISHEK KAMBLI
Deputy Associate Attorney General

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

Respectfully Submitted,

LINDSEY HALLIGAN
United States Attorney

_____/s/_____
MATTHEW J. MEZGER
GARRY D. HARTLIEB
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3741
Fax:   (703) 299-3983
Email: Matthew.Mezger@usdoj.gov

*Attorney for Defendants-Appellees*

18

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned hereby certifies that this motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A).

1. Exclusive of the exempted portions of this motion, as provided in Federal Rule of Appellate Procedure 32(f), the motion contains 3,919 words.

2. This motion has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman Font in compliance with the typeface and type styles requirements set forth in Federal Rule of Appellate Procedure 32(a)(5)-(6). As permitted by Federal Rule of Appellate Procedure 32(g)(1), the undersigned has prepared this certificate using this word processing system's word count feature.

_____/s/_____

Matthew J. Mezger
Assistant U.S. Attorney
*Attorney for Defendants-Appellees*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the foregoing with the

Clerk of the United States Court of Appeals for the Fourth Circuit using the CM/ECF

system, which will send a notice of such filing to all registered CM/ECF users.


_____/s/_____

Matthew J. Mezger

Assistant U.S. Attorney

2100 Jamieson Avenue

Alexandria, Virginia 22314

Tel:    (703) 299-3741

Fax:    (703) 299-3983

Email: Matthew.Mezger@usdoj.gov

*Attorney for Defendants-Appellees*

DATE: September 26, 2025

20