No. 25-2087 (L)

## IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

FAIRFAX COUNTY SCHOOL BOARD AND ARLINGTON SCHOOL BOARD,

*Plaintiffs-Appellants*,

v.

LINDA MCMAHON, IN HER OFFICIAL CAPACITY AS SECRETARY OF EDUCATION OF THE UNITED STATES, AND THE UNITED STATES DEPARTMENT OF EDUCATION,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Virginia,
Nos. 1:25-cv-01432-RDA-LRV & 1:25-cv-01434-RDA-LRV,
Hon. Rossie D. Alston, Jr.

### Plaintiffs-Appellants' Corrected Opening Brief

Breanna Smith-Bonsu
Chloe Smeltzer
WILLKIE FARR &
  GALLAGHER LLP
300 N. LaSalle Dr.
Chicago, IL 60654
312-728-9000

Timothy J. Heaphy
*Counsel of Record*
Joshua N. Mitchell
Fiona Carroll
Lindsay Hemminger
WILLKIE FARR &
  GALLAGHER LLP
1875 K Street Northwest
Washington, DC 20006
202-303-1000
theaphy@willkie.com

*Counsel for Plaintiffs-Appellants*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... 2

JURISDICTIONAL STATEMENT ........................................................... 1

INTRODUCTION ...................................................................................... 2

STATEMENT OF THE CASE ................................................................... 5

   A. Factual background ........................................................................ 5

   B. Procedural background ................................................................. 13

QUESTION PRESENTED ........................................................................ 14

SUMMARY OF THE ARGUMENT ........................................................ 14

STANDARD OF REVIEW ....................................................................... 16

ARGUMENT ............................................................................................. 17

I.  The School Divisions' claims lie exclusively within Article III
    courts' jurisdiction ............................................................................ 18

   A. The School Divisions assert claims that seek to prevent the
      constructive refusal to continue financial assistance
      pursuant to § 1682. ..................................................................... 18

   B. The Court of Federal Claims' jurisdiction does not extend to
      APA claims, which § 1683 expressly allows. ............................ 20

   C. Congress identified claims for funds improperly denied
      under Title IX as "relief other than money damages." .................. 23

   D. "Judicial review" is unavailable in the Court of Federal
      Claims. ........................................................................................ 28

II. The U.S. Supreme Court's emergency-docket decisions are
    both irrelevant and distinguishable. ................................................. 31

   A. The U.S. Supreme Court's emergency-docket decisions are
      not relevant where Congress has expressly assigned
      jurisdiction. ................................................................................ 31

   B. The Supreme Court's emergency-docket decisions on which
      the trial court relied are distinguishable. ................................... 32

CONCLUSION ......................................................................................... 37

# TABLE OF AUTHORITIES

## Cases

*Am. Ass'n of Univ. Profs. v. Rubio*,
— F. Supp. 3d —, No. 25-10685,
2025 WL 2777659 (D. Mass. Sept. 30, 2025) ........................................ 9

*Ark. Game & Fish Comm'n v. United States*,
568 U.S. 23 (2012) ................................................................................ 24

*Bowen v. Massachusetts*,
487 U.S. 879 (1988) ......................................................................... 20, 32

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,
601 U.S. 42 (2024) ..................................................................... 23, 25, 27

*Dep't of Educ. v. California*,
604 U.S. 650 (2025) ......................................................... 31, 32, 33, 35

*Doe v. S. Carolina*, No. 25-1787,
2025 WL 2375386 (4th Cir. Aug. 15, 2025) ....................................... 11

*Freeman v. Cavazos*,
923 F.2d 1434 (11th Cir. 1991) ........................................................... 25

*Freeman v. Quicken Loans, Inc.*,
566 U.S. 624 (2012) ............................................................................. 27

*Grimm v. Gloucester Cnty. Sch. Bd.*,
972 F.3d 586 (4th Cir. 2020) ....................................................... passim

*King v. St. Vincent's Hosp.*,
502 U.S. 215 (1991) ............................................................................. 23

*Leaders of a Beautiful Struggle v. Balt. Police Dep't*,
2 F.4th 330 (4th Cir. 2021) (en banc) ................................................. 17

*Lipsett v. Univ. of P.R.*,
864 F.2d 881 (1st Cir. 1988) ............................................................... 26

*Maine v. U.S. Dep't of Agric.*,
778 F. Supp. 3d 200 (D. Me. 2025) ............................................... 27, 31

*Marbury v. Madison*,
5 U.S. (1 Cranch) 137 (1803) .............................................................. 35

*Marks v. United States,*
    430 U.S. 188 (1977) .................................................................. 34

*Massachusetts v. Nat'l Insts. of Health,*
    770 F. Supp. 3d 277 (D. Mass. 2025) .................................... 32

*Me. Cmty. Health Options v. United States,*
    590 U.S. 296 (2020) ............................................................ 21, 37

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n,*
    145 S. Ct. 2658 (2025) .............................................. 33, 34, 35

*Palmore v. United States,*
    411 U.S. 389 (1973) .................................................................. 23

*Pond v. United States,*
    69 F.4th 155 (4th Cir. 2023) .................................................. 16

*Pres. & Fellows of Harvard Coll. v. U.S. Dep't of Health and Human Servs.,*
    — F. Supp. 3d —, No. 25-cv-11048,
    2025 WL 2528380 (D. Mass. Sept. 3, 2025) ......................... 8

*R.I. Coal. Against Domestic Violence v. Kennedy,*
    No. 25-cv-342,
    2025 WL 2899764 (D.R.I. Oct. 10, 2025) ............................. 36

*Saifullah v. Johnson,*
    948 F.2d 1282 (4th Cir. 1991) (table op.) ............................ 16

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
    591 U.S. 197 (2020) ............................................................ 28, 30

*Shaw v. Foreman,*
    59 F.4th 121 (4th Cir. 2023) .................................................. 16

*Sustainability Inst. v. Trump,*
    No. 25-1575,
    2025 WL 1587100 (4th Cir. June 5, 2025) ...................... 13, 33

*Tenn. v. Dep't of Educ.,*
    104 F.4th 577 (6th Cir. 2024) .................................... 21, 25, 27

*Todd v. United States,*
    386 F.3d 1091 (Fed. Cir. 2004) ...................................... 20, 21

*United States v. Testan*,
    424 U.S. 392 (1976) ............................................................... 20

*Washington v. Trump*,
    766 F. Supp. 3d 1138 (W.D. Wash. 2025) ............................. 9

**Statutes**

5 U.S.C. § 701 ........................................................................... 26

5 U.S.C. § 702 ............................................................... 1, 20, 26

20 U.S.C. § 1234g ..................................................................... 25

20 U.S.C. § 1682 ................................................................ passim

20 U.S.C. § 1683 ................................................................ passim

28 U.S.C. § 171 ......................................................................... 29

28 U.S.C. § 172 ......................................................................... 29

28 U.S.C. § 176 ......................................................................... 30

28 U.S.C. § 1291 ......................................................................... 1

28 U.S.C. § 1292 ......................................................................... 1

28 U.S.C. § 1331 ......................................................................... 1

28 U.S.C. § 1491 ("Tucker Act") ....................................... passim

Administrative Procedure Act,
    5 U.S.C. § 701 et seq. ...................................................... passim

Declaratory Judgment Act,
    28 U.S.C. § 2201, *et seq.* ................................................ 13, 14

Title VI of the Civil Rights Act of 1964,
    42 U.S.C. §§ 2000d, *et seq.* .................................................. 25

Title IX of the Education Amendments of 1972,
    Pub. L. 92-318, 86 Stat. 235 (June 23, 1972),
    codified at 20 U.S.C. § 1681, *et seq.* ............................. passim

**Rules**

Fed. R. App. P. 4 ........................................................................ 1

**Regulations**

2 C.F.R. § 200.208 .................................................................... 11

2 C.F.R. § 3474.10 .................................................................... 11

Arlington Pub. Schs. Pol'y Implementation Proc. J-2 PIP-2 ................... 7

Fairfax Cnty. Pub. Schs. Reg. 2603.2 ........................................ 7

**Constitutional Provisions**

U.S. CONST. art. I, § 8 ............................................................ 23

U.S. CONST. art. II, § 3 ............................................................. 9

U.S. CONST. art. III, § 1 ................................................ 23, 28, 29

U.S. CONST. art. III, § 2 ......................................................... 28

**Other Authorities**

Virginia Dep't of Educ.,
  Model Policies on Ensuring Privacy, Dignity, and Respect for All
  Students and Parents in Virginia's Public Schools (July 18, 2023),
  https://tinyurl.com/25upya54 ............................................... 6

## JURISDICTIONAL STATEMENT

As explained in greater detail below, the district court had jurisdiction of this action under 28 U.S.C. § 1331 because it arises under federal law (5 U.S.C. § 702 and 20 U.S.C. § 1683). On September 5, 2025, the district court entered a final order denying injunctive relief, dismissing the action for a purported lack of subject-matter jurisdiction, and disposing of all Plaintiff-Appellant Fairfax County School Board and Plaintiff-Appellant Arlington School Board's claims. On September 9, the School Boards timely appealed. *See* JA226–296; JA410–413; Fed. R. App. P. 4(a)(1)(B)(ii) & (iii). This Court has jurisdiction under 28 U.S.C. §§ 1291 and 1292(a)(1) to review the district court's final decision.

## INTRODUCTION

The sole legal issue governing this appeal is a narrow jurisdictional question: where a statute expressly provides Article III courts with jurisdiction to review the actions of an agency under the Administrative Procedure Act and the plaintiffs seek to enjoin an unlawful policy directive to preserve the prospective availability of federal funds, may a district court cede jurisdiction to the Court of Federal Claims under the Tucker Act?[1]  The district court here believed the answer to that question was "yes."  That was error.

Education Secretary Linda McMahon and the Department of Education (collectively, "Defendants") demand that Plaintiff Fairfax County School Board, which operates Fairfax County Public Schools, and Arlington School Board, which operates Arlington Public Schools, (collectively, the "School Divisions"), violate binding Fourth Circuit law interpreting Title IX[2]—precedent that this Court has consistently reaffirmed, including as recently as August 2025.  Because the School Divisions have refused to violate that clear precedent and comply with

---

[1] 28 U.S.C. § 1491.
[2] Title IX of the Education Amendments of 1972, Pub. L. 92-318, 86 Stat. 235 (June 23, 1972), codified at 20 U.S.C. § 1681 *et seq.*

Defendants' unlawful directive to restrict students' access to facilities based on the sex assigned them at birth, Defendants have illegally and improperly designated the School Divisions as "high-risk" and imposed unlawful conditions on the continued receipt of funds appropriated by Congress. Defendants demand that the School Divisions violate Title IX as a nonnegotiable, overarching condition on the continued receipt of those funds. Their imposition of the "high-risk" status designation with patently unlawful conditions is both illegal and unreasonable.

The School Divisions sought declaratory and injunctive relief in the Eastern District of Virginia from Defendants' arbitrary and capricious "high-risk" designation and the imposition of unlawful conditions on continued receipt of federal funds. But because removal of the "high-risk" status and impermissible conditions would result in the continued availability of federal funds, the district court—extending the reasoning of inapposite Supreme Court emergency-docket orders—concluded that the Court of Federal Claims had exclusive jurisdiction over the School Divisions' claims. The trial court reasoned that Title IX's judicial review provision did not apply because it believed the School Divisions' claims were "otherwise subject to judicial review" in that court.

*See* 20 U.S.C. § 1683. Accordingly, it denied relief and dismissed the School Divisions' complaints.

That was error. Under the express terms of § 1683, Article III courts have jurisdiction of this case. First, Congress expressly made Title IX funding challenges subject to judicial review under the Administrative Procedure Act ("APA")—*i.e.*, review by an Article III court. Second, the APA's waiver of sovereign immunity does not extend to money damages. Therefore, under fundamental rules of statutory construction, claims asserting that funding has been improperly withheld under Title IX because of an arbitrary status designation by Defendants are *not* claims for "money damages"—and thus do not fall within the Court of Federal Claims' narrow jurisdiction. Third, review in the Court of Federal Claims is not "judicial review," because that court is an Article I court that is not vested with the "judicial power of the United States"—which just as expressly includes all "controversies to which the United States shall be a party."

The Supreme Court's emergency-docket orders on which the trial court relied do not involve the judicial-review provision of Title IX and have no application here, where Congress has plainly defined the courts'

4

jurisdiction. Further, they are distinguishable on their facts, as the claims at issue here are not contract claims but rather equitable claims that rest upon the interpretation of federal civil rights law.

The district court's dismissal of the School Divisions' action effectively denies them a remedy at law to protect against arbitrary and capricious agency overreach. Contrary to the district court's opinion, the School Divisions cannot pursue these claims in the Court of Federal Claims, as they do not seek money damages. Instead, the School Divisions seek the removal of unlawful conditions requiring them to violate this Court's binding interpretation of Title IX. Absent this Court's intervention, the district court's erroneous ruling will leave the School Divisions without a cognizable claim for the harm that will ensue from Defendants' action, rendering that harm irreparable. This Court should reverse the district court's erroneous jurisdictional ruling and remand for action on the merits of the School Divisions' claims.

## STATEMENT OF THE CASE

### A.    Factual background

***The parties.*** Plaintiff-Appellant Fairfax County School Board is the governing body of Fairfax County Public Schools. JA001, n. 1. Fairfax County Public Schools is responsible for providing primary and

5

secondary education to the students of Fairfax County and the independent City of Fairfax. JA014 ¶ 10. Plaintiff-Appellant Arlington School Board is the governing body of Arlington Public Schools. JA230, n.1. Arlington Public Schools is responsible for providing primary and secondary education to the students of the independent county of Arlington. JA232 ¶ 10.

Defendant-Appellee Linda McMahon serves as the United States Secretary of Education. JA014 ¶ 12; JA232, ¶ 12. In that role, she is head of Defendant-Appellee the U.S. Department of Education. *Id.*

**Grimm *and the School Divisions' policies.*** In *Grimm v. Gloucester County School Board*, 972 F.3d 586 (4th Cir. 2020), this Court held that both the Equal Protection Clause and—as relevant here—Title IX compel the School Divisions to grant students access to sex-segregated facilities that correspond with those students' gender identities. Virginia has separately adopted model policies that acknowledge *Grimm*'s binding federal requirements. *See* Virginia Dep't of Educ., Model Policies on Ensuring Privacy, Dignity, and Respect for All Students and Parents in Virginia's Public Schools, at 16 (July 18, 2023), https://tinyurl.com/25upya54.

Consistent with that authority, the School Divisions' facilities-access policies allow all students to use facilities including locker rooms and restrooms that correspond with their gender identities. *See* Fairfax Cnty. Pub. Schs. Reg. 2603.2 (JA022–23 ¶ 40 *et seq*.); Arlington Pub. Schs. Pol'y Implementation Proc. J-2 PIP-2 (JA240 ¶ 40). These policies are the hub of this dispute. Defendants demand that the School Divisions change them to allow a student to access only the facilities corresponding with the student's sex assigned at birth, ignoring *Grimm* and the subsequent authority in which this Court has affirmed that clear precedent.

***The Department of Education's pretextual "investigation."*** On February 12, 2025, the Department of Education's Office for Civil Rights ("OCR") issued a letter notifying the School Divisions of a complaint alleging that they had violated Title IX by providing transgender students with access to sex-segregated facilities based on their gender identities. JA023 ¶ 41; JA024 ¶ 44; JA060–62; JA241 ¶¶41, 44; JA273–76. OCR sent substantively identical letters to three other Northern Virginia school districts.

The complaints that instigated the OCR investigation were generated by America First Legal, an outside organization—founded by White House deputy chief of staff Stephen Miller—that has brought Title IX complaints against numerous school districts and universities to challenge transgender individuals' access to facilities and athletics programs. *See* JA023 ¶ 42; JA241 ¶ 42. The School Divisions promptly responded, citing both *Grimm* and the Virginia model policies as the bases for their protection of transgender students' access to facilities aligned with their gender identities. JA023–24 ¶ 43; JA241 ¶ 43.

OCR's "investigation" was not a good-faith attempt to enforce the law but rather a pretextual effort to subvert it—a pattern that has been cited by federal judges around the country in recent cases involving challenges to executive authority. *Cf., e.g.*, *Pres. & Fellows of Harvard Coll. v. U.S. Dep't of Health and Human Servs.*, — F. Supp. 3d —, No. 25-cv-11048, 2025 WL 2528380, at *25 (D. Mass. Sept. 3, 2025) ("the government-initiated onslaught against Harvard was much more about promoting a governmental orthodoxy in violation of the First Amendment than about anything else, including fighting antisemitism"); *Am. Ass'n of Univ. Profs. v. Rubio*, — F. Supp. 3d —, No. 25-10685, 2025

WL 2777659, at *2 (D. Mass. Sept. 30, 2025) ("Having carefully considered the entirety of the record, this Court finds by clear and convincing evidence that the Secretary of Homeland Security Kristi Noem and the Secretary of State Marco Rubio, together with the subordinate officials and agents of each of them, deliberately and with purposeful aforethought, did so concert their actions and those of their two departments intentionally to chill the rights to freedom of speech and peacefully to assemble of the non-citizen plaintiff members of the plaintiff associations."); *Washington v. Trump*, 766 F. Supp. 3d 1138, 1145 (W.D. Wash. 2025) ("Instead of 'tak[ing] Care that [such] Laws be faithfully executed,' U.S. Const. art. II, § 3, President Trump issued an Executive Order making the funding contingent on whether grant recipients provide certain medical care to individuals 18 and under. This oversteps the President's authority under the separation of powers.").

The outcome of the OCR "investigation" of the School Divisions' facilities-access policies was never in doubt. No matter what facts the investigation revealed, Defendants were determined to use Department procedures to punish the School Divisions for providing transgender students with the same access to restrooms and locker rooms as that

9

provided to cisgender students—*i.e.*, allowing them to use facilities that align with their gender identities in compliance with *Grimm*.

Predictably, on July 25, OCR issued a Findings Letter asserting that the School Divisions' policies and those of the other targeted School Divisions violated Title IX. JA024 ¶ 44; JA241 ¶ 44. The letter specifically stated that the Department was "exercis[ing] [the] authority" to "enforce regulations to effectuate the provisions of Title IX" under 20 U.S.C. § 1682. JA154; JA291.

Attached to the Findings Letter was a draft Resolution Agreement demanding that the School Divisions alter their policy to conform to OCR's erroneous interpretation of Title IX, which requires treating all individuals exclusively according to the sex assigned them at birth. JA088–89; JA297–98.

On July 29, counsel for all five affected school divisions submitted a joint request for ninety days to respond to OCR's July 25 letter, an extension request consistent with OCR's own Case Processing Manual. JA024 ¶ 45; JA242 ¶ 45. Two days later, OCR denied the request and imposed a two-week deadline—August 15—for compliance. JA024 ¶ 46; JA242 ¶ 45.

On August 15, this Court reaffirmed its clear interpretation of Title IX. In *Doe v. South Carolina*, the Court, in no uncertain terms, repeatedly maintained that *Grimm* remains the law of this Circuit. No. 25-1787, 2025 WL 2375386, at *8 (4th Cir. Aug. 15, 2025). The order in *Doe* directly contradicted the position taken by OCR in the Letter of Findings. That same day, the School Divisions again told Defendants that they were bound by *Grimm* and could not lawfully modify their policies as OCR demands. JA024–25 ¶ 47; JA182–87; JA242 ¶ 47; JA319–24. On the following Monday, the School Divisions filed a supplemental letter bringing *Doe* to Defendants' attention. JA025 ¶ 48; JA188–91; JA242 ¶ 48; JA325–28.

**The "high-risk" designation.** On August 19, despite the clear authority in *Grimm* as reaffirmed by *Doe*, Defendants issued letters designating the School Divisions as "high-risk" entities under 2 C.F.R. §§ 200.208 and 3474.10, asserting that the School Divisions' codification of this Court's binding interpretation of Title IX was instead "noncompliance with Title IX." JA025–27 ¶¶ 49–52; JA048–52; JA242–44 ¶¶ 49–52; JA265–69.

11

In these letters, Defendants imposed "specific conditions on [the School Divisions'] use of funds in all grants it receives from the Department." *Id.* Among other requirements, Defendants demanded that the School Divisions "submit plans for compliance with all federal laws" and "submit a corrective action plan … that shows all steps taken to be in compliance with the applicable laws." JA051; JA268. They also required the School Divisions to "provide detailed information that identifies and discusses the steps [the School Divisions] will take to ensure that grant funds will be spent in accordance with all appliable [*sic*] laws." *Id.*

The School Divisions' federal grants were "placed on a reimbursement method of payment," conditioning payment on the School Divisions' "adherence to all pertinent federal civil rights laws that apply to your division's grants and subgrants." *Id.* The findings letter expressly stated that what Defendants meant by "adherence" was, to the contrary, a violation of this Court's binding interpretation of at least one pertinent civil rights law—Title IX—in *Grimm.* JA161; JA298 ("*Grimm* does not change the Department's conclusion that the Divisions have violated and are violating Title IX."). The high-risk letter left no doubt

12

about its effect: the School Divisions may allow students to access *only* facilities corresponding with the sex assigned them at birth—a policy change that would directly violate *Grimm*—if they desire reimbursement of their federally funded expenditures.

### B.   Procedural background

On August 29, 2025, the School Divisions filed separate complaints asserting claims for relief under the APA, the Declaratory Judgment Act ("DJA"), and the U.S. Constitution. *See generally* JA012–42; JA230–259. The primary relief the School Divisions sought was (1) a declaratory judgment stating that *Grimm* binds them and Defendants, and (2) a prospective injunction requiring that Defendants de-designate the School Divisions from "high-risk" status and remove the improper conditions imposed upon their continued access to federal funds. *Id.* The School Divisions also moved for preliminary injunctions. *See* JA120–24; JA329–33.

On September 5, the district court issued an order denying the School Divisions' motions and dismissing the School Divisions' complaints for a lack of subject-matter jurisdiction. JA213–225. Purporting to follow Supreme Court emergency-docket guidance and this

Court's decision in *Sustainability Institute v. Trump*, No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025), which relies on that guidance, the district court concluded that the School Divisions' equitable claims were instead disguised claims for "money damages" and thus subject to the Court of Federal Claims' exclusive jurisdiction. JA216–23. The district court nevertheless "unconditionally recognize[d] that *Grimm* 'remains the law of this Circuit.'" JA216.

The School Divisions timely appealed. JA226–22916; JA410–413.

## QUESTION PRESENTED

May an Article III court decline jurisdiction over an action under the APA and DJA challenging an erroneous Title IX status determination that school divisions are "high risk" and constructively refuse continued federal financial assistance, where Title IX's judicial review provision, 20 U.S.C. § 1683, expressly provides that a "person aggrieved … may obtain judicial review … in accordance with chapter 7 of title 5"?

## SUMMARY OF THE ARGUMENT

**I.** Title IX's judicial review provision expressly provides for APA review of agency decisions that involve "the termination of or refusal to grant or to continue assistance under such program or activity to any

14

recipient" of federal funds.  20 U.S.C. § 1683.  The district court's ruling
that it lacked jurisdiction under that provision was error.

The challenged agency action falls within § 1683's ambit because it
constitutes a refusal to continue federal financial assistance on the same
terms under which that assistance was granted, based on an erroneous
determination that the School Divisions violated Title IX.

Section 1683's language governs the jurisdictional question.  *First*,
the plain language of § 1683 expressly provides for review under the
APA, with a narrow exception for circumstances in which statutes
otherwise provide for Article III judicial review.  *Second*, § 1683 expressly
imports the APA's sovereign-immunity waiver—but that waiver by its
own terms does not extend to "money damages."  Accordingly, in
Congress's binding view, claims seeking review of the improper
termination or refusal to continue federal funds under Title IX are *not
claims for money damages.  Third*, whatever review may be available in
the Court of Federal Claims, it is not *judicial* review.  The Constitution
assigns *all* of the United States' judicial power to Article III judges—
judges given life tenure—and expressly devotes to their review all
controversies in which the United States is a party.  The Court of Federal

Claims, an Article I "court," is at best an administrative tribunal made up of non–Article III judges—and so whatever review it provides cannot be "judicial review." As a result, "judicial review" cannot be "otherwise available" in the Court of Federal Claims for § 1683 purposes.

**II.** The district court's reliance on recent emergency docket decisions of the Supreme Court was erroneous, as those cases did not involve § 1683 or a similarly controlling jurisdictional provision. Even those cases make clear that while claims that seek to recover money damages are controlled by the Tucker Act, substantive disputes regarding the scope of federal statutes are properly adjudicated by Article III courts pursuant to the APA. The trial court's mistaken jurisdictional order leaves the School Divisions with no remedy to prevent the direct and irreparable harm that Defendants have caused by imposing an unlawful condition on the continued receipt of federal funds.

## STANDARD OF REVIEW

This Court reviews *de novo* the district court's legal conclusion that it lacked subject-matter jurisdiction. *Pond v. United States*, 69 F.4th 155, 160 (4th Cir. 2023). This Court also reviews *de novo* the *sua sponte* dismissal of a complaint. *See Shaw v. Foreman*, 59 F.4th 121, 126 (4th

16

Cir. 2023).  In determining whether dismissal was proper, the pleading must be construed in the light most favorable to the plaintiff and its factual allegations accepted as true.  *See Saifullah v. Johnson*, 948 F.2d 1282, at *1 (4th Cir. 1991) (table op.).  The exception is that where, as here, the dismissal is joined with the denial of a motion for preliminary injunction, this Court reviews for clear error the facts found by the district court in connection with that injunction.  *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 2 F.4th 330, 339 (4th Cir. 2021) (en banc).

## ARGUMENT

At the heart of this dispute is the scope of Title IX, the civil rights protection that ensures equal opportunity for men and women in federally funded educational programs, and this Court's binding interpretation of that statute in *Grimm*.  The trial court ignored the clear jurisdictional language of Title IX's judicial-review provision, 20 U.S.C. § 1683, and dismissed the School Divisions' complaints, ruling that the claims were in effect "claims for money damages" that should have been brought in the Court of Federal Claims under the Tucker Act. But Title IX's statutory language makes clear that this dispute belongs in an Article III court; the Constitution confirms it; and the Supreme

17

Court's emergency-docket orders from earlier this year do not compel a different conclusion.

## I.    The School Divisions' claims lie exclusively within Article III courts' jurisdiction.

Title IX contains a judicial-review provision that provides Article III courts with jurisdiction over claims arising under that statute. That judicial-review provision incorporates the APA and that statute's express waiver of sovereign immunity. *See* 20 U.S.C. § 1683. Despite this clear authority, the district court concluded that "here the action is subject to judicial review in the Court of Federal Claims," and on that basis rejected "the School Divisions' reliance on 20 U.S.C. § 1683." JA220. This question-begging conclusion ignores Title IX's explicit provision of an APA cause of action for claims of improper denial of funds due to the government's misinterpretation of Title IX. The district court's jurisdictional ruling is error.

### A.    The School Divisions assert claims that seek to prevent the constructive refusal to continue financial assistance pursuant to § 1682.

Defendants have expressly conditioned their prospective reimbursement of funds to the School Divisions on an illegal demand that the School Divisions violate Title IX. There are two key results of

18

Defendants' decision to do so.  The first is that, because the condition is legally impossible for the School Divisions to satisfy, it operates as a constructive "termination or refusal … to continue [financial] assistance."  20 U.S.C. § 1682.  That is, the School Divisions may obey the law as announced by this Court, or it may receive federal funding— but, according to Defendants, it may not do both.

The second result is that, *as Defendants themselves acknowledged* in their letter finding that the School Divisions had failed to comply with Title IX, the means by which the Secretary may enforce Title IX is through action under § 1682.  *See* JA078; JA287.  Defendants have identified no other provision that allows them to enforce Title IX requirements, and the School Divisions are unaware of any.  It is clear and undisputed that enforcement of Title IX flows through § 1682 no matter what other legal authority may apply:

> Compliance with any requirement adopted pursuant to this section may be effected (1) by the **termination of or refusal** to grant or **to continue assistance** under such program or activity to any recipient as to whom there has been an express finding on the record, after opportunity for hearing, of a failure to comply with such requirement, but such termination or refusal shall be limited to the particular political entity, or part thereof, or other recipient as to whom such a finding has been made, and shall be limited in its effect to the particular program, or

part thereof, in which such noncompliance has been so
found, or (2) **by any other means authorized by law** ….

20 U.S.C. § 1682 (emphasis added).

Given this clear definition of jurisdiction over Title IX claims, the

judicial-review provisions of § 1683 apply to the School Divisions' claims

that seek financial-assistance relief. As explained below, § 1683

expressly funnels such claims into the Article III courts.

## B. The Court of Federal Claims' jurisdiction does not extend to APA claims, which § 1683 expressly allows.

The plain language of the relevant statutes answers the question

whether jurisdiction of this case lies in Article III courts or the Court of

Federal Claims. As the Supreme Court has held, the Court of Federal

Claims' "jurisdiction is statutorily granted and is to be strictly

construed." *Bowen v. Massachusetts*, 487 U.S. 879, 908 n.46 (1988). "The

jurisdiction of the Court of Federal Claims under the Tucker Act is

'limited to actual, *presently due* money damages from the United States.'"

*Todd v. United States*, 386 F.3d 1091, 1093 (Fed. Cir. 2004) (emphasis

added) (quoting *United States v. Testan*, 424 U.S. 392, 398 (1976)). As a

result, the Court of Federal Claims lacks jurisdiction over APA claims

because those claims *cannot* be claims for money damages. 5 U.S.C. § 702.

The Supreme Court recently recognized that "[t]he Tucker Act yields when the obligation-creating statute provides its own detailed remedies, or when the Administrative Procedure Act … provides an avenue for relief." *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 323–24 (2020). That holding did not condition the Tucker Act yielding only where the APA provides *the exclusive* avenue for relief. Having the APA as *an avenue* for relief suffices.

Here, Congress has expressly stated that the APA "provides an avenue for relief" of disputes over the scope of Title IX. 20 U.S.C. § 1683 ("any person aggrieved (including any State or political subdivision thereof and any agency of either) may obtain judicial review of such action in accordance with chapter 7 of title 5"); *Tenn. v. Dep't of Educ.*, 104 F.4th 577, 604 (6th Cir. 2024) ("The second sentence of § 1683 … *provides one avenue to judicial review*[.]") (emphasis added). Accordingly, per the Supreme Court's recent precedent, the "Tucker Act yields" and the district court has jurisdiction over these claims. *Me. Cmty.*, 590 U.S. at 323–24.

21

Here, moreover, the School Divisions' claims are not for "actual, presently due money damages," *Todd*, 386 F.3d at 1093, but for the district court to *prospectively* require that Defendants remove their arbitrary designation of the School Divisions as "high-risk" entities and their equally arbitrary conditioning of continued financial assistance on Defendants' erroneous understanding of Title IX. This litigation seeks to prevent prospective harm, not to remedy past harm by awarding money damages. Moreover, the grant provisions at issue here are not contracts but broad Congressional appropriations that provide funds to a state agency, the Virginia Department of Education, which in turn distributes those funds to school divisions within the Commonwealth.[3] Accordingly, there is no contract between the School Divisions and the federal government, further separating this case from those brought under the Tucker Act.

---

[3] As Title IX makes clear, Congress considers grants and contracts to be separate categories of funding. *See* 20 U.S.C. § 1682 ("Each Federal department and agency which is empowered to extend Federal financial assistance to any education program or activity, by way of **grant**, loan, **or contract** other than a contract of insurance or guaranty, is authorized and directed to effectuate" Title IX's provisions).

The district court's flawed jurisdictional ruling leaves the School Divisions with no legal path to prevent an unlawful outcome—a result that Congress plainly sought to avoid in promulgating Title IX's judicial-review provision. Given the absence of any contract and the fact that the School Divisions seek injunctive relief, the Court of Federal Claims has no jurisdiction over this dispute. The trial court has effectively left the School Divisions outside of the courthouse—*any* courthouse—with no cognizable path toward undoing the arbitrary and capricious actions taken by Defendants.

## C. Congress identified claims for funds improperly denied under Title IX as "relief other than money damages."

Congress is empowered to set the jurisdiction of all federal courts below the Supreme Court. *See* U.S. CONST. art. III, § 1; art. I, § 8 cl. 9; *Palmore v. United States*, 411 U.S. 389, 400–01 (1973) ("the task of defining [inferior courts'] jurisdiction[] was left to the discretion of Congress"). It is similarly axiomatic that only Congress—not the Courts—may waive the United States' sovereign immunity. *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024) ("the

23

power to waive the federal government's immunity is Congress's prerogative, not" the Judiciary's).

A "statute is to be read as a whole, … since the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991). Indeed, "the first rule of … statutory interpretation is: Read on." *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 36 (2012). Here, the district court read "not otherwise subject to judicial review" in 20 U.S.C. § 1683 and stopped reading—ignoring the context in which that language appeared.

Congress has explicitly provided that the APA is an appropriate mechanism for judicial review of agency actions terminating or refusing to grant or continue funding based on an agency determination under 20 U.S.C. § 1682 "of a failure to comply" with the requirements of Title IX or its implementing regulations:

> Any department or agency action taken pursuant to section 1682 of this title shall be subject to such judicial review as may otherwise be provided by law for similar action taken by such department or agency on other grounds. In the case of action, not otherwise subject to judicial review, terminating or refusing to grant or to continue financial assistance upon a finding of failure to comply with any requirement imposed pursuant to section 1682 of this title, any person aggrieved (including any State or political subdivision thereof and any agency of

either) ***may obtain judicial review of such action in
accordance with chapter 7 of title 5***, and such action
shall not be deemed committed to unreviewable agency
discretion within the meaning of section 701 of that title.

20 U.S.C. § 1683 (emphasis added).

The first sentence of § 1683 mandates that specific statutory
schemes for review of particular agencies' actions are a litigant's first
stop. "For example, some courts interpreting an identical judicial review
provision in Title VI of the Civil Rights Act of 1964 say that the phrase
'as may otherwise be provided by law for similar action' can refer to
20 U.S.C. § 1234g." *Tennessee*, 104 F.4th at 604–05; *see Freeman v.
Cavazos*, 923 F.2d 1434, 1440 (11th Cir. 1991) (holding that § 1234g,
which channels judicial review directly into the Courts of Appeals, is "the
appropriate judicial review provision[] for the termination order in"
certain ALJ proceedings). That is the context in which § 1683 speaks of
"action[s] not otherwise subject to judicial review." That clause is not a
clandestine diversion of Article III courts' jurisdiction to the Court of
Federal Claims; it points instead to the narrow, agency- and
circumstance-specific Article III challenges to administrative decisions
referenced in the previous sentence of § 1683.

25

For the rest of agency actions "terminating or refusing to grant or to continue financial assistance," Title IX directs "judicial review" under the APA. Because there is no "unmistakably clear" language indicating a separate waiver of sovereign immunity in § 1683, the proper interpretation is that Congress intended those challenges to make use of the APA's waiver. *See Kirtz*, 601 U.S. at 49.

The APA waives the United States' sovereign immunity only with respect to "[a]n action in a court of the United States seeking relief *other than money damages*." 5 U.S.C. § 702 (emphasis added). Had Congress meant to treat Title IX funding claims as claims for money damages that were nevertheless subject to the APA's waiver of immunity, it would have done so expressly—in much the same way as § 1683 expressly directs a particular finding under a different section of the APA, § 701.

It follows, therefore, that an APA claim challenging an "action … terminating or refusing to grant or to continue financial assistance" is, in Congress's view, *not a claim for money damages*. *See Lipsett v. Univ. of P.R.*, 864 F.2d 881, 885 n.6 (1st Cir. 1988) ("there is in Title IX … no *express* congressional authorization of private damages actions"). It is,

instead, what the School Divisions said it is:  a claim for *prospective injunctive relief* under the APA.

Because the School Divisions' claims are not for money damages either in fact or in Congress's binding view, they are not within the Court of Federal Claims' jurisdiction.  *See* 20 U.S.C. § 1683.  Those claims lie instead within the jurisdiction of "court[s] of the United States" empowered to review agency actions under 5 U.S.C. § 702—including the district court.  *Tennessee*, 104 F.4th at 604 ("The second sentence of § 1683 … says that after an administrative enforcement proceeding strips the recipient of its funding, the recipient can sue under the APA."); *Maine v. U.S. Dep't of Agric.*, 778 F. Supp. 3d 200, 226–27 (D. Me. 2025) (enjoining "freezing … funds" under Title IX:  "Consistent with the plain language of 20 U.S.C. § 1683 … the Court agrees with the Plaintiff that it has jurisdiction to review the disputed agency action").

The district court's contrary conclusion requires either reading the express cross-reference to the APA in § 1683 as meaningless surplusage or—even less permissibly—expanding the APA's waiver of sovereign immunity to incorporate claims for money damages.  *See, e.g.*, *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 635 (2012) (explaining the canon

27

against surplusage); *Kirtz*, 601 U.S. at 48 (courts have no power to expand Congress's waivers of sovereign immunity). Because the district court's jurisdictional analysis was error, reversal is required.

**D.    "Judicial review" is unavailable in the Court of Federal Claims.**

The district court's legal conclusion was based on its reasoning that "judicial review is otherwise available" in the Court of Federal Claims under 20 U.S.C. § 1683. As explained above, that was error. But it points to a more fundamental problem with the referral of this case to the Court of Federal Claims: for that Article I court to perform "judicial review" would violate the separation of powers principles enshrined in the Constitution.

Under Article III of the Constitution, "[t]he judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish." U.S. Const. art. III § 1. That article makes clear that the only federal officers entitled to exercise that "judicial power" are life-tenured Article III judges. *See id.* § 2. There is no suggestion that *either of the other* branches of government may exercise the "judicial power," any more than the Legislature or the Judiciary may exercise the "executive power." *See*

28

*Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203 (2020) ("Under our Constitution, the 'executive Power'—all of it—is 'vested in a President' ….").

That "judicial power *shall* extend … to controversies to which the United States shall be a party." *Id*. § 2 (emphasis added). In other words, controversies against the federal government are, as a matter of mandatory constitutional construction, controversies within the *exclusive* jurisdiction of Article III courts—because only those courts may exercise "the judicial power of the United States." *Id*. § 1. That mandatory language means that, for purposes of *judicial review* of any controversy to which the United States is a party, nothing but an Article III court will do.

There are, of course, administrative tribunals established by Congress, and those tribunals may even adjudicate important rights. But that does not convert administrative review into judicial review, or an administrative law judge into an officer who exercises the "judicial power of the United States."

The Court of Federal Claims is just such a legislative creation, established by Congress as an administrative tribunal to adjudicate

29

claims against the United States. Congress set up the Court of Federal Claims as a purported "court established under article I of the Constitution of the United States." 28 U.S.C. § 171(a). Instead of the life tenure granted federal judges, Court of Federal Claims judges serve a fixed term. 28 U.S.C. § 172(a). Federal judges "hold their offices during good behavior," U.S. Const. art. III § 1, and may be removed from office only following impeachment by the House and conviction by the Senate. Court of Federal Claims judges may be removed for several statutorily enumerated causes, including "physical … disability," and they may be removed by the judges of the U.S. Court of Appeals for the Federal Circuit. 28 U.S.C. § 176(a); *cf. Seila Law*, 591 U.S. at 213–14 ("[I]t is only the authority that can remove … officials that they must fear, and, in the performance of their functions, obey.") (cleaned up). In short, the judges of the Court of Federal Claims are not judicial officers under Article III and may not exercise the "judicial power of the United States."

It follows that what the Court of Federal Claims provides is something other than "judicial review." And because the Court of Federal Claims cannot provide "judicial review," such review cannot be "otherwise available" in that court under § 1683.

## II. The U.S. Supreme Court's emergency-docket decisions are both irrelevant and distinguishable.

### A. The U.S. Supreme Court's emergency-docket decisions are not relevant where Congress has expressly assigned jurisdiction.

Plain statutory language answers the jurisdictional question, and Congress—not the Supreme Court—is the master of the inferior courts' jurisdiction. Thus, the Supreme Court's opaque and contradictory emergency-docket decisions directing that certain federal-funding cases be pursued in the Court of Federal Claims—and this Court's decision in *Sustainability Institute*, which in turn relies on those decisions—are simply beside the point. The cases on which the district court relies, *see* JA216–20, do not involve § 1683 or similarly binding jurisdictional provisions. Accordingly, those cases are inapposite and do not justify abandoning the clear jurisdictional authority that governs Title IX cases. *See, e.g.*, *Maine*, 778 F. Supp. 3d at 226–27 (rejecting jurisdiction of the Court of Federal Claims because § 1683 "makes clear that any person aggrieved by an agency action terminating or refusing to grant or continue funding upon a finding of Title IX noncompliance" may obtain APA review).

31

## B.  The Supreme Court's emergency-docket decisions on which the trial court relied are distinguishable.

The district court looked to the U.S. Supreme Court's recent decision in *Department of Education v. California*, a case in which a district court enjoined the federal government from terminating various education-related grants and required it "to pay out past-due grant obligations and to continue paying obligations as they accrue."  604 U.S. 650, 65 (2025); JA216–17.  In a *per curiam* opinion, the Supreme Court clarified that an order enforcing the federal government's *contractual* obligation to pay money lies within the Court of Federal Claims' exclusive Tucker Act jurisdiction.  *California*, 604 U.S. at 651.

But the Court in *California* also explicitly recognized that its precedent in *Bowen* provides that "a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds."  *California*, 604 U.S. at 651 (quoting *Bowen*, 487 U.S. at 910).  In contrast to the plaintiffs in *California*, the School Divisions here do not seek contract damages.  Instead, the School Divisions ask the Court to set aside the Department's action designating the School Divisions as high-risk and conditioning its continued receipt of federal funds on the School Divisions adopting an

32

unlawful reading of Title IX and *Grimm*. That is a remedy that only an Article III court can provide. *See e.g.*, *Massachusetts v. Nat'l Insts. of Health*, 770 F. Supp. 3d 277, 293 (D. Mass. 2025) (rejecting Tucker Act argument in part because the plaintiffs' complaint "does not turn on terms of a contract between the parties; it turns on federal statute and regulations put in place by Congress and [other agencies]").

The School Divisions' claims do not hinge on the terms and conditions of each individual grant award, as did the claims in *California*. Instead, these claims hinge on an interpretation of Title IX precedent and its application to the School Divisions' regulations. While federal funds may indeed be disbursed *prospectively* as a result of this case, the School Divisions' claim for injunctive relief is not thereby transformed into a claim for *presently due* money damages.

For these same reasons, the district court's reliance on the Fourth Circuit's opinion in *Sustainability Institute* is also misplaced. *See* JA217–18. The School Divisions do not seek an "order[] to 'enforce a contractual obligation to pay money'" as did the plaintiffs in that case. *Sustainability*, 2025 WL 1587100 at *2 (4th Cir. June 5, 2025) (quoting *California*, 604 U.S. at 652). Instead, the School Divisions seek equitable

relief from Defendants' improper attempt to strongarm the School Divisions into adopting Defendants' incorrect interpretation of Title IX in order to continue to receive federal funding going forward.

The district court also relied on *NIH v. American Public Health Association*, a case in which the Supreme Court reviewed a district court's decision to vacate federal agency guidance and the termination of various research grants.  145 S. Ct. 2658 (2025).

Justice Barrett's concurrence—the narrowest reasoning supporting the Court's judgment partially staying the vacatur of those grant terminations—is presumed to be controlling.[4]   In that concurrence, Justice Barrett clarified that the federal government "[was] not entitled to a stay of the judgments insofar as they vacate the [agency's] guidance documents."  *NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring).  Justice Barrett specifically explained that "[p]laintiffs frequently seek vacatur of internal agency guidance on arbitrary-and- capricious grounds in district court," and the fact that "agency guidance discusses … grants does not

---

[4] *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.") (quotation marks omitted).

transform a challenge to that guidance into a claim 'founded upon' contract that only the [Court of Federal Claims] can hear." *Id.* (Barrett, J., concurring) (referencing 28 U.S.C. § 1491(a)(1)).  Further, "the District Court was likely correct to conclude it had jurisdiction to entertain an APA challenge to the guidance, and it would be confusing to [the Court's] disposition of [the] application to suggest that the [Court of Federal Claims] [was] the right forum for [the APA] claim." *Id.* (Barrett, J., concurring).

The ruling against which Justice Barrett cautioned is the very one that the district court made below.  Like the guidance at stake in *NIH*, the "high-risk" designation the School Divisions seek to enjoin is a substantive determination of the reach of a federal statute (Title IX), not a contract claim for money damages.  As Justice Barrett reasoned, claims regarding the *interpretation of law* are within the district court's APA jurisdiction.  *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.").  "APA challenges … belong in district court." *NIH*, 145 S. Ct.  at 2662 (Barrett, J., concurring).

35

Furthermore, both *NIH* and *California* are factually different from this case. Those cases dealt with grant *terminations*, not prospective conditions imposed on grants that have already been awarded. *See NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring) (finding "the District Court likely lacked jurisdiction to hear challenges to the grant *terminations*, which belong[ed] in the Court of Federal Claims.") (emphasis added); *California*, 604 U.S. at 650–51 (staying a district court's Order "enjoining the Government from *terminating* various education-related grants" because "the APA's limited waiver of immunity does not extend to orders to enforce a contractual obligation to pay money …. Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on any express or implied contract with the United States") (cleaned up) (emphasis added). Here, the School Divisions are not seeking to enforce a contract to obtain payment of money, but rather seek to set aside unlawful conditions the Defendants have imposed as a requirement for receiving federal funds they have already been awarded. *See, e.g., Rhode Island Coal. Against Domestic Violence v. Kennedy*, No. 25-cv-342, 2025 WL 2899764, at *3–4 (D.R.I. Oct. 10, 2025).

36

Finally, the Court of Federal Claims cannot grant the relief that the School Divisions seek here as it is not a court of equity, a fact that further confirms that Article III courts are the proper fora. Where a plaintiff seeks prospective equitable relief demanding, for example, that Defendants comply with this Court's Title IX precedent, the Court of Federal Claims cannot fully "adjudicate the claims over which it [would have] jurisdiction," *NIH*, 145 S. Ct at 2662 n.1 (Barrett, J., concurring), because unlike Article III courts, it lacks general equitable powers, *Me. Cmty. Health*, 590 U.S. at 327.

## CONCLUSION

For the foregoing reasons, the district court's order should be reversed and this cause remanded with a direction that the district court exercise its jurisdiction.

Dated:  October 24, 2025

Respectfully submitted,

/s/ *Timothy J. Heaphy*
Timothy J. Heaphy
*Counsel of Record*
Joshua N. Mitchell
Fiona Carroll
Lindsay Hemminger
WILLKIE FARR &
  GALLAGHER LLP

37

1875 K Street Northwest
Washington, DC  20006
202-303-1000
theaphy@willkie.com

Breanna Smith-Bonsu
Chloe Smeltzer
WILLKIE FARR &
  GALLAGHER LLP
300 N. LaSalle Dr.
Chicago, IL  60654
312-728-9000

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief conforms to the type-volume limitations in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 7,201 words, excluding those portions of the brief identified in Rule 32(f).

/s/ *Timothy J. Heaphy*
Timothy J. Heaphy