No. 25-2087 (L)

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

FAIRFAX COUNTY SCHOOL BOARD; ARLINGTON SCHOOL
BOARD,

*Plaintiffs-Appellants,*

v.

LINDA McMAHON, Secretary of the Department of Education;
UNITED STATES DEPARTMENT OF EDUCATION,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Virginia

**BRIEF OF AMICI CURIAE COMMONWEALTH OF VIRGINIA AND
20 OTHER STATES IN SUPPORT OF DEFENDANTS-APPELLEES**

JASON S. MIYARES
 *Attorney General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 – Telephone
(804) 786-1991 – Facsimile

November 25, 2025

KEVIN M. GALLAGHER
 *Solicitor General*

GRAHAM K. BRYANT
 *Principal Deputy Solicitor General*

MICHAEL C. DINGMAN
 *Deputy Solicitor General*

LEAH J. DEFAZIO
 *Assistant Solicitor General*

*Counsel for the Commonwealth of
Virginia*

# CORPORATE DISCLOSURE STATEMENT

As governmental parties, *amici curiae* are not required to file a certificate of interested persons. Fed. R. App. P. 26.1(a); 4th Cir. R. 26.1.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... iii

INTRODUCTION ...................................................................................... 1

IDENTITY AND INTEREST OF *AMICI CURIAE* .............................. 2

ARGUMENT ............................................................................................. 3

    I.    The School Divisions cannot use *Grimm* as a shield ............... 4

    II.   *Skrmetti* restricts *Grimm*'s application here ........................... 8

CONCLUSION ......................................................................................... 13

COUNSEL FOR ADDITIONAL *AMICI* STATES .............................. 15

CERTIFICATE OF COMPLIANCE ...................................................... 16

CERTIFICATE OF SERVICE ............................................................... 17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams by and through Kasper v. School Bd. of St. Johns Cnty.*,
57 F.4th 791 (11th Cir. 2022) ................................................. 7, 10, 12

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
548 U.S. 291 (2006) ........................................................................ 10

*Bostock v. Clayton County*,
590 U.S. 644 (2020) ................................................................... *passim*

*Canedy v. Boardman*,
16 F.3d 183 (7th Cir. 1994) ............................................................. 7

*Department of Educ. v. California*,
604 U.S. 650 (2025) ......................................................................... 3

*Department of Educ. v. Louisiana*,
603 U.S. 866 (2024) ....................................................................... 10

*Grimm v. Gloucester County School Board*,
972 F.3d 586 (4th Cir. 2020) ...................................................... *passim*

*Jackson v. Birmingham Bd. of Educ.*,
544 U.S. 167 (2005) ....................................................................... 10

*Lange v. Houston Cty.*,
152 F.4th 1245 (11th Cir. 2025) ..................................................... 13

*Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
526 U.S. 629 (1999) ....................................................................... 10

*National Insts. of Health v. American Pub. Health Ass'n*,
145 S. Ct. 2658 (2025) ..................................................................... 3

*Richmond Med. Ctr. for Women v. Herring*,
570 F.3d 165 (4th Cir. 2009) ........................................................... 5

*Roe v. Critchfield*,
137 F.4th 912 (9th Cir. 2025) ......................................... 7, 11

*Sustainability Inst. v. Trump*,
No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025) ..................... 3

*Tennessee v. Cardona*,
762 F. Supp. 3d 615 (E.D. Ky. 2025) ................................... 11

*United States v. Skrmetti*,
605 U.S. 495 (2025) ................................................... *passim*

*Veronia Sch. Dist. 47J v. Acton*,
515 U.S. 646 (1995) .................................................... 7

*Whitaker by Whitaker v. Kenosha Unified Sch. Dist. No. 1*
*Bd. of Educ.*,
858 F.3d 1034 (7th Cir. 2017) .......................................... 6

*White Coat Waste Project v. Greater Richmond Transit Co.*,
35 F.4th 179 (4th Cir. 2022) ........................................... 5

*Wisconsin Cent. Ltd. v. United States*,
585 U.S. 274 (2018) .................................................... 9

**Statutes**

20 U.S.C. § 1681 ................................................... 9, 11

42 U.S.C. § 2000e–2 .................................................... 9

**Other Authorities**

34 C.F.R. § 106.33 .................................................... 11

Asra Q. Nomani, *FCPS Superintendent Closed Investigation*
*into Boy with 'Facial Hair' who Allegedly Watched Girls*
*Undress in* ............................................................ 1

Asra Q. Nomani, *FCPS Superintendent Closed Investigation into Boy with 'Facial Hair' who Allegedly Watched Girls Undress in West Springfield High Locker Room*, Fairfax County Times (Sept. 24, 2025), https://tinyurl.com/3k2bvhsj.................................................... 1

Federal Rule of Appellate Procedure 29 ................................... 2

Nick Minock, *Boys Watched Girls Change in Fairfax County High School Locker Room, New Complaint Alleges*, WJLA (Sept. 24, 2025), https://tinyurl.com/3vx79pjn; ................................... 1

Nick Minock, *Child Sex Offender Visited 2 Schools, 2 Rec Centers in Arlington and Fairfax Counties*, WJLA (Feb. 5, 2025), https://tinyurl.com/jbss5amn; ................................... 1

Scott Gelman, *Arlington Public Schools Tightening Security after Alleged Incident at Washington-Liberty High School Pool*, WTOP (Feb. 4, 2025), https://tinyurl.com/mr7bcvmc.................. 1

## INTRODUCTION

The Fairfax County School Board and the Arlington School Board (collectively, School Divisions) incorrectly assert that their sweeping policies allowing students to use facilities that correspond with their self-proclaimed gender identities are *required* by this Court's holding in *Grimm v. Gloucester County School Board*, 972 F.3d 586 (4th Cir. 2020). These policies have led to sexual harassment complaints from female students because a male student repeatedly watched them change clothes in the locker room,[1] and criminal charges against a registered child sex offender (a biological male who self-identifies as transgender) who accessed the women's locker rooms at the School Divisions' public high schools and exposed himself to women.[2] *Grimm* does not mandate

---

[1] Nick Minock, *Boys Watched Girls Change in Fairfax County High School Locker Room, New Complaint Alleges*, WJLA (Sept. 24, 2025), https://tinyurl.com/3vx79pjn; Asra Q. Nomani, *FCPS Superintendent Closed Investigation into Boy with 'Facial Hair' who Allegedly Watched Girls Undress in West Springfield High Locker Room*, Fairfax County Times (Sept. 24, 2025), https://tinyurl.com/3k2bvhsj.

[2] Nick Minock, *Child Sex Offender Visited 2 Schools, 2 Rec Centers in Arlington and Fairfax Counties*, WJLA (Feb. 5, 2025), https://tinyurl.com/jbss5amn; Scott Gelman, *Arlington Public Schools Tightening Security after Alleged Incident at Washington-Liberty High School Pool*, WTOP (Feb. 4, 2025), https://tinyurl.com/mr7bcvmc.

such harmful, expansive policies that violate Title IX of the Education Amendments of 1972, and it is not a shield to protect policies that are well outside of the limits of its holding. Further, the Supreme Court's recent holding in *United States v. Skrmetti*, 605 U.S. 495 (2025), restricts *Grimm's* application here. In designating the School Divisions as "high risk," the Department of Education rightly recognized that *Grimm* does not justify the School Divisions' radical policies. The district court correctly dismissed the School Divisions' claims, and this Court should affirm the district court's dismissal.

## IDENTITY AND INTEREST OF *AMICI CURIAE* [3]

*Amici curiae* are the Commonwealth of Virginia and 20 other States (collectively, the *Amici* States). The *Amici* States have a strong interest in protecting the privacy and safety of their citizens, especially their schoolchildren. They also have an interest in preventing localities from violating federal law, including Title IX. *Amici* States therefore file this brief *amici curiae* in support of Defendants-Appellees to argue that this Court should affirm the district court's dismissal.

---

[3] This brief is filed under Federal Rule of Appellate Procedure 29(a)(2).

# ARGUMENT

The School Divisions' entire justification for their policies relies on the incorrect premise that *Grimm* "compel[s] the School Divisions to grant students access to sex-segregated facilities that correspond with those students' gender identities." School Divisions Br. 6. Because the district court correctly determined that the Court of Federal Claims has exclusive jurisdiction over the School Divisions' claims, *Grimm* is not binding precedent. JA219–24; *Department of Educ. v. California*, 604 U.S. 650, 650 (2025); *National Insts. of Health v. American Pub. Health Ass'n*, 145 S. Ct. 2658, 2660–62 (2025) (Barrett, J., concurring); *Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100, at *1–2 (4th Cir. June 5, 2025). But even if the School Divisions' claims were properly before the district court, *Grimm* is a narrow decision that neither compels these harmful policies nor shields the School Divisions from Title IX accountability. And even if *Grimm* were as boundless as the School Divisions claim, the Supreme Court's recent holding in *United States v. Skrmetti*, 605 U.S. 495, limits *Grimm*'s application in situations like this.

## I. The School Divisions cannot use *Grimm* as a shield

The School Divisions argue that *Grimm* requires their sweeping policies, which allow anyone who self-proclaims a different gender identity to use "sex-segregated facilities that correspond with [their] gender identities." School Divisions Br. 6. But *Grimm* is a narrow decision that applies only to a particular student and a particular bathroom policy. It does not mandate that *all* schools must allow *all* transgender-identifying students to use *all* facilities, including locker rooms and changing facilities.

In *Grimm*, a biological female who identified as transgender sued a school board for its policy limiting the use of single-sex bathrooms "to the corresponding biological genders." *Grimm*, 972 F.3d at 597–99. As relevant here, this Court held that, as applied to the plaintiff, the bathroom policy violated Title IX. *Id.* at 607, 616, 619. Specifically, this Court held that "[a]fter the Supreme Court's recent decision in *Bostock* [*v. Clayton County*, 590 U.S. 644 (2020)], we have little difficulty holding that a bathroom policy precluding Grimm from using the boys restrooms" discriminated on the basis of sex because "[t]he Board could not exclude

Grimm from the boys bathrooms without referencing his 'biological gender' under the policy." *Id.* at 616.

Significantly, however, this Court emphasized at every turn that Grimm's challenge was as-applied. *E.g.*, *Grimm*, 972 F.3d at 609 ("[W]e hold that the Board's policy constitutes sex-based discrimination *as to Grimm*." (emphasis added)); *id.* at 605 ("To this day, the Board and Grimm 'vigorously contest' the legality of the bathroom policy *as applied* to Grimm." (emphasis added)); *id.* at 607 ("[W]e hold that the Board's policy *as applied* to Grimm is not substantially related to the important objective of protecting student privacy." (emphasis added)). Necessarily, the question that this Court considered was tailored to Grimm's individual circumstances. See *White Coat Waste Project v. Greater Richmond Transit Co.*, 35 F.4th 179, 204 (4th Cir. 2022) ("An as-applied challenge is one which depends on the identity or circumstances of the plaintiff." (citing *Richmond Med. Ctr. for Women v. Herring*, 570 F.3d 165, 172–73 (4th Cir. 2009))). Indeed, the question in *Grimm* was "limited to how school bathroom policies implicate the rights of transgender students who 'consistently, persistently, and insistently' express a binary

gender." *Grimm*, 972 F.3d at 596 (quotation omitted). This is important for two primary reasons.

First, *Grimm* has little to say about students who have *not* "consistently, persistently, and insistently express[ed] a binary gender." *Grimm*, 972 F.3d at 596 (quotation marks omitted). Courts have recognized a difference between cases involving students who have progressed in a sex transition versus cases "where a student has merely announced that he is a different gender." *Whitaker by Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1050 (7th Cir. 2017). Thus, *Grimm* cannot possibly require sweeping policies allowing students to use facilities "that correspond with those students' gender identities," School Divisions Br. 6, based solely on the student's say-so. See JA55 (Fairfax County School Board's policy requiring that "[s]chools shall accept a student or parent's . . . *assertion* of a student's gender-expansive or transgender status" (emphasis added)); JA335 (Arlington School Board's policy defining "gender identity" to encompass a student's "*sense of self* as male, female, or an alternative gender" (emphasis added)).

Second, *Grimm* expressly applied only to bathrooms, because "[a]lthough the Board's policy similarly applie[d] to locker room facilities, Grimm d[id] not need to use the locker rooms and never challenged that aspect of the policy." *Grimm*, 972 F.3d at 601. The privacy interests that students have in bathrooms and locker rooms are markedly different. It is "not difficult" to understand why schools have long provided different locker rooms and changing facilities for members of each sex—students of all ages have a legitimate interest in "shielding their bodies from the opposite sex." *Adams by and through Kasper v. School Bd. of St. Johns Cnty.*, 57 F.4th 791, 804 (11th Cir. 2022) (quotation marks omitted)); see *Canedy v. Boardman*, 16 F.3d 183, 185 (7th Cir. 1994) (having "one's naked body viewed by a member of the opposite sex" is an "invasion" of privacy); *Roe v. Critchfield*, 137 F.4th 912, 925 (9th Cir. 2025) ("[I]t is plain that the privacy interest in avoiding bodily exposure is most strongly implicated in locker rooms and communal shower rooms that lack curtains or stalls."). Indeed, "[p]ublic school locker rooms . . . are not notable for the privacy they afford." *Veronia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 657 (1995). Thus, *Grimm* also does not require the School

Divisions to apply their policies to all sex-segregated facilities "including locker rooms and restrooms" as they currently do. School Divisions Br. 7.

## II. *Skrmetti* restricts *Grimm*'s application here

Beyond *Grimm's* limited nature, the United States Supreme Court's recent decision in *Skrmetti*, 605 U.S. 495, also demonstrates that *Grimm* does not justify the sweeping policies at issue in this case.

First, *Skrmetti* calls into question this Court's conclusion that the policy in *Grimm* discriminated on the basis of sex because "[t]he Board could not exclude Grimm from the boys bathrooms without referencing his 'biological gender' under the policy." *Grimm*, 972 F.3d at 616. In *Skrmetti*, the Court noted that, in the Equal Protection Clause context, it "has never suggested that mere reference to sex is sufficient to trigger heightened scrutiny." *Skrmetti*, 605 U.S. at 496. Thus, after *Skrmetti*, "mere reference to sex" is likely insufficient to establish discrimination on the basis of sex.

That is especially relevant here because *Grimm* relied on *Bostock* to reach its Title IX conclusion. See *Grimm*, 972 F.3d at 616 ("After the Supreme Court's recent decision in *Bostock*, we have little difficulty holding that a bathroom policy precluding Grimm from using the boys

restrooms" discriminated on the basis of sex). In *Skrmetti*, the Court explained that it has never held that "*Bostock*'s reasoning reaches beyond the Title VII context." *Skrmetti*, 605 U.S. at 498. And as Justice Thomas explained in his concurrence, there are significant reasons why *Bostock* does not extend beyond Title VII. See *id.* at 526–29 (Thomas, J., concurring).

One reason is that Title VII and Title IX have distinct language for distinct purposes. Title VII makes it unlawful for an employer to discriminate against an individual in employment "*because of* such individual's . . . sex." 42 U.S.C. § 2000e–2(a) (emphasis added). Conversely, Title IX states that "[n]o person in the United States shall, *on the basis of* sex, . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a) (emphasis added). If Congress intended the two provisions to be interpreted identically, it could have used identical language, but it chose not to. See *Wisconsin Cent. Ltd. v. United States*, 585 U.S. 274, 279 (2018) ("We usually presume differences in [statutory] language [] convey differences in meaning." (quotation marks and citation omitted)). This difference in language indicates that *Bostock*

should not automatically be extended to the Title IX context. See *Department of Educ. v. Louisiana*, 603 U.S. 866, 867 (2024) (per curiam) (Supreme Court unanimously holding that "the plaintiffs were entitled to preliminary injunctive relief" from the enforcement of a rule's provisions extending *Bostock's* reasoning to Title IX).

Another reason is that, unlike Title VII, Congress enacted Title IX pursuant to its Spending Clause powers. See *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 181 (2005). To comply with the Spending Clause's limitations, Congress must provide the States "with unambiguous notice of the conditions they are assuming when they accept" funding. *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 637 (1999) (cleaned up); see *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) ("[W]hen Congress attaches conditions to a State's acceptance of federal funds, the conditions must be set out 'unambiguously.'"). But when "Congress prohibited discrimination on the basis of 'sex' in education, it meant biological sex, *i.e.*, discrimination between males and females." *Adams*, 57 F.4th at 812. Because Congress did not intend Title IX and its implementing regulations to encompass gender identity, the plain texts of these provisions do not give clear notice

to the States that they require allowing students access to restrooms, locker rooms, and similar facilities based on their self-proclaimed gender identity. See 20 U.S.C. § 1681(a); 34 C.F.R. § 106.33.

It should thus come as no surprise that courts around the country have concluded that the Spending Clause prevents conditioning Title IX funds on prohibiting discrimination based on "gender identity" as opposed to biological sex. *E.g.*, *Roe*, 137 F.4th at 929 (holding that a party had "failed to establish that Defendants had adequate notice, when they accepted federal funding, that Title IX prohibits the exclusion of transgender students from restrooms, locker rooms, shower facilities, and overnight lodging corresponding to their gender identity"); *Tennessee v. Cardona*, 762 F. Supp. 3d 615, 626 (E.D. Ky. 2025) ("Title IX does not unambiguously condition the receipt of funds on the prohibition of gender identity discrimination.").

Further, this Court's assertion that *Bostock* "guides [the Court's] evaluation of claims under Title IX," *Grimm*, 972 F.3d at 616, cannot survive *Skrmetti*. Under *Bostock*, "an employer who fires a homosexual male employee for being attracted to men while retaining the employee's straight female colleague has discriminated on the basis of sex because

it has penalized the male employee for a trait (attraction to men) that it tolerates in the female employee." *Skrmetti*, 605 U.S. at 521. In *Skrmetti*, however, *Bostock*'s logic did not apply to Tennessee's law regulating gender-transition procedures for minors because changing a minor's sex would not "automatically change" the operation of that law. *Id.* at 522. The Supreme Court held that *Bostock* requires sex to be the "but for" cause of an outcome, not merely a factor "at play." *Id.* at 521.

The Supreme Court's clarification of *Bostock* illustrates that it is inapplicable in cases like *Grimm*. Such cases do not challenge policies of maintaining separate bathrooms for boys and girls, a classification that is inherently based on sex. Indeed, the plaintiff in *Grimm* explicitly *disclaimed* such a challenge. See *Grimm*, 972 F.3d at 618 ("But Grimm does not challenge sex-separated restrooms; he challenges the Board's discriminatory exclusion of himself from the sex-separated restroom matching his gender identity."). *Bostock* therefore provides no guidance here. See *Bostock*, 590 U.S. at 681 ("[W]e do not purport to address bathrooms, locker rooms, or anything else of the kind."); *Adams*, 57 F.4th at 808 (declining to apply *Bostock* because "the instant appeal is about schools and children—and the school is not the workplace").

Further, the Supreme Court's treatment of *Bostock* in *Skrmetti* indicates that *Bostock* did not alter the meaning of "sex" to include gender identity as this Court suggests in *Grimm*. See *Grimm*, 972 F.3d at 616 ("In *Bostock*, the Supreme Court held that discrimination against a person for being transgender is discrimination 'on the basis of sex.'"). Instead, the *Bostock* holding turns on whether sex is the but-for cause of differential treatment. *Skrmetti*, 605 U.S. at 519–20. Indeed, in *Bostock*, the Court did not determine the meaning of "sex" but assumed that, in the Title VII context, it meant "biological distinctions between male and female." 590 U.S. at 655; see also *Lange v. Houston Cty.*, 152 F.4th 1245, 1252 (11th Cir. 2025) ("*Bostock* did not add transgender status, as a category, to the list of classes protected by Title VII."). Accordingly, this Court's assumption that "sex" automatically encompasses transgender status does not comport with the Supreme Court's holding in *Skrmetti*.

## CONCLUSION

This Court should affirm the district court's dismissal of the School Divisions' claims.

Respectfully submitted,

By: _____/s/ Kevin M. Gallagher_____
                    Kevin M. Gallagher
                    *Solicitor General*

JASON S. MIYARES                   GRAHAM K. BRYANT
  *Attorney General*                   *Principal Deputy Solicitor General*

                                   MICHAEL C. DINGMAN
Office of the Attorney General       *Deputy Solicitor General*
202 North Ninth Street
Richmond, Virginia 23219           LEAH J. DEFAZIO
(804) 786-2071 – Telephone           *Assistant Solicitor General*
(804) 786-1991 – Facsimile


November 25, 2025                   *Counsel for the Commonwealth of*
                                   *Virginia*

## COUNSEL FOR ADDITIONAL *AMICI* STATES

STEVE MARSHALL
Attorney General
State of Alabama

STEPHEN J. COX
Attorney General
State of Alaska

TIM GRIFFIN
Attorney General
State of Arkansas

JAMES UTHMEIER
Attorney General
State of Florida

CHRISTOPHER M. CARR
Attorney General
State of Georgia

THEODORE E. ROKITA
Attorney General
State of Indiana

BRENNA BIRD
Attorney General
State of Iowa

KRIS KOBACH
Attorney General
State of Kansas

LIZ MURRILL
Attorney General
State of Louisiana

CATHERINE L. HANAWAY
Attorney General
State of Missouri

AUSTIN KNUDSEN
Attorney General
State of Montana

MICHAEL T. HILGERS
Attorney General
State of Nebraska

DREW WRIGLEY
Attorney General
State of North Dakota

DAVE YOST
Attorney General
State of Ohio

ALAN WILSON
Attorney General
State of South Carolina

MARTY J. JACKLEY
Attorney General
State of South Dakota

JONATHAN SKRMETTI
Attorney General
State of Tennessee

KEN PAXTON
Attorney General
State of Texas

DEREK BROWN
Attorney General
State of Utah

KEITH G. KAUTZ
Attorney General
State of Wyoming

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 2,511 words, excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century typeface.

*/s/ Kevin M. Gallagher*
Kevin M. Gallagher

## CERTIFICATE OF SERVICE

I certify that on November 25, 2025, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

*/s/ Kevin M. Gallagher*

Kevin M. Gallagher