**No. 25-2087 (L)**

# IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

FAIRFAX COUNTY SCHOOL BOARD AND ARLINGTON SCHOOL BOARD,

*Plaintiffs-Appellants*,

v.

LINDA MCMAHON, IN HER OFFICIAL CAPACITY AS SECRETARY OF EDUCATION OF THE UNITED STATES, AND THE UNITED STATES DEPARTMENT OF EDUCATION,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Eastern District of Virginia,
Nos. 1:25-cv-01432-RDA-LRV & 1:25-cv-01434-RDA-LRV,
Hon. Rossie D. Alston, Jr.

## Plaintiffs-Appellants' Reply Brief

| | |
|---|---|
| Breanna Smith-Bonsu | Timothy J. Heaphy |
| Chloe Smeltzer | *Counsel of Record* |
| WILLKIE FARR & | Joshua N. Mitchell |
| GALLAGHER LLP | Fiona Carroll |
| 300 N. LaSalle Dr. | Lindsay Hemminger |
| Chicago, IL  60654 | WILLKIE FARR & |
| 312-728-9000 | GALLAGHER LLP |
| | 1875 K Street Northwest |
| | Washington, DC  20006 |
| | 202-303-1000 |
| | theaphy@willkie.com |

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................ii

INTRODUCTION ........................................................................ 1

ARGUMENT ............................................................................. 5

I.  The School Divisions' claims lie exclusively within Article III courts' jurisdiction ........................................................... 5

A. Defendants' action is a final agency action reviewable under the APA. ...................................................................... 5

B. Defendants' "high-risk" designation of the School Divisions concerns Title IX—and only Title IX. ................................ 9

C. Defendants expressly invoked Section 1682, bringing the School Divisions' claims within Section 1683. ................. 12

D. This is not a Tucker Act case. ........................................... 15

   1. This is not a contract case. ........................................... 15

   2. This is not a case seeking presently due money damages. ....... 18

   3. Review in the Court of Federal Claims is not "judicial review." ..................................................................... 20

II. Defendants' waiver and forfeiture arguments are meritless. ............ 23

CONCLUSION ........................................................................ 26

# TABLE OF AUTHORITIES

**Cases**

*Am. Ass'n of Univ. Profs. v. Trump,*
2025 WL 3187762 (N.D. Cal. Nov. 14, 2025) ................................ 15, 22

*Bennett v. New Jersey,*
470 U.S. 632 (1985) ................................................................ 16

*Bennett v. Spear,*
520 U.S. 154 (1997) ............................................................... 5, 7

*Doe v. S. Carolina,*
No. 25-1787, 2025 WL 2375386 (4th Cir. Aug. 15, 2025) ..................... 8

*Frozen Food Express v. United States,*
351 U.S. 40 (1956) .................................................................. 6

*Grimm v. Gloucester Cnty. Sch. Bd.,*
972 F.3d 586 (4th Cir. 2020) ........................................... passim

*Hinck v. United States,*
550 U.S. 501 (2007) ............................................................... 21

*Interactive Gift Exp., Inc. v. Compuserve, Inc.,*
256 F.3d 1323 (Fed. Cir. 2001) ............................................... 24

*Katz v. Cisneros,*
16 F.3d 1204 (Fed. Cir. 1994) ................................................ 23

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
511 U.S. 375 (1994) ............................................................... 17

*Nat'l Ctr. for Mfg. Sciences. v. United States,*
114 F.3d 196 (Fed. Cir. 1997) ................................................ 23

*Pres. & Fellows of Harvard Coll. v.*
*U.S. Dep't of Health & Human Servs.,*
— F. Supp. 3d —, 2025 WL 2528380 (D. Mass. Sept. 3, 2025) .......... 19

*R.I. Coal. Against Dom. Violence v. Kennedy,*
2025 WL 2988705 (D.R.I. Oct. 23, 2025) .................................... 16

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
591 U.S. 197 (2020) ............................................................... 21

ii

*Todd v. United States*,
    386 F.3d 1091 (Fed. Cir. 2004) ................................................. 14, 18, 19

*United States v. Cotton*,
    535 U.S. 625 (2002) .................................................................... 26

*United States v. Testan*,
    424 U.S. 392 (1976) ................................................................. 14, 18

*Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*,
    386 F.3d 581 (4th Cir. 2004) ................................................... 25

*Washington v. Trump*,
    766 F. Supp. 3d 1138 (W.D. Wash. 2025) ............................... 8

*Yee v. City of Escondido*,
    503 U.S. 519 (1992) .................................................................. 24

## Statutes

5 U.S.C. § 702 .................................................................................. 20

9 U.S.C. § 9 ...................................................................................... 23

9 U.S.C. § 10 .................................................................................... 23

20 U.S.C. § 1226a-1 .......................................................................... 3

20 U.S.C. § 1682 ........................................................................ 13, 17

20 U.S.C. § 1683 ..................................................................... passim

28 U.S.C. § 1491 ............................................................................. 16

## Constitutional Provisions

U.S. Const. Art. I § 8 cl. 9 ............................................................. 20

U.S. Const. Art. III § 1 ............................................................. 20, 21

## INTRODUCTION

This case presents a straightforward jurisdictional question: did the district court have jurisdiction to review Defendants' decision to fundamentally alter the conditions under which the School Divisions may receive federal grant funding?  The answer is plainly yes because the Defendants' imposition of conditions on reimbursement of federal funds is a final enforcement action reviewable in the district court under Title IX's judicial-review provision, 20 U.S.C. § 1683.

The Department of Education has demanded that the School Divisions change their current policies governing student access to restroom and locker-room facilities—a policy change that would violate federal law.  This unreasonable and unlawful demand prompted the School Divisions to seek prospective equitable relief in the only forum with jurisdiction to provide that relief—the district court.

The district court dismissed the School Divisions' complaint based on its conclusion that the School Divisions' claims sought "money damages" and, as a result, could only be pursued in the Court of Federal Claims.  In seeking to defend the district court's jurisdictional ruling, Defendants contend, time and again, that the Secretary has not yet cut

off funds to the School Divisions. That is, of course, precisely the School Divisions' point: they seek *prospective injunctive and declaratory relief preventing* that outcome, relief that an Article I tribunal like the Court of Federal Claims cannot provide. The School Divisions challenge the conditions imposed on their continued access to federal funds following Defendants' designation of the School Divisions as "high-risk" entities due to their refusal to follow Defendants' erroneous interpretation of the law. This case thus falls squarely within the district court's subject-matter jurisdiction under Title IX and the Administrative Procedure Act ("APA"), not in the jurisdiction of the Court of Federal Claims.

Having conceded that the School Divisions are not, in fact, seeking presently due contractual monetary damages that would bring this case within the Tucker Act, Defendants now pivot to the novel argument that Education Secretary Linda McMahon's arbitrary, capricious, and illegal demand—that the School Divisions violate Title IX as interpreted in this Circuit's opinion in *Grimm v. Gloucester County School Board*[1]—is a

---

[1] 972 F.3d 586, 619–20 (4th Cir. 2020) (holding that Title IX requires school districts in this Circuit to provide transgender students with access to sex-segregated facilities corresponding to those students' gender identities even where those gender identities differ from the sex assigned those students at birth).

2

contentless "law enforcement" activity.  More specifically, they contend that the Secretary's threat to discontinue the School Divisions' federal funding unless the School Divisions modify their policies in a manner inconsistent with federal law is within the Secretary's "enforcement" authority pursuant to 20 U.S.C. § 1226a-1, which they contend provides her with plenary authority to determine the manner of provision of federal funds.

This Court should reject the Defendant's strained interpretation of law and acknowledge that the School Divisions' challenge to the Defendant's "high-risk" designation turns upon the interpretation of Title IX.  Defendants' "law enforcement" argument ignores that the Secretary's imposition of the "high-risk" designation at issue in this case was not a mere ministerial step designed to ensure the responsible and appropriate use of federal funds.  It was, instead, an enforcement action based upon the Secretary's express—and incorrect—conclusion that the School Divisions' facilities-access policies violate Title IX.

Despite Defendants' best efforts, there is no way to divorce the School Divisions' claims from Defendants' attempt to impose their incorrect interpretation of Title IX.  Accordingly, Title IX's judicial-

review provision, 20 U.S.C. § 1683, governs this dispute and vests express statutory authority over this case in the Article III courts. Defendants cannot now claim that what the Secretary expressly stated were violations of Title IX had nothing to do with Title IX and were not, in fact, exercises of her Title IX–enforcement authority.

This Court should not reward Defendants' attempt to avoid facing the merits of this simple jurisdictional claim by contending that it is misplaced or unripe. First, Defendants' action is a reviewable final agency action that imposes actual and present legal consequences on the School Divisions. Second, that action was taken under the Secretary's authority to enforce Title IX. Third, because that action's only possible effect is a prospective refusal to continue funds, it falls comfortably within the boundaries of § 1683. Fourth, no other judicial review is available that would preclude APA review under § 1683 because no contract or money damages are at issue and because "judicial review" is, in any event, unavailable in the Court of Federal Claims. And, finally, Defendants' last-gasp forfeiture and waiver arguments fail on this issue of subject-matter jurisdiction.

This case belongs in Article III courts. The district court's erroneous order should be reversed.

## ARGUMENT

**I.  The School Divisions' claims lie exclusively within Article III courts' jurisdiction.**

### A.  Defendants' action is a final agency action reviewable under the APA.

Defendants have designated the School Divisions as "high-risk" entities, placed their federal funding payments on reimbursement status, and imposed onerous and arbitrary conditions on that reimbursement, all in an effort to prevent their current and prospective compliance with Title IX as this Court has interpreted it in *Grimm*. Blue Br. 18–19. Defendants' actions are final agency actions reviewable under the APA.

Agency action is final and reviewable when it "mark[s] the consummation of the agency's decisionmaking process" and is "one by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up). Defendants' actions here are the culmination and result of Defendants' months-long "investigations" of the School Divisions for purported Title IX violations, and they imposed new funding conditions on the School Divisions. *See id.*; *see also Frozen Food Express v. United*

5

*States*, 351 U.S. 40, 43–44 (1956) (agency action is final when it "has an immediate and practical impact").

Defendants nevertheless contend that the claim is prudentially unripe because the Secretary has declined to act on—or even acknowledge—the School Divisions' requests for reconsideration through the first three months of the school year. Red Br. 34. Defendants' deadline for responding to those requests has come and gone.[2] *See* JA178, JA379. Their inaction—which they seek to use as a shield against judicial review—amounts to a constructive denial. Blue Br. 18–20.

Moreover, Defendants did not wait for the outcome of the School Divisions' reconsideration request before imposing the penalty of "high-risk" designation, with its associated funding conditions, on the School Divisions. JA049 (the DOE "*has designated* [the School Divisions] as … 'high-risk' entit[ies]"); *see also* JA266. Those funding conditions are expressly laid out in Defendants' letters to the School Divisions, and those letters *presently obligate* the School Divisions to comply. JA051;

---

[2] Although the October 23 deadline for reconsideration fell during the recent lapse in federal appropriations, Defendants assert that the Secretary is "individually reviewing" such requests. Red Br. 35. As a cabinet officer, the Secretary's obligation to continue her duties was, of course, not affected by the lapse.

JA268; *see Bennett*, 520 U.S. at 178.  The Defendants have imposed the punishment for their (incorrect) finding of a Title IX violation rather than waiting to individually review the School Divisions' requests for reconsideration.  Stalling this Court's review so that the Secretary may continue pretending to evaluate the School Divisions' position—which has not changed since the "investigations" began—would be unfair and would allow the Secretary to indefinitely punish the School Divisions with "high-risk" status.

In this connection, Defendants argue that the School Divisions' view that "the Secretary will not be receptive to their claims … has no grounding in the record" and contend that the School Divisions declined to "work with the Secretary to find an approach consistent with this Court's precedent."  Red Br. 35.  But the record—and Defendants' recent actions—demonstrate otherwise.  The Secretary's position throughout the pretextual "investigation" has been that the only acceptable outcome is for the School Divisions to surrender to Defendants' unlawful Title IX interpretation and bar transgender students from accessing facilities aligned with their gender identities.  *E.g.*, JA149–69, JA193–96, JA350–70, JA394–97.  This is not the administration's first attempt to penalize

transgender individuals. *See, e.g.*, *Washington v. Trump*, 766 F. Supp. 3d 1138, 1154–60 (W.D. Wash. 2025) (ruling Executive Order 14,187, which purported to ban gender-affirming treatment for transgender individuals under the age of 18, likely unconstitutional on several grounds). And this Court has held that Title IX does not allow the disparate treatment Defendants demand. *Grimm*, 972 F.3d at 619–620; *Doe v. S. Carolina*, No. 25-1787, 2025 WL 2375386, at *8–10 (4th Cir. Aug. 15, 2025).

Requiring the School Divisions to await the Secretary's purported reconsideration would be particularly prejudicial here, where the Secretary has consistently and unambiguously asserted that the only remedy that will satisfy the Department and remove the "high-risk" designation is a policy change by the School Divisions that would violate this Court's precedent and Title IX. At no time, whether during the pretextual "investigations" or since, have Defendants indicated they have any intention of obeying this Court's precedent or of allowing the School Divisions to do so. Each time the School Divisions have pointed out that *Grimm*'s interpretation of Title IX binds all parties to this case, Defendants have continued to insist that the only path forward for the

8

School Divisions is to violate that precedent, barring transgender students from using sex-segregated facilities corresponding to their gender identities. *See* JA149–69, JA193–96, JA350–70, JA394–97. Accordingly, this matter is ripe for review and should not be paused to await the foreordained but indefinitely delayed outcome of meaningless administrative reconsideration.

**B.    Defendants' "high-risk" designation of the School Divisions concerns Title IX—and only Title IX.**

Defendants' attempt to recast their conduct as anodyne general law enforcement does not square with the Secretary's own words in imposing the "high-risk" designation. Defendants based that designation explicitly and exclusively on the Department's conclusion that the School Divisions' policies violate Title IX. Defendants gamely but unsuccessfully attempt to divorce the Secretary's enforcement action from what it is really about—purported enforcement *of Title IX.* The Secretary's decision is not merely a "determination concerning method of payment for allocated funds," Red Br. 32, or the "select[ion of] a particular payment method," Red Br. 40. It imposes *substantive* constraints on the School Divisions' future actions—constraints that conflict with the School Divisions' Title IX duties. Blue Br. 18–20; *Grimm*, 972 F.3d at 618–19.

9

Defendants further contend that the "discretionary authority to alter the method of payment has [not] been circumscribed in any meaningful way by Congress." Red Br. 33. But in 20 U.S.C. § 1683, the judicial-review provision that governs Title IX enforcement actions, Title IX itself provides an express limit to that authority. That statute provides that the Secretary may not "alter the method of payment" in a manner that has the effect of "terminating or refusing to grant or to continue financial assistance" based on a purported violation of Title IX. 20 U.S.C. § 1683. Such an action "shall not be deemed committed to unreviewable agency discretion." *Id.*

Here, by placing the School Divisions on reimbursement status, Defendants ensure that the School Divisions will be forced to comply with Defendants' conditions, including Defendants' determination whether "the expenditure in question can be allowably charged to the grant." JA051; JA396. And Defendants' "findings" made clear that "expenditure[s]" could only be "allowably charged" if the School Divisions acceded to Defendants' interpretation of Title IX. Indeed, the Secretary made clear that the Department's finding of an alleged Title IX violation was the sole reason for the "high-risk" designation. JA193, JA394. Her

10

insistence that the School Divisions change their policies is the central
"condition" that will remove the "high-risk" designation.  *See* JA149–69;
JA350–70.  But that insistence directly contradicts this Court's binding
interpretation of Title IX.  *See* Blue Br. 2; *Grimm*, 972 F.3d at 618–19.

Defendants have plainly and consistently conceded that the
Secretary's Title IX finding is the *only* basis for their enforcement action.
The complaint that Defendants contend caused them to initiate their
investigation alleges that

> the Division's anti-discrimination policy pertaining to
> transgender students provides greater rights to students
> whose gender identity does not match their biological sex
> than it does to students whose gender identity matches
> their biological sex. **Specifically, the complaint alleges
> that [the School Divisions' policies], which relate[]
> in part to the use of intimate, sex segregated
> facilities, including restrooms and locker rooms,
> violate[] Title IX.**

JA061 (internal quotation marks omitted).  At the conclusion of the
investigation, Defendants found *precisely one* violation of law:

> The School Divisions' bathroom, locker room, and sex-
> segregated intimate facilities policies or regulations
> **violate Title IX and its implementing regulations
> because they permit access to intimate facilities
> that correspond with a student's "gender
> identity"** ….

11

JA089 (emphasis added). Defendants claim that the School Divisions "contend that any action the Secretary takes which effects [*sic*] a Title IX funding recipient is an effort to enforce Title IX." Red Br. 39. Not so: the School Divisions contend that *what Defendants expressly and explicitly characterized as action taken under their authority to enforce Title IX* was in fact such an action. This Court should ignore Defendants' attempt on appeal to walk away from their clear invocation of Title IX and should summarily reject their claim that the "high-risk" determination was merely a "law enforcement" step beyond judicial review.

The Secretary's vague statement that she wishes to prevent "spen[ding] on illegal activity," Red Br. 40 (citing JA193–94 & JA266), similarly omits the only relevant points: that (1) the Secretary's pretextual investigation of the School Divisions was conditioned *only* on their purported violations of Title IX, JA150, JA351, and (2) the *only* purportedly "illegal activity" that investigation found was the School Divisions' refusal to violate the holding of *Grimm*, JA089.

## C. Defendants expressly invoked Section 1682, bringing the School Divisions' claims within Section 1683.

Defendants concede that to enforce Title IX by refusing to continue federal funds, they "would have been required to invoke [20 U.S.C.]

§ 1682." Red Br. 37. Defendants in fact did just that—"invoke[d] § 1682"—in their findings letter concluding the pretextual "investigations." JA154 & JA291 ("Title IX … empowers and directs Federal departments and agencies to issue and enforce regulations to effectuate the provisions of Title IX. *See id.* **§ 1682.** The relevant department has exercised this authority from the beginning ….") (emphasis added). The Defendants' response brief nowhere acknowledges, much less grapples with, their express invocation of § 1682 in the very proceedings they now claim took place entirely under some other authority.

Rather than acknowledge the clear applicability of § 1682, Defendants instead contend that the statute does not apply here, asserting that they have not yet terminated funding to the School Divisions. Red Br. 37. But that concession only strengthens the School Divisions' jurisdictional argument.

*First*, the relief the School Divisions seek is *prospective*, not backward-looking, and so, *contra* the district court, the School Divisions' claims do not and cannot fall within the jurisdiction of the Court of Federal Claims. *Todd v. United States*, 386 F.3d 1091, 1093–94 (Fed.

13

Cir. 2004) ("The jurisdiction of the Court of Federal Claims under the Tucker Act is 'limited to actual, presently due money damages from the United States.'") (quoting *United States v. Testan*, 424 U.S. 392, 398 (1976)).

*Second*, § 1683 provides for judicial review not just of a *termination* of funds but also of a *refusal to continue* funds for a violation of Title IX. And here, as the School Divisions explained, "[t]he challenged agency action falls within § 1683's ambit because it constitutes a refusal to continue federal financial assistance on the same terms under which that assistance was granted." Blue Br. 15. More than that, those actions amount to a refusal to continue federal financial assistance *at all*, because the School Districts cannot lawfully comply with the conditions Defendants have imposed. Complying with those conditions would violate Title IX. *See Grimm*, 972 F.3d at 619–620.

Because Defendants' actions are a refusal to continue federal financial assistance for a purported violation of Title IX, they are reviewable under § 1683. And because they are reviewable under § 1683, Defendants' attempt to rely upon the same inapposite Supreme Court

emergency-docket orders on which the district court based its erroneous ruling, Red Br. 27, remains beside the point, *see* Blue Br. 31–37.

### D.    This is not a Tucker Act case.

Defendants' last line of defense is to contend that *even if* their challenged actions constitute Title IX enforcement that is reviewable under § 1683, "judicial review" is otherwise available in the Court of Federal Claims under the Tucker Act.  However, the Tucker Act has no bearing on this case because it is not a contract case and the School Divisions do not seek money damages but rather prospective relief.  *See, e.g.*, *Am. Ass'n of Univ. Profs. v. Trump*, 2025 WL 3187762, at *32 (N.D. Cal. Nov. 14, 2025) (finding that the district court had jurisdiction because the "claim has nothing to do with an existing contract, and the CFC undoubtedly could not provide the requested injunctive relief").  Moreover, because the Court of Federal Claims is not a part of the judicial department, it does not provide "judicial review."

### 1.    This is not a contract case.

According to Defendants, because grants "operate[] much in the nature of a contract," they are *close enough* to contracts to vest exclusive jurisdiction over Defendants' grant decision in the Court of Federal Claims.  Red Br. 42.  Defendants then assert without foundation that the

"arrangement between the School Boards (through the Commonwealth of Virginia) and the Secretary" is not just "much in the nature of a contract" but "*entirely* contractual." *Id.* at 24–25 (emphasis added). From there, they go farther still: the grant arrangement was not just "much in the nature of a contract" but, they claim, the result of an actual "bargained-for exchange between … two sovereigns" *Id.* at 25. Defendants, of course, offer no record citation for this novel understanding of federalism and Congress's legislative role—only a *conferatur* citation to yet another case with the same quotation asserting that grants are *kind of like* contracts. *Id.* (citing *Bennett v. New Jersey*, 470 U.S. 632, 638 (1985), for the notion that "grant programs" are "much in the nature of a contract").

Only an actual contract—express or implied—suffices to vest the relevant Article I tribunal with jurisdiction. 28 U.S.C. § 1491(a); *cf.* Red Br. at 38 ("But whatever a 'constructive termination' may be, it is not an *actual* termination …."); *see R.I. Coal. Against Dom. Violence v. Kennedy*, 2025 WL 2988705, at *13 (D.R.I. Oct. 23, 2025) (contractual relations between parties do not "automatically convert a claim asserting rights based on federal regulations into … a contract claim") (citations omitted).

16

Moreover, grants are distinct from contracts, as Congress recognized in the very statute at issue here. 20 U.S.C. § 1682 (discussing "federal financial assistance … by way of grant, loan, *or* contract") (emphasis added). Defendants concede that there is no contractual privity between them and the School Divisions, but that the "arrangement" they liken to a contract passes instead "through the Commonwealth of Virginia." Red Br. at 24–25.

Having identified no relevant contract, Defendants nevertheless seek to support their argument with a case in which "a government *contractor* encountered difficulties performing the *contract*" and then sought, as damages, money owed under that express contract. Red Br. 25 (emphasis added). Here, without a contract, that case's reasoning is inapposite. There is simply no jurisdiction in the Court of Federal Claims—meaning that "judicial review" is not "otherwise … provided by law." 20 U.S.C. § 1683; *see* Red Br. at 19 (citing to the "presum[ption] that a cause lies outside" of a federal tribunal's jurisdiction) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

17

### 2. This is not a case seeking presently due money damages.

**a.** "The jurisdiction of the Court of Federal Claims under the Tucker Act is 'limited to actual, presently due money damages from the United States.'" *Todd*, 386 F.3d at 1093 (citing *Testan*, 424 U.S. at 398). Here, as Defendants affirmatively contend throughout their brief, no money damages are presently due in this case—a separate reason to reject Defendants' Tucker Act arguments.

Defendants assert that "the Secretary's discretionary determination neither revoked nor terminated the School Board's federal funds." Red Br. 19. They argue that those funds "were never turned off in the first instance." *Id.* at 28. They claim that the "Secretary has not made any determination that has terminated [or] refused to grant … federal funds to the School Boards."[3] *Id.* at 37.

That factual concession supports the School Divisions' position that this is not a contract dispute but rather a purported Title IX enforcement action, appropriately reviewed by the district court. Blue Br. 22. The

---

[3] Defendants also claim that the Secretary has not "discontinued" funds. Red Br. 37. To the extent they mean she has not "refus[ed] to … continue" funds, 20 U.S.C. § 1683, that statement is not accurate, *see supra* Section I.C.

18

claims here are not for "actual, presently due money damages," *Todd*, 386 F.3d at 1093, but rather for prospective equitable relief barring Defendants from causing the School Divisions to suffer those damages in the first place. *See Pres. & Fellows of Harvard Coll. v. U.S. Dep't of Health & Human Servs.*, — F. Supp. 3d —, 2025 WL 2528380, at *13–14 (D. Mass. Sept. 3, 2025) (rejecting Tucker Act argument because "Plaintiffs seek relief beyond enforcement of an obligation to pay money pursuant to … grants") (internal quotations and citations omitted). The School Divisions seek an order requiring Defendants to remove the arbitrary and capricious "high-risk" designation; to lift the arbitrary and capricious reimbursement-only requirement; and to drop the contrary-to-law conditions Defendants have improperly placed on future funding.

That Defendants have *not yet* terminated the School Divisions' funds in no way solves the problem. Defendants demand that the School Divisions implement policies that will violate this Court's interpretation of Title IX. The Secretary has repeatedly and consistently refused to provide any solution to the legal jeopardy her arbitrary, capricious, and illegal interpretation of Title IX has imposed on the School Divisions. A

regulated entity's proper recourse to such agency malfeasance is under the APA—the recourse the School Divisions have taken here.

**b.**  Grant terminations under Title IX are not, as a matter of straightforward statutory interpretation, money damages.  Blue Br. 23–28.  Treating those claims as claims for money damages would render the bulk of § 1683 surplusage, since that statute requires claims for grant termination to be reviewed under the APA.  *Id.* at 27–28.  Or that treatment would, equally impermissibly, require expanding the APA's waiver of sovereign immunity.  *Id.*  If Congress believed Title IX grant discontinuations were the same thing as money damages, it would not have made APA review of those claims available as it did in § 1683.  *See* 5 U.S.C. § 702.

### 3.  Review in the Court of Federal Claims is not "judicial review."

Defendants and the School Divisions agree that Congress undoubtedly has the power to constitute "tribunals," including "courts," that are "inferior" to the Supreme Court.  U.S. Const. Art. I § 8 cl. 9; U.S. Const. Art. III § 1.  But, relying primarily on cases that pre-date the shift in the Court's view of the three Constitutional departments articulated in *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197

20

(2020), Defendants contend that non-court Article I tribunals are *close enough* for their review to be considered "judicial."  Red Br. 43–44.

"Under our Constitution, the 'executive Power'—all of it—is 'vested in a President' …." *Seila Law*, 591 U.S. at 203.  The parallel provision at the beginning of Article III vests "the judicial Power of the United States"—all of it—"in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."  U.S. Const. Art. III § 1.  Those "Courts"—all of them—consist of life-tenured judges, and it is only those life-tenured judges who are empowered to exercise the "judicial Power of the United States."  *Id.*  Judges of the Court of Federal Claims accordingly may not—and do not—exercise that power.  *See* Blue Br. 30.

Defendants, unsurprisingly, identify no case in which the Court of Federal Claims has adjudicated a claim brought under § 1683.  Instead, they focus their analysis on a case in which the Supreme Court concluded that the only avenue for review of the Treasury Secretary's decision on tax-interest abatements was through an Article I tribunal, the U.S. Tax Court.  *Hinck v. United States*, 550 U.S. 501, 509 (2007); *see* Red Br. 43–44.  In *Hinck*, however, nothing turned on whether the review was

"judicial" or otherwise—the plaintiffs in *Hinck* had no "right of review" other than the review (whatever it was called) in the Tax Court. 550 U.S. at 508.

Here, the question of the Article I court's identity—and thus whether its review is "judicial" or not—is squarely presented. If "judicial review" of a § 1683 claim is unavailable in the Court of Federal Claims, such a claim *necessarily* falls within Article III courts' jurisdiction under the portion of § 1683 referring Title IX claims to the district courts under the APA. *See Am. Ass'n of Univ. Profs.*, 2025 WL 3187762, at *32 ("[W]hen an agency refuses to grant or continue financial assistance based on a purported Title VI or IX violation, the statutes authorize judicial review" in the district court.) (internal quotation marks omitted). And because neither the Tax Court nor the Court of Federal Claims nor the Article I "judges" of any other non–Article III tribunal may exercise the "judicial Power of the United States," their review is not judicial review.

Defendants further contend that it does not matter whether the Court of Federal Claims is the appropriate court because *actual* judicial review of that tribunal's decision might eventually be available at the

22

Federal Circuit.  Red Br. 45.  But the Federal Circuit has itself rejected Defendants' expansive view of the Court of Federal Claims' jurisdiction. In *National Center for Manufacturing Sciences v. United States*, the Federal Circuit held that where NCMS's claim "anticipate[d] the need for injunctive relief," a "simple money judgment" of the type the Court of Federal Claims was empowered to award would not suffice.  114 F.3d 196, 201 (Fed. Cir. 1997); *see also Katz v. Cisneros*, 16 F.3d 1204, 1209 (Fed. Cir. 1994) (where a claim seeks an "adjudication on the lawfulness of [an agency's] regulatory interpretation" that would have "future impact on the ongoing relationship between the parties," "the Court of Federal Claims cannot provide [the requested] relief").  And in any event, if Defendants' reasoning were correct, *any* decision that might one day end up before a federal court would satisfy "judicial review" requirements.  Even decisions of commercial arbitral tribunals, after all, are subject to confirmation or vacatur in district court.  9 U.S.C. §§ 9–10.

## II.    Defendants' waiver and forfeiture arguments are meritless.

Defendants contend in passing that the School Divisions have waived or forfeited various arguments.  Red Br. 19 & n.3.  All of the

23

School Divisions' arguments in this narrow jurisdictional appeal were appropriately raised before the district court.

The doctrines of waiver and forfeiture apply to *issues*, not to *arguments*. An issue is preserved if it is "pressed or passed upon." *See Interactive Gift Exp., Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1344 (Fed. Cir. 2001) ("It is a long-standing rule that, in order to be reviewable on appeal, a claim or issue must have been 'pressed or passed upon below.'") (quoting 19 James Wm. Moore et al., Moore's Federal Practice § 205.05, at 205–55 (3d ed. 1997)). And once the issue is preserved for appeal, "parties are not limited to the precise arguments they made below." *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992).

Here, the *issue* on appeal is the district court's jurisdiction to consider the School Divisions' claims. It is undisputed that this issue was "passed upon" below—it is the basis for the district court's order dismissing the School Divisions' complaints. Red Br. 14; JA214 ("the Court DENIES Plaintiffs' Motions and DISMISSES the Complaints for lack of subject matter jurisdiction"). The district court did not—because, having concluded it lacked subject-matter jurisdiction over the entire cause, it *could* not—distinguish among the School Divisions' claims

24

below.  The School Divisions have appropriately focused on their APA

claim as the basis for their contention that jurisdiction here properly lies

in Article III courts.  Jurisdiction over the School Divisions' declaratory-

judgment claims turns on the existence of a federal cause of action over

which the district court may exercise jurisdiction—and so the relevant

question for those claims is whether the district court had jurisdiction of

the APA claims.  *See Volvo Constr. Equip. N. Am., Inc. v. CLM Equip.

Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004).  Defendants' assertion that

the School Divisions "have abandoned any such argument," Red Br. 19,

is therefore simply wrong.

Nor are Defendants correct that the issue of the district court's

jurisdiction under § 1683 was or could be forfeited.  *First*, contrary to

Defendants' contention that the School Divisions "elected to raise this

argument for the first time in their District Court reply brief," Red Br. 19

n.3, the School Divisions' assertion that the district court had jurisdiction

under § 1683 appeared on the faces of their complaints.  JA015 &  JA233

¶¶ 16, 17; JA029 & JA247 ¶ 66.  And, *second*, in any event, the issue of a

federal court's "subject-matter jurisdiction … *can never* be forfeited or

25

waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002) (emphasis added).

## CONCLUSION

For the foregoing reasons and those in the School Divisions' opening brief, the district court's order should be reversed and this cause remanded with a direction that the district court exercise its jurisdiction.

Dated:  December 5, 2025

Respectfully submitted,

/s/ *Timothy J. Heaphy*
Timothy J. Heaphy
*Counsel of Record*
Joshua N. Mitchell
Fiona Carroll
Lindsay Hemminger
WILLKIE FARR &
  GALLAGHER LLP
1875 K Street Northwest
Washington, DC  20006
202-303-1000
theaphy@willkie.com

Breanna Smith-Bonsu
Chloe Smeltzer
WILLKIE FARR &
  GALLAGHER LLP
300 N. LaSalle Dr.
Chicago, IL  60654
312-728-9000

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief conforms to the type-volume limitations in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 5,006 words, excluding those portions of the brief identified in Rule 32(f).

/s/ *Timothy J. Heaphy*
Timothy J. Heaphy